MARCIE ISOM FITZSIMMONS (SBN 226906)
NEDA HEFZI (SBN 323787)
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile:  (415) 986-8054
misom@grsm.com
nhefzi@grsm.com

Attorneys for Defendant,
THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MALLOY,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN FRANCISCO, UC REGENTS, et al.,<br><br>Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) (FEDERAL QUESTION)**<br><br>Demand for Jury Trial |

**TO THE CLERK AND THE HONORABLE JUDGE OF THE ABOVE-ENTITLED COURT:**

PLEASE TAKE NOTICE that Defendant THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ("Defendant"), hereby removes to this Court the state court action described below:

**THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED**

1.     On or about March 23, 2020, Plaintiff STEPHEN MALLOY ("Plaintiff") commenced an action in the Superior Court of the State of California in and for the County of San Francisco, entitled *Stephen Malloy v. City of San Francisco (Entity), et. al.*, as Case No. CGC20586150 (the "state court action).  A true and correct copy of all pleadings, process and orders, served on Defendant in the state action, including the Complaint and Summons, are

-1-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

attached as **Exhibit A**.

2.      On or about September 17, 2020, Defendant's counsel was served with a copy of the Complaint.  Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed within 30 days from the date on which it was determined by Defendant that this action was removable.

3.      Intradistrict Assignment. Removal to the San Francisco Division of the United States District Court for the Northern District of California is appropriate because the removed state court action was filed in the Superior Court of California, County of San Francisco and the allegations giving rise to Plaintiff's Complaint occurred in the City of San Francisco.  Under Local Rule 3-2 (d), actions arising in the county of San Francisco, as does this one, may be assigned to San Francisco.

4.      Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal, without exhibits, will be promptly served on Plaintiff.

5.      A copy of this Notice of Removal, without exhibits, will also be filed with the Clerk of the Superior Court of the State of California in and for the County of San Francisco County.

6.      Defendant certifies that all of the named Defendants, who have been served in the state action, consent to the removal.  On information and belief, no other co-defendants have been served.  On further information and belief, any other co-defendant would consent to removal.

**THIS COURT HAS FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION**

7.      Jurisdiction. This Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. §1441(a) in that it arises under federal law pursuant to:  Title VII of the Civil Rights Act of 1964, 42 USCS § 2000e *et seq*., Age Discrimination Act of 1975, 29 U.S.C. § 621 *et seq*., Americans with Disabilities Act of 1990, 42 U.S.C. 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.* Equal Pay Act, 29 U.S.C. 206 *et seq.*, the Vietnam Era Veterans' Readjustment Assistance

Act, 38 U.S.C. 4212 *et seq.*, and Executive Order 11246. (See Exhibit A, 4:20-24, 6:18-22, 22:12-14, 26:11-23.)

8. Notwithstanding the Complaint's failure to state a clear and concise statement for which relief can be granted, Defendant has made a good faith effort to understand the claims asserted by Plaintiff. To the extent there are any state law claims alleged, this Court has supplemental jurisdiction over any of Plaintiff's related state law claims. Specifically, 28 U.S.C. § 1367 confers jurisdiction to this Court over all claims which form part of the same case or controversy as the claims over which the Court has original jurisdiction.

9. Plaintiff's supplemental state law claims in the complaint stem from the same common set of alleged facts and circumstances involving his federal claims, as well as a related case he has already filed in this Court (**4:19-CV-07995-SBA**).

10. If any questions arise as to the propriety of the removal of this Action, Defendant requests the opportunity to brief any disputed issues and to present oral argument in support of the position that this case is properly removable.

11. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendant's rights to assert any procedural or substantive defense available under state or federal law.

12. Defendant hereby demands trial by jury in this action.

**WHEREFORE,** Defendant respectfully removes this Action from the Superior Court of San Francisco to this Court, pursuant to 28 U.S.C. §1441.

Dated: October 19, 2020                    GORDON REES SCULLY MANSUKHANI, LLP

                                           By:    */s/ Marcie Isom Fitzsimmons*
                                                  Marcie Isom Fitzsimmons
                                                  Neda Hefzi
                                           Attorneys for Defendant
                                           THE REGENTS OF THE UNIVERSITY
                                           OF CALIFORNIA

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# EXHIBIT A

**NO SUMMONS ISSUED**

STEPHEN MALLOY
455 Fell Street, #516
San Francisco, CA, 94102
(310)428-7005
grovestand2012@gmail.com

Pro-Se

F I L E D
Superior Court of California
County of San Francisco

MAR 23 2020

CLERK OF THE COURT
BY: _____
ANGELICA SUNGA Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF San Francisco

STEPHEN MALLOY, Plaintiff

v.

CITY OF SAN FRANCISCO, (ENTITY)
Et All Individual Defendants, UC REGENTS (Entity)
Steve Bustamante

Case No.: CGC-20-586150

CIVIL COMPLAINT

Mary-Ann Hariston
Chris Harrington
Janet Napolitano
George Kieffer
Charles Robinson
Greta Schmetzler
Corey Jackson
John Stubbo
Susan Taylor
Grant Abernathy
Denise Caramagno
Alan Carpenter
Jane Czech
Barbara French
Brenda Gee
Valerie Gruber

Sam Hawgood
Jeremy Lane
Dan Lowenstein
Christina Mangurian
John McQuaid
Kate Mente
Fumi Mitsuihi
Renee Navarro
Deborah Okiomoba
Shelly Patton
Susan Penny
Michelle Pero
Constance Revore
Aviva Roller
Nyoki Sacramento
Matthew State

Zachary Williams
Hallie Albert
Kavoos Bassiri
Jeanne Buick
Robyn Burke
Micoy Callahan
Roxana Costello
Kelly Eagen
Susan Gard
Hali Hammer
Kate Howard
Megan Kennel
Susanna Luong
Alice Mougahmian
Anna Robert
Maggie Rykowski

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 1

Andrea Sanchez
Linda Simon
Rhonda Simmons
Mawuli Tugbenyoh
Veronica Vien
Henry Voong
Greg Wagner
Grant Colfax
Ron Weigelt
Jonathon Yank
City Attorney Thoren
City Attorney Hobin-Porter
City Attorney Stoughton
City Attorney Herrera
Mayor Breed

Page 2

## I.   DISCRIMINATION STANDARD OF LAW PROOF

**FACT 1: MALLOY BELONGED TO 7 PROTECTED CLASSES.**

Malloy was:

1) Gender: Male

2) Gender Identity: Cis-Gender

3) Sexual Orientation: Gay

4) Race: Black

5) Age: 54 years old at time in question

6) Disabled: 30% Service Connected Dept. of Veteran Affairs (VA) at time of question

7) Protected Veteran: Special Disabled Veteran

## II.   DISCRIMINATION STANDARD OF LAW PROOF

**FACT 2: JULY 5, 2016. MALLOY HIRED BY UCSF.**

[See Exhibit 1. June 30, 2016. UCSF-Malloy Offer Letter.]

Malloy worked successfully with a 100% Clean Personnel Record in four Departments at UCSF over two years, as a UCSF Human Resources (HR) Temporary Employment Program (TEP) Employee, until March 31, 2018.

**Fact 3: July 5, 2016. Malloy belonged to the UC Regents and UCSF. Oath of Allegiance. State Employee compliance with UC Policies, CA Constitution and US Constitution.**

[See Exhibit 2. July 5, 2016. UCSF-Malloy State & Federal Constitution Allegiance.]

Malloy's employment, daily work and personnel affairs were solely under the management of the UC Regents and UCSF.

Malloy's allegiance & compliance was not to the City of San Francisco (SF), Dept. of Public Health (DPH).

The City was to never conduct itself in an "employer-employee" relationship with Malloy, per his 2 work contracts.

The City was never to be "assigned, delegated," or administer by any "means or methods" in Malloy's employment.

In short, Malloy could not comply with City laws when they conflicted with his State Employee Policies or his Federal Jurisdiction as a Protected Disabled Veteran.

In those case, City orders to Malloy constituted illegal orders.

City and State Defendants failed to ensure Malloy's employment was administered equally under guaranteed City and State Discrimination & Harassment Policies/Laws requirements, with similarly situated individuals. The targeted adverse employment actions both City & State Defendants retaliated against Malloy on October 3, 2018 with, were the direct result of his wrongful termination.

We will review each of those targeted breach of contract actions against Malloy, later in the Statement of Facts under that charge and claim, for now please know that Malloy was solely a State Employee.

**Fact 4: July 1, 2016. Malloy belonged to UCSF. Protected Disabled Veteran.**

**UCSF identified Federal Contractor.**

[See Exhibit 3. July 5, 2016. UCSF Federal Contractor. Malloy Protected Disabled Veteran.]

The VA established Malloy's Protected Disabled Veteran status at a 10% rating on 07/03/1987, well before his employment at the job in question, Patient Navigator with UCSF Citywide.

Furthermore, Malloy identified his disability to UCSF on July 5, 2016.

The VA also increased Malloy's status to "Special Disabled Veteran" and a 30% rating on 11/03/2017, well before his employment at the job in question, Patient Navigator with UCSF Citywide.

Again, Malloy identified his disability to UCSF on July 5, 2016.

[See Exhibit 4. VA Malloy Disability Ratings 10% & 30% Protected Special Disabled Veteran.]

City and State Defendants failed to administer Malloy's employment, to include as a Special Disabled Veteran, equally with similarly situated individuals under 3 specific laws:

Executive Order 11246; Employee Discrimination-Retaliation Prohibited

VEVRAA/Equal Opportunity (EO) Clause; Disabled Veteran Discrimination & Retaliation Prohibited

Section 503 Rehabilitation Act; Disabled Discrimination & Retaliation Prohibited

Per those 3 laws, UCSF's relationship as the Prime Contractor with Malloy, also ensured he was to be guaranteed those protections by the City of San Francisco, Dept. of Public Health which served as his worksite.

As such, the City was the obligated subcontractor, and was to comply with those 3 laws with Malloy.

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 3

Neither City nor State Defendants, complied with those 3 critical laws/contract protections for Malloy as an Employee or Protected Special Disabled Veteran.

[See Exhibit 5. VEVRAA Contractor-Subcontractor Obligation to Protected Disabled Veteran Malloy.]

City and State Defendants targeted breach of contract actions against Malloy on October 3, 2018 were the direct result of his wrongful termination.

City and State Defendants failed to ensure Malloy's employment was administered equally under guaranteed City and State Discrimination & Harassment Policies/Laws requirements, with similarly situated individuals.

We will review each of those targeted breach of contract actions against Malloy, later in the Statement of Facts, for now may it please the Court to know that Malloy was a Protected Disabled Veteran, and that both UCSF (Federal Contractor) and City of San Francisco, Dept. of Public Health (Subcontractor) were contractually obligated to Malloy.

**Fact 5: April 1, 2018. Malloy belonged to UCSF. Hired into the position in question.**
**Part-Time Patient Navigator.**

[See Exhibit 6. March 19, 2018. UCSF Part-Time Patient Navigator Malloy Offer Letter.]

UCSF, made the position Permanent Part-Time Patient Navigator, working 20 hours weekly.

This meant that at the end of his 6 month probation effective date of October 2, 2018, Malloy would be awarded a Permanent Job with Full-Benefits at the University of California as a Patient Navigator.

**Fact 6: May 15, 2018. Malloy belonged to UCSF. Employee Education Benefit Program.**

UCSF awarded Malloy a fully funded 2 year education at City College in San Francisco (CCSF).

[See Exhibit 7. May 6, 2018. UCSF-Malloy Education Agreement and Employee Benefit.]

This was to complete the required certification that all Patient Navigators must have within 5 years of assignment by the State in a Substance Abuse Treatment Program.

That program was Malloy's UCSF Home Department, Citywide Case Management.

Malloy's work was located at the City of San Francisco's Dept. of Public Health Sobering Center, because that was where his patients/clients in the Substance Abuse Treatment Program were treated.

**Fact 7: August 1, 2018. Malloy belonged to UCSF. Re-hired. Position in question.**
**Full-Time Patient Navigator.**

UCSF was "impressed" with Malloy's "skills and accomplishments."

UCSF created a Full-Time Patient Navigator position for Malloy to interview and apply for.

UCSF then hired Malloy, as the Permanent Full-Time Patient Navigator at 40 hours weekly.

Malloy's position had a 6 month probationary period. The probation effective end date was October 2, 2018.

[See Exhibit 8. July 25, 2018. UCSF Full-Time Patient Navigator Malloy Offer Letter.]

In the July 25, 2018 Offer Letter Malloy received from his UCSF HR Administrator, Connie Revore, she stated:

*"We are impressed with your skills and accomplishments and feel that your background is an excellent match for our present needs. We look forward to having you as part of our team."*

**Fact 8: May 6, 2019. Malloy - Student belonged to UCSF.**

**Dept. of Education (DE), Office of Civil Rights (OCR) Refers to EEOC.**

Malloy belonged to UCSF as a student. Due to UCSF being a recipient of federal funds, per Title VI of the Civil Rights Act, UCSF was prohibited from discriminating against students, like Malloy.

[See Exhibit 9. May 6, 2019. DE OCR Refers Discrimination & Disability Charges to EEOC.]

City and State Defendants failed to ensure Malloy's employment was administered equally with similarly situated individuals as a student under 5 specific federal education laws:

A.  Title VI of the Civil Rights Act of 1964;

B.  Title IX of the Education Amendments of 1972; Sex discrimination

C.  Section 504 of the Rehabilitation Act of 1973; Disability discrimination

D.  Age Discrimination Act of 1975

E.  Title II, Americans with Disabilities Act (ADA) of 1990

UCSF's status as a recipient of federal funds and obligated to Malloy was confirmed by the DE OCR. The DE OCR investigated Malloy's Case and per federal requirements referred it to the EEOC on May 26, 2019.

Therefore, these 5 laws are cited in jurisdiction and due to their referral by DE OCR to the EEOC, and per DOJ's issuance of Malloy's August 28, 2018, Right to Sue Authorization, Malloy calls them into administration in this civil suit.

## III.    DISCRIMINATION STANDARD OF LAW PROOF

**FACT 9: MALLOY WAS QUALIFIED FOR HIS POSITION.**

**Fact 10: February 7, 2019. UCSF Records Custodian Brenda Gee provides Malloy his complete personnel record:**

A.  TEP File of 25 Pages.

B.  HR File of 111 Pages.

**Fact 11: Malloy's UCSF TEP Personnel File July 2016 to March 2018 met all qualifications.**

July 5, 2016. Start of Malloy's employment at UCSF HR TEP Department.

March 31, 2018. End of Malloy's UCSF HR TEP work.

Malloy maintained a 100% clean personnel record during his 2 year tenure at UCSF HR TEP.

Malloy was:

A.  Never counseled

B.  Never disciplined

C.  Never had any misconduct

D.  Never had any performance issues

E.  Job performance met qualifications during tenure

F.  Remained eligible for employment with UCSF

**Fact 12: Malloy's UCSF Patient Navigator Personnel File April 2018 to October 2018 met all qualifications.**

April 1, 2018. Start of Malloy's employment as UCSF Part-Time Patient Navigator.

August 1, 2018. Promoted to UCSF Full-Time Patient Navigator.

October 2, 2018. Malloy Effective Probation End Date as UCSF Patient Navigator.

October 10, 2018. Malloy Wrongful Termination Date as UCSF Patient Navigator.

Again, Malloy maintained a 100% clean personnel record during his entire 6 months as UCSF Patient Navigator.

Again, Malloy was:

A.  Never counseled

B.  Never disciplined

---

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 9

C. Never had any misconduct

D. Never had any performance issues

E. Job performance met qualifications during tenure

F. Currently remains eligible for employment with UCSF

**Fact 13: UCSF Created a Full-Time Patient Navigator Position for Malloy. Work performance meet all qualifications.**

August 1, 2018 after only 4 months on the job and 32 work days left on probation, Malloy's performance caused UCSF to create a new position, expressly for Malloy, and re-hired him as their Full-Time Patient Navigator at 40 hours weekly.

This job action was taken after Malloy's similarly situated employees, specifically his worksite supervisor, DPH Charge Nurse Megan Kennel and his fellow UCSF Coworker Jeremy Lane, asked Malloy if he would be interested in taking on case management duties with clients in July of 2018. Malloy agreed with the idea.

Therefore, on or about July of 2018, DPH Management: Medical Dir. Kelly Eagen, MD, Program Dir. Alice Moughamian, RN, and Charge Nurse Megan Kennel approved Malloy's interview and job assessment personnel record paperwork, provided to them by his UCSF Supervisor Dr. Valerie Gruber. Dr. Gruber herself, in concert with fellow UCSF Coworker Jeremy Lane and possibly UCSF Coworker Marco Lopez, all filled out and approved Malloy's interview and job assessment personnel record paperwork too.

This paperwork was needed to confirm the promotion, pay and assignment of Malloy to the new Full-Time Patient Navigator Position with UCSF Citywide, and his UCSF HR Administrator Connie Revore and his UCSF Citywide Boss Medical Dir. Fumi Mitsuishi, MD approved Malloy for the new position. **[See Exhibit 8. July 25, 2018. UCSF Full-Time Patient Navigator Malloy Offer Letter.]**

Malloy's Personnel File demonstrates that during his entire 2.5 years of employment at the UCSF, from July 1, 2016 until his wrongful termination date of October 10, 2018, he met all qualifications of his UCSF Employer.

**Fact 14: October 10, 2018. UCSF-Malloy Involuntary Separation Record. Confirmed Malloy's Employment as Patient Navigator met all qualifications.**

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 9

Malloy never violated any State or Federal Policy/Law during his employment.

UCSF confirmed Malloy had "No Reasons" why he could not work again for UCSF:

A.  No Discipline Reason

B.  No Misconduct Reason

C.  No Lack of Performance Reason

D.  No Do Not Hire Reason

[See Exhibit 10. October 10, 2018. UCSF-Malloy Involuntary Separation Record.]

**Fact 15: UCSF HR has authorized Malloy to be hired again, per the Involuntary Separation Record, due to his 100% Clean Personnel Record.**

*Proof of this lies with this confirmation from UCSF HR of Malloy's Current Available Employment Status.*

*In short, the Defendants lied and stated that Malloy engaged in gender discrimination, which was false and breached his contract indemnification. It also breached his employment rights as a Covered & Protected Veteran.*

*The "cover" of the fraudulent City EEO Charge was never substantiated and failed.*

*Therefore, with a 100% Clean Personnel Record and Separation Record, Defendants have no case and Malloy is allowed currently-actively by UCSF HR to pursue employment.*

[See Exhibit 11. March 16, 2020. UCSF HR-Malloy Available To Work.]

**Fact 16: December 13, 2018. UCSF Legal Confirmed "Reason For" Malloy's Termination.**

The UC Regents in collaboration with UCSF's Senior Campus Counsel Kate Mente issued a formal response 60 days after Malloy's wrongful termination on December 13, 2018.

UCSF Counsel Mente confirmed to Malloy that the "reason for" his termination under a "probationary release" was as follows:

*"The basis for your probationary release was due to verbal complaints/reports and verbal responses from you to UCSF supervisory employees regarding those complaints/reports..."*

**Defendants engaged in Improper Government Activity Illegally Across City-State to Terminate a Protected Employee [MALLOY] For Reporting Discrimination.**

[See Exhibit 12. UC Regents/UCSF Senior Counsel Kate Mente "Reason For" Firing Malloy. Due to Malloy's Protected Reports & Complaints. Unlawful Termination Practice.]

In the next section of Malloy's statement of facts, where he was subject to an adverse employment action and similarly situated individuals outside of his protected class were treated more favorably, the Court will see that both UCSF and the City DPH violated his guaranteed rights that they were responsible for enforcing.

City & State Defendants were the responsible parties for protecting Malloy when he engaged in 5 lawful opposition, protected and concerted activities to report illegal discrimination, harassment, and a unsafe-hostile work environment.

Malloy's reports to his employer were not provided the immediate stop, correction and UCSF HR investigation required by guaranteed policies and laws cited herein jurisdiction.

City and State Defendants targeted actions constituted retaliation, discrimination, harassment, disparate treatment and breach of contract against Malloy.

As similarly situated individuals outside of Malloy's protected class were treated more favorably and immediately provided those same guaranteed policies, laws and contract protections cited herein jurisdiction.

**IV.    DISCRIMINATION STANDARD OF CONTRACT, POLICY & LAW PROOF**

**FACT 17: UCSF & City Defendants Failed to Provide Malloy Guaranteed Contract, Policy & Law Standards. While Similarly Situated Individuals Were Favorably Treated & Received These Standards.**

Malloy is charging discrimination against the UC Regents/UCSF and the City of San Francisco.

City and State Defendants did not provide Malloy's guaranteed equal rights, benefits and privileges of employment cited in jurisdiction.

They treated Malloy's 7 Discrimination & Harassment Reports of lawful opposition and concerted activities as a protected class employee he reported August 16, 2018 to October 10, 2018, less favorably than similarly situated employees, who were outside of his protected classes.

When similarly situated employees at Malloy's DPH Worksite, reported Malloy for alleged discrimination on September 28, 2018, they immediately received all of their guaranteed rights that

Malloy was not provided when he issued his 7 Discrimination Reports of lawful opposition-protected-concerted activities between August 16, 2018 and October 3, 2018.

Furthermore, starting on September 28, 2018 the similarly situated employees were immediately treated more favorably, because their guaranteed 7-1-18 UC Regents & City Contract rights were not breached. However, those same guaranteed contract rights were breached against Malloy and resulted in a series of adverse actions and disparate treatment by his City and State Defendants, based on targeted acts of discrimination and retaliation.

The first example, is the 7-1-18 UC Regent & City "Independent Contractor" Obligation that was denied Malloy when he reported discrimination, but similarly situated employees outside of his protected class immediately received that benefit.

**Fact 18: UCSF-City Breach of 7-1-18 Contract.**

**Malloy belonged to the City as their "Independent Contractor."**

The targeted action of UCSF and the City, of ignoring Malloy's lawful protected report and activity, breached the City's contractual obligations per his 7-1-18 UC Regents & City of San Francisco Work Contract. Section 14. Independent Contractor. Section 16. Indemnification. Section 30. Assignment. [See Exhibit 13:

7-1-18 UC Regents & City BREACH of Malloy Contract Rights: Independent Contractor – Indemnification – Assignment & Federal

8-1-94 UC Regents & City Affiliation BREACH of Malloy Contract Rights: Indemnification – Personnel, & Tort]

City & State Illegally Delegated City Agents, DPH EEO Albert & DPH Dir. Moughamian, to serve as the Means & Method for discipline and termination of Malloy for a False Charge of Gender Discrimination.

The City was obligated as a rersponsible party to Malloy under the 7-1-18 Contract, to protect him as an "Independent Contractor," who worked as their Patient Navigator at the DPH Sobering Center where Malloy's patients/clients under UCSF Citywide Case Management were treated daily.

City policy required Malloy to inform his <u>responsible</u> City DPH Management: Medical Director Dr. Kelly Eagen, Program Dir. Alice Moughamian, and Charge Nurse Megan Kennel, that there was discrimination and harassment at his worksite. Malloy fulfilled that contract obligation.

However, DPH Dr. Eagen, Program Dir. Moughamian and Charge Nurse Kennel did not fulfill their contract obligation and immediately stop, take corrective action and inform DPH HR EEO Manager Hallie B. Albert.

The DPH Defendants were also responsible to communicate with Malloy's UCSF Supervisor Dr. Valerie Gruber, who in turn should have communicated with his UCSF HR Administrator Connie Revore and UCSF Citywide Medical Dir. Dr. Fumi Mitsuishi. This did not happen.

All responsible parties failed to fulfill their contract obligations to Malloy and immediately stop, take corrective action, and start a HR investigation to inform all defendants of the violation of Malloy's guaranteed contract, policy and law obligations.

At no time, during any of Malloy's 7 discrimination and harassment reports of lawful opposition-protected and concerted activities did any City or State Defendants, provide Malloy the same relief, remedy and redress, they immediately provided to similarly situated individuals outside of his protected classes on September 28, 2018.

[See Exhibit 14. 9-28-18 to 11-2-18. UCSF-City 9 Email Evidence of City and State Defendants Breaching Malloy Contract Protections. Illegally Assigning and Delegating to City DPH EEO Manager Hallie B. Albert and City DPH Dir. Alice Moughamian to Administer in Malloy's State Work and Personnel Affairs.]

Following, are the guaranteed City Policies that defendants were obligated to enforce for Malloy but failed to. However, similarly situated employees outside of his protected class immediately received these equal policy rights, benefits and privileges of employment on September 28, 2018.

**Fact 19: UCSF & City Fail to Provide Independent Contractor Malloy Guaranteed City Policy Rights.**

**A. City Sexual Harassment Policy Standard of Proof:**

https://sfdhr.org/sexual-harassment-policy

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 12

*"Discriminating against, or harassing City and County of San Francisco (City) employees, applicants, or persons providing services to the City by contract [MALLOY], including supervisory and non-supervisory employees, because of their sex, race, age, religion, color, national origin, ancestry, physical disability, mental disability...sexual orientation, gender, gender identity, gender expression, military and veteran status, or other protected category under the law is prohibited and unlawful..."*

*"(3) For purposes of this Section, retaliation...shall be prohibited.*

*Examples of retaliation may, in accord with State and federal laws, include, but are not limited to, the following:*

*Ignoring the complainant or witness;"*

**B. City EEO Policy Standard of Proof:**

https://sfdhr.org/equal-employment-opportunity-policy

*"Discriminating against, or harassing City and County of San Francisco (City) employees, applicants, or persons providing services to the City by contract [MALLOY], including supervisory and non-supervisory employees, because of their sex, race, age, color...physical disability, mental disability, sexual orientation, gender, gender identity, gender expression, military and veteran status, or other protected category under the law is prohibited and unlawful."*

**C. City Harassment-Free Workplace Policy Standard of Proof:**

https://www.sfdph.org/dph/files/PoliciesProcedures/HUR18_HarassmentFreePolicy.pdf

*"Harassment of City employees on the basis of sex, race, age, religion, color, national origin, ancestry, disability, medical condition, marital status, sexual orientation, gender identity or other protected category is prohibited and unlawful. Harassment consists of unwelcome visual, verbal, or physical conduct engaged in on account of a person's actual or perceived membership in a protected category. Harassment of employees, applicants, or persons providing services to the City by contract [MALLOY], whether by employees or non-employees, is prohibited. This policy applies to all employees and agents of the City [MALLOY], including supervisory and non-supervisory employees [MALLOY]."*

**D. City HUR 17 Client Conduct, Language, Threat & Violence Policy Standard of Proof:**

https://www.sfdph.org/dph/files/CBHSPolProcMnl/1-3-09-03-BHS-Policy-Client-Violence-in-Adult-and-Older-Adult-Programs.pdf

---

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 13

*"It is the policy of BHS to provide services in an environment that is safe and secure for all clients, staff and visitors. Violence or <u>threats</u> of violence <u>are not tolerated</u> from anyone <u>including</u> staff, <u>clients</u>, or clients' family members, friends or significant others. Clients should be made aware that there are expectations for appropriate behavior while receiving behavioral health services. The following activities <u>are not permitted</u> including, but not limited to...:*

➤ *Violence, threats of violence, or harassing phone calls.*

➤ *Disruptive behavior, <u>verbally abusive behavior</u>, yelling, threats, profanity, vulgar, <u>racist, sexist or homophobic language</u>, threatening gestures or <u>personal insults</u>.*

➤ *Sexually inappropriate behavior: sexual gestures, requests for sexual favors or unwanted advances, graphic/sexually explicit comments, and other <u>verbal or physical behaviors</u> of a <u>sexual nature</u>."*

*"SECTION A: IMMEDIATE RESPONSE TO VIOLENT ACTS OR THREATS*

*Steps to Take:*

*Critical mass presence in immediate area.*

*Call 911/415-553-8090 in emergency situations or 415-553-0123 in non-emergency situations and/or initiate an involuntary psychiatric hold if clinically appropriate.*

*Make a police report.*

*Prepare statements of witnesses.*

*Report to BHS Administration.*

*Debrief staff.*

*Debrief clients."*

**Fact 20: UCSF & City Failed to Comply with Formal City Client HUR 17 Conduct Policy With Malloy.**

Client Conduct HUR 17 was the formal policy of City of San Francisco, Dept. of Public Health, was to follow at Malloy's worksite.

Both UCSF & the City <u>negligently failed to inform, train or disseminate</u> the City HUR 17 Client Policy with Malloy at his worksite.

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 18

Malloy as a State Employee, must have any City Rules, Policies or Laws provided to his Personnel Record Job Description. This is found on Page 101/111 of the UCSF Personnel File formally provided to Malloy by UCSF Records Custodian on February 7, 2019.

[See Exhibit 15. UCSF Special Rules Personnel Record. No City Rules, Policies or Laws Recorded in Malloy's State Record. Malloy Cannot Comply with Illegal City Orders As State Employee.]

**Fact 21: UCSF Created An Illegal City Employer-Employee Relationship With Malloy.**

**UCSF & City Breached Malloy's 7-1-18 UC Regents/City Independent Contractor Obligation.**

Malloy's initial EEOC & Dept. of Labor OFCPP Complaints were both in December 2018.

In March 2019, Malloy issued a Whistleblower Report to the UC Regents/UCSF, where he reported these failures of Contract, Policy and Law in jurisdiction. As a result, The Regents engaged in Improper Government Activity with the City to engage in retaliation Post Malloy's wrongful termination. Defendants retaliated against Malloy and breached his Contract Protections as an "Independent Contractor." UCSF created an illegal "employer-employee" relationship with the City. State Defendants unlawfully delegated to the City, to administer in Malloy's work and personnel affairs by citing his alleged non-compliance with three illegal City rules as reason for his wrongful termination. Malloy was a State Employee with UCSF under Federal Jurisdiction as a Protected Disabled Veteran, and could not comply with City rules or be administered to by the City, in any of his work or personnel affairs.

Therefore, UCSF's delegation to the City on October 3, 2018 to have City DPH EEO Manager Hallie B. Albert interrogate-coerce and threaten Malloy for a false government charge of Discrimination was illegal and a breach of his contract.

[See Exhibit 16. 5-16-19. UC Regents 5-16-19 Gordon & Rees EEOC Statement. UCSF Illegal Employer-Employee Relationship with City DPH "Agent" EEO Manager Hallie B. Albert. Contract Breach.]

This retaliatory measure, was based on the legal exposure the UC Regents/UCSF faced for discriminating and retaliating against Malloy by failing to guarantee his contract, policy and law equal rights cited in jurisdiction for Malloy and All Protected Disabled Veterans of his class.

These illegal City adverse personnel actions and rules; became the "new" reason for Malloy's termination effective the May 16, 2019 EEOC Position Statement, created by 50 State National Law Firm Gordon & Rees, for the UC Regents/UCSF against Malloy.

The first illegal City rule that DPH and UCSF Defendants put forward in Gordon & Rees defense of Malloy's wrongful termination was as follows:

**1) Illegal City Sobering Center Safety Committee Rule.**

[See Exhibit 17. 5-16-19 UC Regents - Gordon & Rees EEOC Statement & Illegal City Local "Safety Committee" Rule. Malloy Fired For.]

Malloy was not trained on or ever provided City DPH "Safety Committee" Local Protocol Rule. Per Malloy's State UCSF Employment Contract, he must be provided any Special Conditions of Employment upon hire. This did not happen. Malloy did not for his April 2018 hire as UCSF Part-Time Patient Navigator, or his UCSF Full-Time Patient Navigator hire, ever receive any information – training or knowledge of City DPH "Safety Committee" Protocol.

[See Exhibit 15. UCSF Special Conditions Attachment. No "Safety Committee" Rule is recorded for Malloy to comply with.]

Furthermore, Malloy as a State Employee did not involve himself in the Case Management of the City DPH. Malloy is prohibited and did not discharge the Client from DPH. Malloy confirmed with the Client's UCSF Case Manager, similarly situated UCSF Coworker Jeremy Lane, if he wanted to continue as the Clients UCSF Case Manager. Lane said he did not. Accordingly, the Client's Case Services with UCSF were "Done." Malloy was in Compliance with UCSF Zero Tolerance for Client Threats Policy.

[See Exhibit 17A. UCSF-Malloy State Employee Zero Tolerance Policy. City Rules Do Not Apply to Malloy & UCSF Workers Case Management of Our Clients Who Engage in Prohibited Conduct.]

The second illegal City rule that DPH and UCSF Defendants relied upon had already been established by the City in 2015.

**2) Illegal City Human Resources "Nigger" Is Not Materially Adverse Rule.**

This rule was established under current HR Director Micki Callahan.

It contributed to the wrongful termination of Malloy, as his lawful September 17, 2018 discrimination report of "Nigger" as offensive, was not accepted by either City or UCSF Defendants in compliance with cited contract, policies and laws herein jurisdiction.

https://www.sfgate.com/bayarea/article/Employee-sues-San-Francisco-D-A-s-office-over-6736320.php

*"While we acknowledge the extreme offensiveness of the 'N' word and understand how upsetting it was to you to hear such a highly offensive term, one comment is not sufficiently severe or pervasive as to alter the condition of your employment and create an abusive working environment," Micki Callahan, the city's human resources director, wrote in a July letter."*

*"Callahan went on to say that "an offensive utterance or even a pattern of social slights by either the employer or co-employees cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment."*

**Fact 20: UCSF Breached Malloy's Contract. Illegal Employer-Employee Relationship. Fired Malloy Under illegal City Rules.**

Exhibit 15, 16, 17, 17A demonstrate case evidence that City DPH Rules were:

A.  Never trained on with Malloy

B.  Never provided to UCSF Management or Malloy for inclusion in his formal employment personnel record for adherence

C.  Never sanctioned or authorized by Defendants with Malloy, to supersede his required compliance with UCSF Zero Tolerance for Clients who engaged in prohibited conduct and were unsafe, hostile and created materially adverse work conditions for Malloy

D.  The Defendant's negligence and conduct was unwelcome under all applicable laws guaranteed in jurisdiction, and was sufficiently serious or happened often enough, to change the conditions of Plaintiff's employment and create an abusive and hostile work environment.

E.  A reasonable person in these circumstances would consider the working environment to be abusive or hostile.

Malloy was damaged, harmed and injured by this abusive or hostile working environment.

Malloy's VA Providers placed him on State Disability for activation of his Military Disabilities to included PTSD, Major Depressive Disorder and Irritable Bowl Syndrome.

[See Exhibit 18. VA Disables Malloy Due UCSF & City Adverse Employment Actions.]

**Fact 21: State UC Regents/UCSF Standard of Policy & Law Proof.**

UC Regents/UCSF Discrimination Policy, Page 6/8:

*"Supervisors must report complaints of discrimination or harassment to a designated representative at the relevant location so that the claim may be resolved internally if possible."*

UC Regents/UCSF Sexual Harassment Policy, Page 2/31:

*"...Action to stop, prevent, correct, and when necessary, discipline, behavior that violates this Policy."*

**V.    DISCRIMINATION STANDARD OF LAW PROOF**

**MALLOY MADE 7 LAWFUL DISCRIMINATION & HARASSMENT, OPPOSITION-PROTECTED-CONCERTED ACTIVITY REPORTS.**

**Fact 22: August 17, 2018**

**Malloy Report #1.**

**Sex & Gender Discrimination - Harassment. Unsafe-Hostile Work Environment.**

Malloy openly identified at work as Protected Classes: Male, Cis-Gender and Gay.

Malloy reported in writing: sex and gender discrimination, a physical threat, and a hostile-unsafe work environment, to his immediate worksite Supervisor, DPH Charge Nurse Megan Kennel.

Malloy had to enter the 11 bed male dorm at work, where there was no security provided by management on site, when the client became highly agitated at DPH Nurse Andrea Sanchez.

The client began screaming at her and the situation in the dorm became so threatening and out of control, that Malloy got up from his desk in the office, and went into the male dorm to de-escalate the client and provide DPH Nurse Sanchez physical support.

At that time Malloy was directly called a *"Bitch"* repeatedly by the client.

Malloy also entered a dangerous situation, as NO Security was provided at his worksite, to protect his co-worker and the multiple other patients in the male dorm, de-escalated the client and escorted them out of the Sobering Center to gain safety for all involved.

[See Exhibit 19. 8-17-18, Malloy #1, Sex-Gender Discrimination Report.]

Of note, the discrimination is not that Malloy was merely called a "Bitch," or that he had to physically de-escalate an unsafe and hostile client and remove him from his workplace.

The violation of discrimination law, is that DPH Charge Nurse Kennel, and in turn Malloy's DPH Sobering Site Management of Medical Director Kelly Eagen, MD and Program Dir. Alice Moughamian all ignored Malloy's discrimination report. When they were all, responsible parties per City and State Policy/Laws cited in jurisdiction, to immediately enforce Malloy's guaranteed equal rights that prohibited that kind of specific discrimination against him.

And, they failed to take the required steps to immediately stop, correct and inform both City HR and UCSF HR so that the designated staff could provide Malloy the relief, remedy and redress he was guaranteed on August 17, 2018 per policies/laws cited in jurisdiction herein.

**Fact 23: August 21, 2018**

**Defendants are Responsible & Negligent. Admit Unsafe & Hostile Client.**

The City and State Defendants were also negligent, because they had previously identified one of the clients involved in Malloy's protected report, as "volatile and verbally abusive," on August 21, 2018. Yet, UCSF and the City chose to willfully neglect Malloy's August 17, 2018 protected report, and refused to take the required action to stop, correct, conduct an HR investigation and protect him per his guaranteed rights under policy/law cited in jurisdiction.

[See Exhibit 20. 8-22-18, UCSF-City Admit Unsafe & Hostile Client. Negligent.]

**Fact 24: August 21, 2018**

**Defendants are Negligent. Fail to Administer Required Behavioral Agreement for 46 Days.**

Furthermore, the City and State Defendants did not take any of the required "Behavioral Agreement" Malloy urged them to in his first protected report on August 17, 2018.

That meant, 46 calendar days elapsed from Malloy's first protected report of sex-gender discrimination to UCSF and the City on August 17, 2018, when he expressly offered his assistance in conducting a "Behavioral Agreement" with the unsafe and hostile client, to October 2, 2018 when the defendants actually conducted the behavioral agreement.

[See Exhibit 21. 10-2-18, UCSF-City 46 Days Against Policy to Issue Behavioral Agreement. Negligent.]

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 18

Yet, City and State Defendants did not conduct the required "Behavioral Agreement" until October 2, 2018, after Malloy had been expelled from his worksite, suspended from his job and was 8 days from being wrongfully terminated, for his "reports and complaints" of discrimination to his UCSF Supervisors.

See Exhibit 12, UCSF Counsel Kate Mente, December 13, 2018 Email to Malloy, that provided the "Reasons For" his wrongful termination.

Neither the City nor State Defendants, took any action to provide Malloy his guaranteed rights under City or State Policies, to stop his lawful opposition and protected activity in reporting discrimination, harassment and unsafe-hostile work environment on August 17, 2018.

**Fact 25: September 6, 2018**

**Report #2.**

Malloy reports in writing: race and sexual orientation discrimination and a hostile-unsafe work environment, to his UCSF Supervisor Dr. Valerie Gruber and UCSF Manager Dr. Fumi Mitsuishi.

[See Exhibit 22. 9-6-18. Race-Sexual Orientation-Gender-Discrimination.]

**Fact 26: September 11, 2018**

Malloy reports verbally: discrimination, physical threat, and hostile-unsafe work environment to his DPH Supervisor Charge Nurse Megan Kennel.

**Fact 27: September 12, 2018**

Malloy reports verbally: discrimination, physical threat, and hostile-unsafe work environment to his UCSF Supervisor Dr. Valerie Gruber.

**Fact 28: September 27, 2018**

Malloy reports in Concerted Activity with 5 similarly situated coworkers. Only Malloy is fired for his involvement in the Concerted Activity. All similarly situated employees were not disciplined, received no complaints of discrimination against them and were not fired.

**Fact 29: September 28, 2018**

**Defendants Treat Similarly Situated Employees More Favorably.**

DOCUMENT NAME (e.g., STIPULATION AND ORDER) - 24

In a direct case of discrimination and disparate treatment on September 28, 2018, similarly situated coworkers who were outside of Malloy's protected class reported him for alleged discrimination, due to his previous reports of lawful opposition-protected and concerted activities. [See Exhibit 14. UCSF City 9 Email Evidence Documenting From September 28, 2018 to Nov. 2, 2018 UCSF-City Violating Malloy's Contract Protections and Delegating Means & Method to Act in an Illegal Employer-Employee Relationship with City EEO Mgr. Albert & City Dir. Alice Moughamian to Discipline and Fire Malloy.] DPH Charge Nurse Kennel, DPH Medical Dir. Kelly Eagen, and DPH Program Dir. Alice Moughamian immediately enforced the guaranteed policies/laws cited in jurisdiction treating them more favorably than Malloy.

**Fact 30: As a protected class employee, Malloy gave his UCSF Supervisors 5 Discrimination Reports of lawful opposition, protected & concerted activities on:** August 17, 2018, September 6, 2018, September 11, 2018, September 12, 2018, and September 27, 2018.

**Fact 31:** UCSF & City of San Francisco Defendants did not give Malloy his equal rights under the UCSF Discrimination and Sexual Harassment Policies.

**Fact 32:** UCSF & City of San Francisco Defendants did not immediately stop, take corrective actions and have UCSF or City HR/EEO investigate Malloy's 5 reports.

**Fact 33:** None of those guaranteed equal discrimination & harassment rights, are ever provided to Malloy, due to the willful misconduct and negligence of his UCSF & City of San Francisco Defendants.

**Fact 34:** UCSF & City of San Francisco Defendants did not comply with Malloy's State contract protections and the federal jurisdiction Malloy fell under as a Protected Veteran.

**Fact 35:** However, on September 28, 2018, UCSF & City of San Francisco Defendants did give similarly-situated employees and supervisors, who were outside of Malloy's protected classes as primarily White, Straight and Civilian Coworkers, an immediate UCSF HR investigation of "gender discrimination" against Malloy.

UCSF & City of San Francisco Defendants took adverse employment actions against Malloy for his 5 discrimination reports. Defendants did not take those actions against his similarly-situated coworkers. All guaranteed equal discrimination & harassment rights were provided to similarly-situated employees.

However, Malloy's contract protections were breached, he suffered retaliation and was targeted for his protected characteristics with adverse personnel actions that his similarly-situated coworkers were not. UCSF & City of San Francisco Defendants did comply with similarly-situated employee's state and city contract protections and the federal jurisdiction they fell under, yet Malloy was denied those same rights.

The actions of UCSF & City of San Francisco Defendants on September 28, 2018 constitute disparate treatment and discrimination against Malloy based on the Discrimination, Harassment, Retaliation, Breach of Contract, and Sexual Harassment Policies cited herein.

**Fact 36:** The discriminatory and retaliatory actions of UCSF & City of San Francisco Defendants to ensure Malloy's equal rights were provided on September 28, 2018, also constitute disparate treatment against Malloy as a <u>Covered & Protected Disabled Veteran</u>, based on the protections in his two employment contracts under City of San Francisco EEO Policy/Harassment/Sexual Harassment/Retaliation Policies, Title VII, Title VI, Rehabilitation Act, Executive Order 11246 and VEVRAA/EO Clause.

**VII. ILLEGAL EXTENSION MALLOY PROBATION PERIOD.**

**FACT 37:** UC Regents/UCSF & City of San Francisco Defendants intentionally and unlawfully changed Malloy's probation date in violation of University Policy to wrongfully terminate him.

UCSF Probationary Release Policy clearly states that all UCSF Employees are to be informed of *"the reason for"* any investigation extending their probationary status, at least *"seven (7) calendar days prior to the extension of the original effective date."*

[See Exhibit 23. UC Regent Probation Policy For Malloy.]

*"...The probationary employee shall be informed in writing by his or her immediate supervisor the reason for, and the period of, any extension of probationary status at least seven (7) calendar days prior to the extension of the original effective date."*

UCSF & City of San Francisco Defendants never provided Malloy these equal rights of the reason for, and the 7 day prior warning to his probation end date.

UCSF & City of San Francisco Defendants started an immediate investigation against Malloy on September 28, 2018 due to some similarly-situated coworkers outside of his protected class, reporting

and complaining about Malloy's alleged discrimination during his concerted activity on September 27, 2018.

That was 5 calendar days prior to Malloy's probation effective date of October 2, 2018.

UCSF & City of San Francisco Defendants willfully and intentionally chose not to comply with the Probation Policy and give Malloy his required rights of knowing what the reason for and prior warning by his UCSF Supervisors of the investigation.

UCSF & City of San Francisco Defendants engaged in this misconduct, breach of contract, disparate and discriminate treatment against only Malloy, out of the five similarly-situated coworkers who participated in the concerted activity, and thereby retaliated and created a series of adverse personnel actions against him for his previous 5 discrimination reports of lawful opposition, protected and concerted activities.

Fraudulent Probation Extension Timeline.

**Fact 38:** September 28, 2018 through October 2, 2018

UC Regents/UCSF & City of San Francisco Defendants unlawfully, without the required 7 day prior notification, negligently breached this employment policy right of Malloy.

While Similarly-Situated employees & Supervisors, who were primarily White-Straight & Civilian, and merely did not like Malloy's lawful discrimination reports and complaints were given immediate adverse employment and retaliatory actions against Malloy of:

**A. 9/28/18**

Malloy Expelled from worksite by City Manager Darryl Gault.

**B. 10/2/18**

Malloy Probation Unlawfully Changed Against Policy by City & State Defendants. Malloy was never provided the required "reason for" or 7 day notification. Malloy's equal rights were merely stripped from him by Defendants and he was fired without cause.

[See Exhibit 23. 10-2-18, UCSF-Malloy, Against Policy Probation Extension Letter.]

**C. 10/2/18**

The 10/2/18 Adverse Action Violated Malloy's Covered Veteran and Equal Rights as Required By City & State Laws governing his employment including termination:

City Independent Contractor, City EEO, City Harassment, City Retaliation, EO 11246 & VEVRAA.

**D. 10/3/18**

BREACH of Malloy's 7-1-18 City Contract Independent Contractor - Indemnification – Assignment – Federal – Tort & Personnel Contract Rights.

State & City Defendants Willfully and Negligently BREACHED those provisions against Malloy, where the City was Prohibited from being Delegated or Assigned any Administration in Malloy's Personnel Affairs.

[See Exhibit 13. BREACH of Malloy's Independent Contractor - Indemnification – Assignment – Federal Requirements Violations – Personnel & Tort Contract Rights]

**E. 10/3/18**

Malloy Illegally Coerced, Interrogated, Discriminated & Retaliated Against by UCSF & City Defendants.

Defendants willfully planned a False CITY Government EEO charge of *"gender discrimination"* against Malloy, because he reported his responsible *"straight – white – female"* managers.

See Exhibit 14. 9 Email Evidence of Indemnification – Federal & Tort Breaches by 16 City-State Defendants. Defendant List, Includes Senior Leadership Who Authorized The Illegal Retaliation.

Of note, the false government charge that resulted in Malloy's wrongful termination concluded no such charge was warranted. It was and remains a racist, discriminatory and disparate act by similarly-situated employees to Malloy who were not subjected to such adverse actions, and his primarily "straight-white-female" leadership who targeted him in retaliation.

10/10/18

Malloy wrongfully terminated by UC Regents/UCSF & City of San Francisco Defendants, under an unlawful "probationary release" that assigned no wrong doing or evidence other than his "reports & complaints" to his management as stated by Defendants and their Senior Campus Counsel Kate Mente in Exhibit 12.

**FACT 39: RETALIATION POST WRONGFUL TERMINATION**

Defendants have continued to retaliate against plaintiff with a series of racist, targeted discriminatory and retaliatory adverse actions to continually damage and ensure suffering:

A. On 10/3/18 when defendants breached Malloy's contract protections under indemnification, they also willfully violated his Covered & Protected Employment rights which prohibited such misconduct.

In addition, Malloy fell under the Federal EEO Policy for Protected Veterans and No City EEO Official like Hallie B. Albert, who was dispatched by defendants to threaten, discriminate and retaliate against Malloy was outside of her authority and jurisdiction concerning Malloy.

This was Improper Government Activity and violated plaintiff's contract protections as a Member of the Armed Forces.

This is why Senior City-State Leadership are cited in Defendant List: From President Napolitano, to Mayor Breed, Senior Regent Counsel, City Attorney, etc. These officials authorized the retaliatory attack on Malloy not only in breach of his City & State Contract Protections, but also his Status as a City Independent Contractor/Covered Veteran too.

B. Pay Exhibits 6 & 8 demonstrate Malloy had 3 Pay Comparators: Pettris – Peeples – Degraw. They were not the same classification as Malloy, were not similarly-situated and did not perform the same work. Therefore, Malloy's pay suffered from unequal discrimination. This was a willful and negligent adverse action by defendants even when Malloy repeatedly challenged them as to the truth of his assigned pay comparator's classifications. None of whom, were Patient Navigators, like Malloy.

C. Exhibit 7. As a consequence of defendants retaliatory actions Malloy was denied his Employee Education Benefit, Training and Graduate Tuition Reimbursement.

D. May 2019, Plaintiff was informed by City of San Francisco Human Rights Commissioner Sheryl Davis that City Attorney Herrera had retaliated against Malloy and blocked her lawful authority to conduct a City Contract Investigation of the Discrimination & Retaliation.

E. March 2020, Defendants retaliated and informed CA State Unemployment of Defamatory and Libelous statements, in concert with City Officials 9 Emails which also stated false, unprivileged and malicious words-statements and hearsay against Malloy that resulted in his unemployment compensation, workers compensation being denied and his wrongful termination.

F. March 2020, Defendants retaliated and again with willful falsity targeted Malloy with UCSF Office of Discrimination (OPHD), Dept. of Labor and VA Inspector General Reports that were defamatory, libelous and had the intended effect of causing further adverse actions of retaliation in denying discrimination against plaintiff.

G. July 2020, Defendants in violation of Malloy's 7-1-18 Work Contract were found by City Sunshine Ordinance Task Force Committee to be engaging in active unlawful misconduct in denying plaintiff's public records. City Board of Supervisors and the Full Sunshine Ordinance Task Force to vote and consider application to the City Ethics Commission for pursuit of Ethics Violations by City Officials against Malloy.

MALLOY ASSERTS 13 CLAIMS FOR RELIEF UNDER THIS COURT:

1. Race Discrimination

2. Disabled Discrimination

3. Protected Veteran Discrimination

4. Sexual Orientation Discrimination

5. Gender (Cis) Discrimination

6. Age Discrimination

7. Retaliation

8. Sexual Harassment

9. Breach of Contract

10. Equal Pay

11. Defamation

12. Education Act for loss of Education Benefit

13. Injunctive Relief:

A. Strike Illegal City Rule: "Nigger Not Materially Adverse"

B. Human Rights Commissioner Sheryl Davis Moves Forward with Investigation.

C. Enforce release of my complete personnel file (including my hire and promotion documents too full-time that the defendants have unlawfully refused to release to Plaintiff. *SEE Exhibit 24*

D. Enforce release of all public records concerning Stephen Malloy that defendants have unlawfully refused to release to plaintiff.

E. Debar the two work contracts 7-1-18 City/UCSF Citywide and Affiliation Contract that defendants willfully violated my VEVRAA Protections as a Special Disabled Protected Veteran.

F. Establish a New CITY & UC System wide Office for Protected Disabled Veterans at Regent level Position/Office and Chancellor Level Position/Office for each Campus to ensure required EO 11246 & VEVRAA Obligations under Congress and the Executive Branch are immediately corrected and implemented by the defendants. I monitor this process and have Regent level position and hire approval of all personnel System wide in the UC.

G. Meet Required Affirmative Action Plans and Benchmark Targets for Disabled Protected Veterans at the UC System wide by 2022, AND City HRC Adopts the same measures.
I monitor this process and have Regent level position and termination power of failing responsible Campus & Regent Personnel.

H. Remove Investigative Authority Currently for the UC System wide.

I. Place UC Investigations outside of the current internal process and place with a neutral and unbiased external entity.
I monitor this process and have weighted participation and veto power of the assigned external choice.

J. Defendants must conduct a pay compensation study of minority groups system wide in the UC by an outside and independent entity I approve, due to defendants violation of the equal pay act which prohibit defendants from setting the pay for jobs predominantly held by protected class members below that suggested by the employer's job evaluation study, while the pay for jobs predominantly held by employees outside the protected class is consistent with the level suggested by the job evaluation study.

K. Assignment of a Civil Gideon, which is allowed under CA Civil Law and the Law Firm of My Choice to represent me in the Jury Trial.

**Signed: Stephen Malloy 3-23-20**

# EXHIBIT 1

# ucsf human resources

*Serving the Academic and Staff Community*

10/25 TEP File

Temporary Employment Program
(TEP)
3333 California Street, Suite 219
Box 0832
San Francisco, CA 94143-0832

June 30, 2016

Stephen Grove Malloy
584 Castro Street #742
San Francisco, CA 94114

Dear Stephen,

Congratulations on being selected to fill the floater Administrative Assistant II position for the School of Dentistry, Oral & Maxillofacial Surgery at University of California, San Francisco (UCSF) effective Tuesday, July 05, 2016. This position is classified as Administrative Assistant II, Step 6; it is 100% variable time and is non-exempt. You will be reporting to Jake Blackshear.

The offer is contingent on the completion of the following:
- Successful completion of a background check and fingerprinting

We can offer you an hourly rate of $21.62. In addition to this salary, you are also eligible for the following compensation package:

- An estimate of 8 hours per month of sick leave per year (pro-rated based on your appointment percentage)
- Thirteen (13) UCSF paid holidays (prorated based on your percentage effort)

Please be aware that as an employee working for a public institution, your compensation is considered a public record under the California Public Records Act. If you have any questions concerning the benefits for which you will be eligible, please feel free to contact your HR generalist, Marylou Armeli via phone at 415-502-1054 or via email at Marylou.Armeli@ucsf.edu.

If you would like to read about our benefits package online, please refer to the University of California website at
http://ucnet.universityofcalifornia.edu/compensation-and-benefits/index.html.

This position is covered by the collective bargaining agreement between Teamsters Local 2010 (CX) and the University of California.

1

# ucsf human resources

*Serving the Academic and Staff Community*

.11/25 TEP File

Temporary Employment Program
(TEP)
3333 California Street, Suite 219
Box 0832
San Francisco, CA 94143-0832

You will be contacted by Cindy Carungay to schedule an onboarding session which must be attended on or before your first day. Please bring appropriate documentation for the completion of your new hire forms, including proof that you are presently eligible to work in the United States for I-9 purposes. Failure to provide appropriate documentation within 3 days of hire will result in immediate termination of employment in accordance with the terms of the Immigration Reform and Control Act.

These terms and conditions, as detailed in this letter, represent the total approved compensation elements for your position. The compensation elements stated above may or may not be taxable; please consult with your tax advisor for a determination specific to your individual tax circumstances.

We are impressed with your skills and accomplishments and feel that your background is an excellent match for our present needs. We look forward to having you as part of our team.

This offer will remain open until **Tuesday, July 05, 2016.** Please confirm your acceptance of this offer by signing below and scan/email your acceptance to me via email at Cindy Carungay or via fax at 415-704-3374.

Sincerely,

**Jennifer Wilson-Fischer**
**Senior Recruiter**

The provisions of this offer of employment have been read, are understood, and the offer is herewith accepted. I understand that my employment is contingent upon signature of a University of California Patent Agreement and Oath of Allegiance to the State of California.

Candidate Signature: _____

Date: _____7/1/16_____

1

# EXHIBIT 2

4/25 TEP File



| UNIVERSITY OF CALIFORNIA STATE OATH OF ALLEGIANCE, PATENT POLICY, AND PATENT ACKNOWLEDGMENT | EMPLOYEE'S NAME (Last, First, Middle Initial) MALLOY        STEPHEN        G | | DATE PREPARED Mo/Dy/Yr 07 / 01 / 16 |
|---|---|---|---|
| UPAY585 (R 11/2011) E0420 71443-180 | EMPLOYEE ID 022204952 | DEPARTMENT TEP | EMPLOYMENT DATE Mo/Dy/Yr 7   5   16 |

**STATE OATH OF ALLEGIANCE** I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.

Taken and subscribed before me on: 07/01/16
Mo/Dy/Yr

Signature of Officer or Employee:

Signature of Authorized Official:

Title: **ADMINISTRATIVE ASSISTANT III**

County: San Francisco        State: CA

(Do not sign until in the presence of proper witness.)

NOTE: No fee may be charged for administering this oath.

The oath must be administered by either (1) a person having general authority by law to administer oaths—for example, Notaries Public, Civil Executive Officers (Gov. Code Sec. 1001), Judicial Officers, Justices of the Peace, and county officials named in Gov. Code Sections 24000, 24057, such as, district attorneys, sheriffs, county clerks, members of boards of supervisors, etc., or (2) by any University Officer or employee who has been authorized in writing by The Regents to administer such oaths.

WHO MUST SIGN THE OATH: All persons (other than aliens) employed by the University, in common with all other California public employees, whether with or without compensation, must sign the oath. (Calif. Constitution, Article XX, Section 2, Calif. Gov. Code Sections 3100-3102.)

All persons re-employed by the University after a termination of service must sign a new Oath if the date of re-employment is more than one year after the date on which the previous Oath was signed (Calif. Gov. Code Sec. 3102.)

WHEN OATH MUST BE SIGNED: The Oath must be signed BEFORE the individual enters upon the duties of employment (Calif. Constitution, Article XX, Section 3; Calif. Gov. Code Sec. 3102.)

WHERE OATHS ARE FILED: The Oaths of all employees of the University shall be filed with the Campus Accounting Office.

FAILURE TO SIGN OATH: No compensation for service performed prior to his subscribing to the Oath or affirmation may be paid to a University employee. And no reimbursement for expenses incurred may be paid prior to his subscribing to the Oath or affirmation. (Calif. Gov. Code Sec. 3107.)

PENALTIES: "Every person who, while taking and subscribing to the Oath or affirmation required by this chapter, states as true any material which he knows to be false, is guilty of perjury, and is punishable by imprisonment in the state prison not less than one or more than 14 years." (Calif. Gov. Code Sec. 3108.)

**PATENT ACKNOWLEDGMENT**
This acknowledgment is made by me to The Regents of the University of California, a corporation, hereinafter called "University," in part consideration of my employment, and of wages and/or salary to be paid to me during any period of my employment, by University, and/or my utilization of University research facilities and/or my receipt of gift, grant, or contract research funds through the University.

By execution of this acknowledgment, I understand that I am not waiving any rights to a percentage of royalty payments received by University, as set forth in the University of California Patent Policy, hereinafter called "Policy."

I also understand and acknowledge that the University has the right to change the Policy from time to time, including the percentage of net royalties paid to inventors, and that the policy in effect at the time an invention is disclosed shall govern the University's disposition of royalties, if any, from that invention. Further, I acknowledge that the percentage of net royalties paid to inventors is derived only from consideration in the form of money or equity received under: 1) a license or bailment agreement for licensed rights, or 2) an option or letter agreement leading to a license or bailment agreement. I also acknowledge that the percentage of net royalties paid to inventors is not derived from research funds or from any other consideration of any kind received by the University. The Policy on Accepting Equity When Licensing University Technology governs the treatment of equity received in consideration for a license.

I acknowledge my obligation to assign, and do hereby assign, inventions and patents that I conceive or develop 1) within the course and scope of my University employment while employed by University, 2) during the course of my utilization of any University research facilities, or 3) through any connection with my use of gift, grant, or contract research funds received through the University. I further acknowledge my obligation to promptly report and fully disclose the conception and/or reduction to practice of potentially patentable inventions to the University authorized licensing office. Such inventions shall be examined by the University to determine rights and equities therein in

accordance with the Policy. I shall promptly furnish University with complete information with respect to each.

In the event any such invention shall be deemed by University to be patentable or protectable by an analogous property right, and University desires, pursuant to determination by University as to its rights and equities therein, to seek patent or analogous protection thereon, I shall execute any documents and do all things necessary, at University's expense, to assign to University all rights, title, and interest therein and to assist University in securing patent or analogous protection thereon. The scope of this provision is limited by Calif. Labor Code Sec. 2870, to which notice is given below. In the event I protest the University's determination regarding any rights or interest in an invention, I acknowledge my obligation: (a) to proceed with any University requested assignment or assistance; (b) to give University notice of that protest no later than the execution date of any of the above-described documents or assignment; and (c) to reimburse University for all expenses and costs it encounters in its patent application attempts, if any such protest is subsequently sustained or agreed to.

I acknowledge that I am bound to do all things necessary to enable University to perform its obligations to grantors of funds for research or contracting agencies as said obligations have been undertaken by University.

University may relinquish to me all or a part of its right to any such invention, if, in its judgment, the criteria set forth in the Policy have been met.

I acknowledge that I am bound during any periods of employment by University or for any period during which I conceive or develop any invention during the course of my utilization of any University research facilities, or any gift, grant, or contract research funds received through the University.

In signing this acknowledgment, I understand that the law, of which notification is given below, applies to me, and that I am still required to disclose all my inventions to the University.

NOTICE: This acknowledgment does not apply to an invention which qualifies under the provision of Calif. Labor Code Sec.2870 which provides that (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) Result from any work performed by the employee for the employer. (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable. In any suit or action arising under this law, the burden of proof shall be on the individual claiming the benefits of its provisions.

| RETENTION: Accounting: 5 years after separation, except in cases of disability, retirement or disciplinary action, in which case retain until age 70. | Employee/Guest Name (Please print): Stephen Grove Malloy |
|---|---|
| | Employee/Guest Signature:                                    Date: 7/1/16 |
| Other Copies: 0-5 years after separation | Witness Signature & University Acceptance:              Date: 7/1/16 |

**PLEASE SIGN STATE OATH AND PATENT ACKNOWLEDGMENT**

3/39

# EXHIBIT 3

6/25 TEP File

**VOLUNTARY SELF-IDENTIFICATION OF RACE, ETHNICITY AND VETERAN STATUS**
U5605 (R10/14)  University of California Human Resources

| EMPLOYEE NAME (LAST, FIRST, MIDDLE INITIAL) | CAMPUS | DEPARTMENT/ORGANIZATIONAL UNIT | BIRTHDATE MO DY YR |
|---|---|---|---|
| MALLOY  STEPHEN  G | LHTS | TEP | 08 29 63 |

**INVITATION TO SELF-IDENTIFY RACE AND ETHNICITY**

The University of California is a federal contractor and recipient of federal funds subject to affirmative action requirements set forth in Executive Order 11246, as amended. The University's status as a federal contractor obligates it to maintain and analyze certain data with respect to the race and ethnicity of its workforce. In order to comply with these regulations the University requests its employees to voluntarily self-identify their race and ethnicity. The information provided will be kept confidential and used only in ways that are in accordance with federal and state laws, executive orders, and regulations, including those which require the information to be summarized and reported to the federal government for civil rights enforcement purposes.

**Please answer the question below.**

**Are you Hispanic or Latino?**

☐ **YES, I am Hispanic or Latino**

    ☐ Mexican/Mexican American/Chicano      (E) — A person of Mexican culture or origin regardless of race.

    ☐ Latin American/Latino      (5) — A person of Latin American (e.g. Central American, South American, Cuban, Puerto Rican) culture or origin regardless of race.

    ☐ Other Spanish/Spanish American      (W) — A person of Spanish culture or origin, not included in any of the Hispanic categories listed above.

☒ **NO, I am not Hispanic or Latino**

**In addition, select one or more of the following racial categories that best describe you, if applicable.**

☐ **AMERICAN INDIAN OR ALASKA NATIVE**      (C) — A person having origins in any of the original peoples of North and South America (including Central America) who maintains cultural identification through tribal affiliation or community attachment.

**ASIAN**

☐ Chinese/Chinese American      (2) — A person having origins in any of the original peoples of China.

☐ Filipino/Pilipino      (L) — A person having origins in any of the original peoples of the Philippine Islands.

☐ Japanese/Japanese American      (B) — A person having origins in any of the original peoples of Japan.

☐ Korean/Korean American      (K) — A person having origins in any of the original peoples of Korea.

☐ Pakistani/East Indian      (R) — A person having origins in any of the original peoples of the Indian subcontinent (e.g., India and Pakistan).

☐ Vietnamese/Vietnamese American      (I) — A person having origins in any of the original peoples of Vietnam.

☐ Other Asian      (X) — A person having origins in any of the original peoples of the Far East or South East Asia (including Cambodia, Malaysia and Thailand).

☒ **BLACK OR AFRICAN AMERICAN**      (A) — A person having origins in any of the Black racial groups of Africa.

☐ **NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER** (Z) — A person having origins in any of the original peoples of Hawaii, Guam, Samoa or other Pacific Island.

**WHITE**

☐ European      (G) — A person having origins in any of the original peoples of Europe.

☐ Middle Eastern      (J) — A person having origins in any of the original peoples of the Middle East.

☐ North African      (N) — A person having origins in any of the original peoples of North Africa.

☐ White (not specified)      (F) — A person having origins in any of the original peoples of Europe, the Middle East, or North Africa (region not specified).

**INVITATION TO SELF-IDENTIFY VETERAN STATUS**

The University of California is a Government contractor subject to the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended by the Jobs for Veterans Act of 2002, 38 U.S.C. 4212 (VEVRAA), which requires Government contractors to take affirmative action to employ and advance in employment: (1) disabled veterans; (2) recently separated veterans; (3) active duty wartime or campaign badge veterans, 4) Armed Forces service medal veterans; and (5) Vietnam Era Veterans. **OVER ▶**

RETN: Destroy after data entry pursuant to local procedures      **SEE REVERSE FOR PRIVACY NOTIFICATIONS**

7/25 TEP File

☑ **I AM NOT A PROTECTED VETERAN. (O)**

☐ **I AM A PROTECTED VETERAN, BUT I CHOOSE NOT TO SELF-IDENTIFY THE CLASSIFICATIONS TO WHICH I BELONG. (P)**

**I belong to the following classifications of protected veterans (choose all that apply):**

☑ **DISABLED VETERAN (S)**

A "disabled veteran" is one of the following:

1. a veteran of the U.S. military, ground, naval or air service who is entitled to compensation (or who but for the receipt of military retired pay would be entitled to compensation) under laws administered by the Secretary of Veterans Affairs; or 2. a person who was discharged or released from active duty because of a service-connected disability.

☐ **RECENTLY SEPARATED VETERAN** Please provide separation date _____/_____ (MM, YY)

A "recently separated veteran" means any veteran during the three-year period beginning on the date of such veteran's discharge or release from active duty in the U.S. military, ground, naval or air service.

☐ **ACTIVE WARTIME OR CAMPAIGN BADGE VETERAN (E)**

An "active duty wartime or campaign badge veteran" means a veteran who served on active duty in the U.S. military, ground, naval or air service during a war, or in a campaign or expedition for which a campaign badge has been authorized under the laws administered by the Department of Defense.

☐ **ARMED FORCES SERVICE MEDAL VETERAN (M)**

An "Armed forces service medal veteran" means a veteran who, while serving on active duty in the U.S. military, ground, naval or air service, participated in a United States military operation for which an Armed Forces service medal was awarded pursuant to Executive Order 12985.

☐ **VIETNAM ERA VETERAN (V)**

Vietnam Era Veteran means a person who:

1. Served on active duty for a period of more than 180 days, and was discharged or released therefrom with other than a dishonorable discharge, if any part of such active duty occurred: a. in the republic of Vietnam between February 28, 1961, and May 7, 1975; or b. between August 5, 1964, and May 7, 1975, in all other cases; or 2. Was discharged or released from active duty because of a service-connected disability, if any part of such active duty was performed: a. in the republic of Vietnam between February 28, 1961, and May 7, 1975; or b. between August 5, 1964, and May 7, 1975, in all other cases.

Protected veterans may have additional rights under USERRA—the Uniformed Services Employment and Reemployment Rights Act. In particular, if you were absent from employment in order to perform service in the uniformed service, you may be entitled to be reemployed by your employer in the position you would have obtained with reasonable certainty if not for the absence due to service. For more information, call the U.S. Department of Labor's Veterans Employment and Training Service (VETS), toll-free, at 1-866-4-USA-DOL.

As a Government contractor subject to VEVRAA, we are required to submit a report to the United States Department of Labor each year identifying the number of our employees belonging to each specified "protected veteran" category. If you believe you belong to any of the categories of protected veterans listed above, please indicate by checking the appropriate box above.

If you are a disabled veteran it would assist us if you tell us whether there are accommodations we could make that would enable you to perform the essential functions of the job, including special equipment, changes in the physical layout of the job, changes in the way the job is customarily performed, provision of personal assistance services or other accommodations. This information will assist us in making reasonable accommodations for your disability.

Submission of this information is voluntary and refusal to provide it will not subject you to any adverse treatment. The information provided will be used only in ways that are not inconsistent with the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended.

The information you submit will be kept confidential, except that (i) supervisors and managers may be informed regarding restrictions on the work or duties of disabled veterans, and regarding necessary accommodations; (ii) first aid and safety personnel may be informed, when and to the extent appropriate, if you have a condition that might require emergency treatment; and (iii) Government officials engaged in enforcing laws administered by the Office of Federal Contract Compliance Programs, or enforcing the Americans with Disabilities Act, may be informed.

The University of California is an Equal Opportunity/Affirmative Action Employer. All qualified applicants will receive consideration for employment without regard to race, color, religion, sex, national origin, disability, or protected veteran status.

---

**PRIVACY NOTIFICATION STATEMENT** (Revised February 22, 2010 for U5605)

The State of California Information Practices Act of 1977 requires the University to provide the following information to individuals who are asked to supply personal information about themselves.

1. The principal purpose for requesting the information on this form is to comply with the following Federal requirements: (i) Title VII of the Civil Rights Act of 1964, as amended; (ii) Executive Order 11246, as amended; (iii) Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended; (iv) Section 503 of the Rehabilitation Act of 1973, as amended; (v) Title IV of the Higher Education Act of 1965, as amended (20usc 1094 (a) (17)); and (vi) Section 490 of the Higher Education Amendments of 1992 (P.L. 102–325), as well as relevant implementing regulations.

2. The information supplied on this form is kept confidential. It is used for required aggregated workforce data reporting to the federal government and for internal workforce statistical analysis, reporting, and outreach. It will be given to government agencies responsible for civil rights laws only when requested, or as otherwise required by law. The aggregated workforce data serves as a tool to the administration of campus equal employment opportunity/affirmative action and human resources programs. The information supplied on this form will be used only as described.

3. Furnishing the information requested on this form is voluntary. There is no penalty for not completing the form.

4. Individuals have the right to review their own records in accordance with University personnel policies and collective bargaining agreements. Information on applicable policies and agreements can be obtained from campus or Office of the President human resources and academic personnel offices.

5. The University offices responsible for maintaining the information supplied on this form are the UC Human Resources Office and UC Academic Advancement Office, and campus Equal Employment Opportunity and Affirmative Action Offices.

# EXHIBIT 4

| Rating Decision | Department of Veterans Affairs Veterans Benefits Administration | | Page 1 of 3 08/13/2019 |
|---|---|---|---|
| NAME OF VETERAN STEPHEN MALLOY | VA FILE NUMBER ████ | SOCIAL SECURITY NR ████ | POA |
| | | | COPY TO |

| ACTIVE DUTY | | | |
|---|---|---|---|
| EOD | RAD | BRANCH | CHARACTER OF DISCHARGE |
| 05/25/1985 | 07/02/1987 | Army | Honorable |

| LEGACY CODES | | | |
|---|---|---|---|
| ADD'L SVC CODE | COMBAT CODE | SPECIAL PROV CDE | FUTURE EXAM DATE |
| | | | None |

**JURISDICTION:** New Claim Received 03/22/2019

**ASSOCIATED CLAIM(s):** 020; New 03/22/2019

**SUBJECT TO COMPENSATION (1 SC)**

████ ████
Service Connected, Peacetime, Incurred
Static Disability
50% from 03/22/2019

████ ████
Service Connected, Peacetime, Incurred
Static Disability
10% from 04/21/2017
40% from 11/09/2018

████ ████
Service Connected, Peacetime, Secondary
Static Disability
30% from 11/03/2017

████ ████
Service Connected, Peacetime, Incurred
Static Disability
10% from 07/03/1987

████ ████
Service Connected, Peacetime, Incurred



# EXHIBIT 5

(vii) The current work experience of incumbents in similar jobs.

(m) *Government* means the Government of the United States of America.

(n) *Government contract* means any agreement or modification thereof between any contracting agency and any person for the purchase, sale or use of personal property or nonpersonal services (including construction). The term *Government contract* does not include agreements in which the parties stand in the relationship of employer and employee, and federally assisted contracts.

(1) *Construction,* as used in the definition of Government contract and subcontract of this section, means the construction, rehabilitation, alteration, conversion, extension, demolition, or repair of buildings, highways, or other changes or improvements to real property, including facilities providing utility services. The term also includes the supervision, inspection, and other on-site functions incidental to the actual construction.

(2) *Contracting agency* means any department, agency, establishment or instrumentality of the United States, including any wholly owned Government corporation, which enters into contracts.

(3) *Modification* means any alteration in the terms and conditions of a contract, including supplemental agreements, amendments and extensions.

(4) *Nonpersonal services,* as used in the definition of Government contract and subcontract of this section, includes, but is not limited to, the following: Utility, construction, transportation, research, insurance, and fund depository.

(5) *Person,* as used in the definition of Government contract and subcontract of this section, means any natural person, corporation, partnership or joint venture, unincorporated association, state or local government, and any agency, instrumentality, or subdivision of such a government.

(6) *Personal property,* as used in the definition of Government contract and subcontract of this section, includes supplies and contracts for the use of real property (such as lease arrangements), unless the contract for the use of real property itself constitutes real property (such as easements).

(o) *Pre-JVA veteran* means an individual who is an employee of or applicant to a contractor with a contract of $25,000 or more entered into prior to December 1, 2003 and unmodified since to $100,000 or more, and who is a special disabled veteran, veteran of the Vietnam era, pre-JVA recently separated veteran, or other protected veteran, as defined below:

(1) *Special disabled veteran* means:

(i) A veteran who is entitled to compensation (or who but for the receipt of military retired pay would be entitled to compensation) under laws administered by the Department of Veterans Affairs for a disability:

(A) Rated at 30 percent or more; or

(B) Rated at 10 or 20 percent in the case of a veteran who has been determined under 38 U.S.C. 3106 to have a serious employment handicap; or

(ii) A person who was discharged or released from active duty because of a service-connected disability.

(2) Veteran of the Vietnam Era means a person who:

(i) Served on active duty for a period of more than 180 days, and was discharged or released therefrom with other than a dishonorable discharge, if any part of such active duty occurred:

(A) In the Republic of Vietnam between February 28, 1961, and May 7, 1975; or

(B) Between August 5, 1964, and May 7, 1975, in all other cases; or

(ii) Was discharged or released from active duty for a service-connected disability if any part of such active duty was performed:

(A) In the Republic of Vietnam between February 28, 1961, and May 7, 1975; or

(B) Between August 5, 1964, and May 7, 1975, in all other cases.

(3) Pre-JVA recently separated veteran means a pre-JVA veteran during the one-year period beginning on the date of the pre-JVA veteran's discharge or release from active duty.

(4) Other protected veteran means a person who served on active duty during a war or in a campaign or expedition for which a campaign badge has been authorized, under the laws administered by the Department of Defense.

(b) *Waivers*—(1) *Specific contracts and classes of contracts.* The Director may waive the application to any contract of the equal opportunity clause in whole or part when he or she deems that special circumstances in the national interest so require. The Director may also grant such waivers to groups or categories of contracts: Where it is in the national interest; where it is found impracticable to act upon each request individually; and where such waiver will substantially contribute to convenience in administration of the Act. When a waiver has been granted for any class of contracts, the Director may withdraw the waiver for a specific contract or group of contracts to be awarded, when in his or her judgment such action is necessary or appropriate to achieve the purposes of the Act. The withdrawal shall not apply to contracts awarded prior to the withdrawal, except that in procurements entered into by formal advertising, or the various forms of restricted formal advertising, such withdrawal shall not apply unless the withdrawal is made more than 10 calendar days before the date set for the opening of the bids.

(2) *National security.* Any requirement set forth in the regulations of this part shall not apply to any contract whenever the head of the contracting agency determines that such contract is essential to the national security and that its award without complying with such requirements is necessary to the national security. Upon making such a determination, the head of the contracting agency will notify the Director in writing within 30 days.

(3) *Facilities not connected with contracts.* The Director may waive the requirements of the equal opportunity clause with respect to any of a contractor's facilities which he or she finds to be in all respects separate and distinct from activities of the contractor related to the performance of the contract, provided that he or she also finds that such a waiver will not interfere with or impede the effectuation of the Act. Such waivers shall be considered only upon the request of the contractor.

↥ Back to Top

### §60-300.5  Equal opportunity clause.

(a) *Government contracts.* Each contracting agency and each contractor shall include the following equal opportunity clause in each of its covered Government contracts or subcontracts (and modifications, renewals, or extensions thereof if not included in the original contract):

### EQUAL OPPORTUNITY FOR VEVRAA PROTECTED VETERANS[3]

[3]The definitions set forth in 41 CFR 60-300.2 apply to the terms used throughout this Clause, and they are incorporated herein by reference.

1. The contractor will not discriminate against any employee or applicant for employment because he or she is a disabled veteran, recently separated veteran, active duty wartime or campaign badge veteran, or Armed Forces service medal veteran (hereinafter collectively referred to as "protected veteran(s)") in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified individuals without discrimination based on their status as a protected veteran in all employment practices, including the following:

i. Recruitment, advertising, and job application procedures.

ii. Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff and rehiring.

iii. Rates of pay or any other form of compensation and changes in compensation.

iv. Job assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists.

v. Leaves of absence, sick leave, or any other leave.

vi. Fringe benefits available by virtue of employment, whether or not administered by the contractor.

vii. Selection and financial support for training, including apprenticeship, and on-the-job training under 38 U.S.C. 3687, professional meetings, conferences, and other related activities, and selection for leaves of absence to pursue training.

viii. Activities sponsored by the contractor including social or recreational programs.

ix. Any other term, condition, or privilege of employment.

2. The contractor agrees to immediately list all employment openings which exist at the time of the execution of this contract and those which occur during the performance of this contract, including those not generated by this contract and including those occurring at an establishment of the contractor other than the one where the contract is being performed, but excluding those of independently operated corporate affiliates, with the appropriate employment service delivery system where the opening occurs. Listing employment openings with the state workforce agency job bank or with the local employment service delivery system where the opening occurs will satisfy the requirement to list jobs with the appropriate employment service delivery system. In order to satisfy the listing requirement described herein, contractors must provide information about the job vacancy in any manner and format permitted by the appropriate employment service delivery system which will allow that system to provide priority referral of veterans protected by VEVRAA for that job vacancy. Providing information on employment openings to a privately run job service or exchange will satisfy the contractor's listing obligation if the privately run job service or exchange provides the information to the appropriate employment service delivery system in any manner and format that the employment service delivery system permits which will allow that system to provide priority referral of protected veterans.

3. Listing of employment openings with the appropriate employment service delivery system pursuant to this clause shall be made at least concurrently with the use of any other recruitment source or effort and shall involve the normal obligations which attach to the placing of a *bona fide* job order, including the acceptance of referrals of veterans and nonveterans. The listing of employment openings does not require the hiring of any particular job applicants or from any particular group of job applicants, and nothing herein is intended to relieve the contractor from any requirements in Executive orders or regulations regarding nondiscrimination in employment.

4. Whenever a contractor, other than a state or local governmental contractor, becomes contractually bound to the listing provisions in paragraphs 2 and 3 of this clause, it shall advise the employment service delivery system in each state where it has establishments that: (a) It is a Federal contractor, so that the employment service delivery systems are able to identify them as such; and (b) it desires priority referrals from the state of protected veterans for job openings at all locations within the state. The contractor shall also provide to the employment service delivery system the name and location of each hiring location within the state and the contact information for the contractor official responsible for hiring at each location. The "contractor official" may be a chief hiring official, a Human Resources contact, a senior management contact, or any other manager for the contractor that can verify the information set forth in the job listing and receive priority referrals from employment service delivery systems. In the event that the contractor uses any external job search organizations to assist in its hiring, the contractor shall also provide to the employment service delivery system the contact information for the job search organization(s). The disclosures required by this paragraph shall be made simultaneously with the contractor's first job listing at each employment service delivery system location after the effective date of this final rule. Should any of the information in the disclosures change since it was last reported to the employment service delivery system location, the contractor shall provide updated information simultaneously with its next job listing. As long as the contractor is contractually bound to these provisions and has so advised the employment service delivery system, there is no need to advise the employment service delivery system of subsequent contracts. The contractor may advise the employment service delivery system when it is no longer bound by this contract clause.

5. The provisions of paragraphs 2 and 3 of this clause do not apply to the listing of employment openings which occur and are filled outside of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, American Samoa, the Commonwealth of the Northern Mariana Islands, Wake Island, and the Trust Territories of the Pacific Islands.

6. As used in this clause: i. *All employment openings* includes all positions except executive and senior management, those positions that will be filled from within the contractor's organization, and positions lasting three days or less. This term includes full-time employment, temporary employment of more than three days' duration, and part-time employment.

ii. *Executive and senior management* means: (1) Any employee (a) compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities; (b) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (c) who customarily and regularly directs the work of two or more other employees; and (d) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight; or (2) any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which the employee is employed, regardless of whether the business is a corporate or other type of organization, and who is actively engaged in its management.

iii. *Positions that will be filled from within the contractor's organization* means employment openings for which no consideration will be given to persons outside the contractor's organization (including any affiliates, subsidiaries, and parent companies) and includes any openings which the contractor proposes to fill from regularly established "recall" lists. The exception does not apply to a particular opening once an employer decides to consider applicants outside of his or her own organization.

7. The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

8. In the event of the contractor's noncompliance with the requirements of this clause, actions for noncompliance may be taken in accordance with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

9. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, provided by or through the contracting officer. Such notices shall state the rights of applicants and employees as well as the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified employees and applicants who are protected veterans. The contractor must ensure that applicants or employees who are disabled veterans are provided the notice in a form that is accessible and understandable to the disabled veteran (e.g., providing Braille or large print versions of the notice, posting the notice for visual accessibility to persons in wheelchairs, providing the notice electronically or on computer disc, or other versions). With respect to employees who do not work at a physical location of the contractor, a contractor will satisfy its posting obligations by posting such notices in an electronic format, provided that the contractor provides computers that can access the electronic posting to such employees, or the contractor has actual knowledge that such employees otherwise are able to access the electronically posted notices. Electronic notices for employees must be posted in a conspicuous location and format on the company's intranet or sent by electronic mail to employees. An electronic posting must be used by the contractor to notify job applicants of their rights if the contractor utilizes an electronic application process. Such electronic applicant notice must be conspicuously stored with, or as part of, the electronic application.

10. The contractor will notify each labor organization or representative of workers with which it has a collective bargaining agreement or other contract understanding that the contractor is bound by the terms of VEVRAA, and is committed to take affirmative action to employ and advance in employment, and shall not discriminate against, protected veterans.

11. The contractor will include the provisions of this clause in every subcontract or purchase order of $100,000 or more, unless exempted by the rules, regulations, or orders of the Secretary issued pursuant to VEVRAA so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the Director, Office of Federal Contract Compliance Programs, may direct to enforce such provisions, including action for noncompliance.

12. The contractor must, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to their protected veteran status.

[End of Clause]

(b) *Subcontracts.* Each contractor shall include the equal opportunity clause in each of its subcontracts subject to this part.

(c) *Adaptation of language.* Such necessary changes in language may be made to the equal opportunity clause as must be appropriate to identify properly the parties and their undertakings.

(d) *Inclusion of the equal opportunity clause in the contract.* It is not necessary to include the equal opportunity clause verbatim in the contract. The clause shall be made a part of the contract by citation to 41 CFR 60-300.5(a) and inclusion of the following language, in bold text, after the citation: "THIS CONTRACTOR AND SUBCONTRACTOR SHALL ABIDE BY THE REQUIREMENTS

OF 41 CFR 60-300.5(A). THIS REGULATION PROHIBITS DISCRIMINATION AGAINST QUALIFIED PROTECTED VETERANS, AND REQUIRES AFFIRMATIVE ACTION BY COVERED PRIME CONTRACTORS AND SUBCONTRACTORS TO EMPLOY AND ADVANCE IN EMPLOYMENT QUALIFIED PROTECTED VETERANS."

(e) *Incorporation by operation of the Act.* By operation of the Act, the equal opportunity clause shall be considered to be a part of every contract and subcontract required by the Act and the regulations in this part to include such a clause, whether or not it is physically incorporated in such contract and whether or not there is a written contract between the agency and the contractor.

(f) *Duties of contracting agencies.* Each contracting agency shall cooperate with the Director and the Secretary in the performance of their responsibilities under the Act. Such cooperation shall include insuring that the equal opportunity clause is included in all covered Government contracts and that contractors are fully informed of their obligations under the Act and this part, providing the Director with any information which comes to the agency's attention that a contractor is not in compliance with the Act or this part, responding to requests for information from the Director, and taking such actions for noncompliance as are set forth in §60-300.66 as may be ordered by the Secretary or the Director.

↑ Back to Top

## Subpart B—Discrimination Prohibited

↑ Back to Top

### §60-300.20   Covered employment activities.

The prohibition against discrimination in this part applies to the following employment activities:

(a) Recruitment, advertising, and job application procedures;

(b) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;

(c) Rates of pay or any other form of compensation and changes in compensation;

(d) Job assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists;

(e) Leaves of absence, sick leave, or any other leave;

(f) Fringe benefits available by virtue of employment, whether or not administered by the contractor;

(g) Selection and financial support for training, including, apprenticeships, professional meetings, conferences and other related activities, and selection for leaves of absence to pursue training;

(h) Activities sponsored by the contractor including social and recreational programs; and

(i) Any other term, condition, or privilege of employment.

↑ Back to Top

### §60-300.21   Prohibitions.

The term discrimination includes, but is not limited to, the acts described in this section and §60-300.23.

(a) *Disparate treatment.* It is unlawful for the contractor to deny an employment opportunity or benefit or otherwise to discriminate against a qualified individual because of that individual's status as a protected veteran or pre-JVA veteran.

(b) *Limiting, segregating and classifying.* Unless otherwise permitted by this part, it is unlawful for the contractor to limit, segregate, or classify a job applicant or employee in a way that adversely affects his or her employment opportunities or status on the basis of that individual's status as a protected veteran or pre-JVA veteran. For example, the contractor may not segregate protected veterans as a whole, or any classification of protected veterans or pre-JVA veterans, into separate work areas or into separate lines of advancement.

(c) *Contractual or other arrangements*—(1) *In general.* It is unlawful for the contractor to participate in a contractual or other arrangement or relationship that has the effect of subjecting the contractor's own qualified applicant or employee who is a protected veteran or pre-JVA veteran to the discrimination prohibited by this part.

(2) *Contractual or other arrangement defined.* The phrase "contractual or other arrangement or relationship" includes, but is not limited to, a relationship with: an employment or referral agency; a labor organization, including a collective bargaining

(d) The contractor shall submit the affirmative action program within 30 days of a request from OFCCP, unless the request provides for a different time. The contractor also shall make the affirmative action program promptly available on-site upon OFCCP's request.

**t** Back to Top

### §60-300.41   Availability of affirmative action program.

The full affirmative action program, absent the data metrics required by §60-300.44(k), shall be made available to any employee or applicant for employment for inspection upon request. The location and hours during which the program may be obtained shall be posted at each establishment.

**t** Back to Top

### §60-300.42   Invitation to self-identify.

(a) *Pre-offer.* The contractor shall invite applicants to inform the contractor whether the applicant believes that he or she is a protected veteran who may be covered by the Act. This invitation may be included in the application materials for the position, but in any circumstance shall be provided to applicants prior to making an offer of employment to a job applicant.

(b) *Post-offer.* In addition to the invitation in paragraph (a) of this section, the contractor shall invite applicants to inform the contractor whether the applicant believes that he or she belongs to one or more of the specific categories of protected veteran for which the contractor is required to report pursuant to 41 CFR part 61-300. Such an invitation shall be made at any time after the offer of employment but before the applicant begins his or her job duties.

(c) The invitations referenced in paragraphs (a) and (b) of this section shall state that the contractor is a Federal contractor required to take affirmative action to employ and advance in employment protected veterans pursuant to the Act. The invitations also shall summarize the relevant portions of the Act and the contractor's affirmative action program. Furthermore, the invitations shall state that the information is being requested on a voluntary basis, that it will be kept confidential, that refusal to provide it will not subject the applicant to any adverse treatment, and that it will not be used in a manner inconsistent with the act. (An acceptable form for such an invitation is set forth in appendix B of this part.)

(d) If an applicant identifies himself or herself as a disabled veteran in the post-offer self-identification detailed in paragraph (b) of this section, the contractor should inquire of the applicant whether an accommodation is necessary, and if so, should engage with the applicant regarding reasonable accommodation. The contractor may make such inquiries to the extent they are consistent with the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. 12101, *et seq.* The contractor shall maintain a separate file in accordance with §60-300.23(d) on persons who have self-identified as disabled veterans.

(e) The contractor shall keep all information on self-identification confidential. The contractor shall provide the information to OFCCP upon request. This information may be used only in accordance with this part.

(f) Nothing in this section relieves the contractor of its obligation to take affirmative action with respect to those applicants or employees who are known to the contractor to be protected veterans.

(g) Nothing in this section relieves the contractor from liability for discrimination under the Act.

**t** Back to Top

### §60-300.43   Affirmative action policy.

Under the affirmative action obligations imposed by the Act, contractors shall not discriminate against protected veterans, and shall take affirmative action to employ and advance in employment qualified protected veterans at all levels of employment, including the executive level. Such action shall apply to all employment activities set forth in §60-300.20.

**t** Back to Top

### §60-300.44   Required contents of affirmative action programs.

Acceptable affirmative action programs shall contain, but not necessarily be limited to, the following elements:

(a) *Policy statement.* The contractor shall include an equal opportunity policy statement in its affirmative action program, and shall post the policy statement on company bulletin boards. The contractor must ensure that applicants and employees who are disabled veterans are provided the notice in a form that is accessible and understandable to the disabled veteran (e.g., providing Braille or large print versions of the notice, or posting the notice for visual accessibility to persons in wheelchairs). The policy statement shall indicate the top United States executive's (such as the Chief Executive Officer or the President of the United States Division of a foreign company) support for the contractor's affirmative action program, provide for an audit and reporting system (see paragraph (h) of this section) and assign overall responsibility for the implementation of affirmative action

# EXHIBIT 6

58/111 HR
File

# UNIVERSITY OF CALIFORNIA, SAN FRANCISCO

BERKELEY • DAVIS • IRVINE • LOS ANGELES • RIVERSIDE • SAN DIEGO • SAN FRANCISCO　　　　SANTA BARBARA • SANTA CRUZ



Constance Revore
Division Administrator
DEPARTMENT OF PSYCHIATRY-ZUCKERBERG SFGH

Box 1385
982 Mission Street
SAN FRANCISCO, CALIFORNIA 94103
EMAIL: Constance.Revore@ucsf.edu

March 19, 2018

Stephen Malloy
584 Castro Street, #742
San Francisco, CA 94114

Dear Stephen,

Congratulations on being selected to fill the career Patient Navigator position for the Psychiatry-ZSFG at University of California, San Francisco (UCSF) effective Monday, April 2, 2018. This position is classified as Patient Navigator, title code 4199, is 50% fixed time and is non-exempt bi-weekly. You will be reporting to Valerie Gruber, PhD.

Please note the above mentioned date is pending completion of a pre-employment background check. We reserve the right to rescind this offer of employment should the results of your background check not be successful.

We can offer you an hourly rate of $21.85, Grade 17. In addition to this salary, you are also eligible for the following compensation package:

Full Benefits. This represents a Benefits Eligibility Level Indicator (BELI) of 1. For further information click here.

**BELI CODE ACTION**

☐ INITIAL APPOINTMENT—BELI FOR NEW EMPLOYEE: Your BELI is being set to _____. This chart represents the health and welfare benefits associated with each benefits package. UC bases your ongoing eligibility on the number of regular hours you are paid by UC to work each week (Paid time excludes bonuses and overtime). To remain eligible for your benefit level, you must maintain an average regular paid time of at least 17.5 hours per week in an eligible appointment.

| Health and Welfare Benefit Packages | Medical | Core Medical | Dental Vision | Legal | Basic Life | Core Life | Supplemental Life | Basic Dependent Life | Expanded Dependent Life | Short Term Disability | Supplemental Disability | AD&D DepCare UCRA TIP | Auto/ Home/ Renter |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Full Benefits BELI 1 | yes* | yes* | yes | yes | yes | | yes* | yes | yes** | yes | yes | yes | yes |
| ☐ Medical BELI 2,3 | yes* | yes* | | yes | | yes | yes | yes | yes** | | | yes | yes |
| ☐ Core BELI 4 | | yes | | yes | | yes | | | | | | yes | |
| ☐ No benefits BELI 5 | | | | | | | | | | | | | |
| ☐ Post Doctoral Scholar Benefits Plan BELI P | yes (PSBP only) | | yes (PSBP only) | | yes (PSBP only) | | | | | | yes (PSBP only) | yes (PSBP only) | |

* May not be enrolled in medical and Core medical plans concurrently.
** Must be enrolled in Supplemental Life.

A retirement plan that requires your participation and contributions and may include University contributions. For further information click here.

If you would like to read about our benefits package online, please refer to the University of California website at http://ucnet.universityofcalifornia.edu/compensation-and-benefits/index.html.

- An estimate of 8 hours per month or 12 days of sick leave per year (pro-rated based on your appointment percentage)
- An estimate of 10 hours per month or 15 days of vacation per year (pro-rated based on your appointment percentage)
- Thirteen (13) UCSF paid holidays (prorated based on your percentage effort)

Please be aware that as an employee working for a public institution, your compensation is considered a public record under the California Public Records Act. If you have any questions concerning the benefits for which you will be eligible, please feel free to contact the Benefits Office via phone at 415-476-1400 or via email at benefits@ucsf.edu.

If you would like to read about our benefits package online, please refer to the University of California website at http://ucnet.universityofcalifornia.edu/compensation-and-benefits/index.html.

Employees appointed to a career position serve a probationary period of six months. During this time an employee's work performance and general suitability for University employment is evaluated. Prior to the completion of the probationary period an employee may be released at the sole discretion of the University. Your probationary period will end on **October 2, 2018** unless you are notified otherwise per policy.

You must attend a pre-employment health screening appointment on or before your start date. Your supervisor or the Division Administrator will need complete a "Request for Service Form". Once completed, please allow 72 business hours for processing. An OHS Representative will contact you at the information provided. If an OHS representative has not contacted you within 72 business hours, then call 415-885-7580 to schedule your appointment. The complete screening process may take up to three weeks. OHS is located at 2330 Post Street, 4th Floor, Suite 460, San Francisco, CA 94143. Office Hours are Monday – Friday, 7:30am – 4:00 pm. Please present this letter as proof of employment.

This position is covered by the Personnel Policies for Staff Members (PPSM) and the University of California.

You will be contacted by Alice Shvarts to schedule an onboarding session which must be attended on or before your first day. Please bring appropriate documentation for the completion of your new hire forms, including proof that you are presently eligible to work in the United States for I-9 purposes. Failure to

60/111 HR
File

provide appropriate documentation within 3 days of hire will result in immediate termination of employment in accordance with the terms of the Immigration Reform and Control Act.

These terms and conditions, as detailed in this letter, represent the total approved compensation elements for your position. The compensation elements stated above may or may not be taxable; please consult with your tax advisor for a determination specific to your individual tax circumstances.

We are impressed with your skills and accomplishments and feel that your background is an excellent match for our present needs. We look forward to having you as part of our team.

This offer will remain open until **Tuesday, March 20, 2018**. Please confirm your acceptance of this offer by signing below and scan/email your acceptance to me via email at Constance.Revore@ucsf.edu.

Sincerely,

Connie Revore
Division Administrator
Department of Psychiatry-ZSFG

The provisions of this offer of employment have been read, are understood, and the offer is herewith accepted. I understand that my employment is contingent upon signature of a University of California Patent Agreement and Oath of Allegiance to the State of California.

Candidate Signature: _____

Date: 3/20/18

68/111 HR File

Does this position require oversight or management funds?    No

Are there other employees that perform the same work? Yes
Frances Petris
Chet Peeples
Cate DeGraw

## Included with this Position Description are the following addendums:

| | |
|---|---|
| | Addendum A: Physical Requirements / Work Environment |
| | Addendum B: Living Pride Standards (REQUIRED for UCSF Health Employees) |
| | Addendum C: Medication Access and Storage (REQUIRED for UCSF Health Employees) |

**Please follow your department's procedures for management review and then submit to Human Resources**

(Initial requests do not require signatures.  Once an employee has started, or a reclassification has been approved, please submit the signed document to Human Resources.)

**Supervisor Name:** Valerie Gruber, PhD    **Supervisor Title** Director, Citywide STOP Program

**Employee Signature:**    **Supervisor Signature:**

**Date:** 3/20/18    **Date:**

# EXHIBIT 7

# City College of Sa    rancisco - Drug and Alcoh(   Certificate Program
## Behavioral Health Services Cohort
## Summer 2017 Nomination Form (Page 2 of 3)

**Our program:**

The Drug and Alcohol Certificate is 37.5 unit program accredited by the California Association for Alcohol/Drug Educators (CAADE) and meets the requirements for state certification of drug and alcohol counselors. Our program emphasizes a harm reduction approach to address the many factors of addiction. All of our classes are offered part-time in the evenings. Credits are applicable towards a CCSF Associate Degree and are transferable to San Francisco State University. At the end of the 2nd semester of the Cohort, students will have completed the first three classes required for the certificate.

**The Employer agrees to the following:**

1. Allow the student/employee to leave work early one day per week (Tuesday) to get to class on time at 5pm at the CCSF campus at 50 Phelan Avenue (June 12 - July 24) and 4pm in Fall 2018. Employer agrees to pay employee for those hours and that employee will *not* lose pay for that time (most employers count this time as Professional Development time where employees continue to receive their pay while learning new skills).

2. Be supportive in helping their employees return to school and take classes towards their Drug & Alcohol certificate.

3. Ensure that the employee attends the mandatory orientation session on the first night of class scheduled for **Tuesday, June 12, 2018** from 4-7 pm at the CCSF Ocean Campus at 50 Phelan Avenue, San Francisco MUB Building Room 330.

_____          _5/15/18_____
Nominating Supervisor's Signature          Date

**The deadline for submissions is Tuesday, May 15, 2018 at 5pm. Notification of acceptance into the program will be provided by, and letters will be mailed to all new certificate students May 22, 2018.**

> **\*\*\* DEADLINE:  MAY 15, 2018 \*\*\***

# City College of S₂    rancisco - Drug and Alcoh    Certificate Program
## Behavioral Health Services Cohort
## Summer 2018 Nomination Form (Page 1 of 3)

**Please complete all pages of this form** and fax it to "ATTN: Eric Lewis" at (415) 452-5162 (see below for other ways to submit the form). Each agency or site can nominate up to **four** employees. If you have any questions, please contact Eric Lewis at (415) 452-5159 or edlewis@ccsf.edu

Agency Name: _UCSF Citywide STOP and Sobering Center_

Nominating Supervisor: _Valerie Gruber PhD_

Agency Address: _982 Mission St._
_San Francisco, CA 94103_

Agency Phone #: _415 597-8038_

Agency Fax #: _415 597-8004_

Email Address: _Valerie.Gruber@ucsf.edu_

## EMPLOYEE(S) YOU ARE NOMINATING:

1. _Stephen Malloy_
2. _____
3. _____
4. _____

## EMPLOYEE'S JOB TITLE:

_RADT-1, Patient Navigator_
_____
_____
_____

## Completed applications may be submitted in _any_ of the following ways:
- Fax to 415-452-5162 (ATTN: Eric Lewis) or
- Hand-deliver to Eric Lewis, Multi-Use Building (MUB) room 353 (clearly mark "Eric Lewis" on the envelope) or
- Mail to Eric Lewis, CCSF, 50 Phelan Ave. Box MU353, San Francisco, CA 94112 *** MAILED APPLICATIONS MUST BE POSTMARKED BY MAY 15, 2018 or
- Email to edlewis@ccsf.edu

## *** DEADLINE:    MAY 15, 2018 ***

# EXHIBIT 8

85/111 HR File

# UNIVERSITY OF CALIFORNIA, SAN FRANCISCO

BERKELEY · DAVIS · IRVINE · LOS ANGELES · RIVERSIDE · SAN DIEGO · SAN FRANCISCO            SANTA BARBARA · SANTA CRUZ

*Constance Revore*
Division Administrator
DEPARTMENT OF PSYCHIATRY ZUCKERBERG SFGH

Box 1385
982 Mission Street
SAN FRANCISCO, CALIFORNIA 94101
EMAIL: Constance.Revore@ucsf.edu

July 25, 2018

Stephen Malloy
584 Castro Street, #742
San Francisco, CA 94114

Dear Stephen,

Congratulations on being selected to fill the career Peer Navigator position for the Department of Psychiatry-ZSFG, at University of California, San Francisco (UCSF) effective Monday, July 30, 2018. This position is classified as Patient Navigator 2, Title Code 4199, is 100% fixed time and is non-exempt. You will be reporting to Valerie Gruber, director, Citywide STOP Program.

We can offer you an hourly salary of $21.85, Grade 17.

This offer will not disrupt your current benefits eligibility and there will not be a change in your vacation and sick accrual rates.

Please be aware that as an employee working for a public institution, your compensation is considered a public record under the California Public Records Act. If you have any questions concerning the benefits for which you will be eligible, please feel free to contact your HR generalist, The Benefits office via phone at 415.476.1400 or via email at benefits@ucsf.edu.

If you would like to read about our benefits package online, please refer to the University of California website at http://ucnet.universityofcalifornia.edu/compensation-and-benefits/index.html.

This position is covered by the Personnel Policies for Staff Members (PPSM) and the University of California.

These terms and conditions, as detailed in this letter, represent the total approved compensation elements for your position. The compensation elements stated above may or may not be taxable; please consult with your tax advisor for a determination specific to your individual tax circumstances.

We are impressed with your skills and accomplishments and feel that your background is an excellent match for our present needs. We look forward to having you as part of our team.

This offer will remain open until Thursday, July 26, 2018. Please confirm your acceptance of this offer by signing below and scan/email your acceptance to me via email at Constance.Revore@ucsf.edu.

86/111 HR file

Sincerely,

Connie Revore
Division Administrator
Department of Psychiatry-ZSFG

The provisions of this offer of employment have been read, are understood, and the offer is herewith accepted. I understand that my employment is contingent upon signature of a University of California Patent Agreement and Oath of Allegiance to the State of California.

Candidate Signature:

Date: 7/25/18

80/111  HR File

Does this position require oversight or management funds?    No

**Are there other employees that perform the same work? Yes**
Frances Petris
Chet Peeples
Cate DeGraw

## Included with this Position Description are the following addendums:

|  | Addendum A: Physical Requirements / Work Environment |
|---|---|
|  | Addendum B: Living Pride Standards (REQUIRED for UCSF Health Employees) |
|  | Addendum C: Medication Access and Storage (REQUIRED for UCSF Health Employees) |

**Please follow your department's procedures for management review and then submit to Human Resources**

(Initial requests do not require signatures.  Once an employee has started, or a reclassification has been approved, please submit the signed document to Human Resources.)

| Supervisor Name: | Valerie Gruber, PhD | Supervisor Title | Director, Citywide STOP Program |
|---|---|---|---|
| Employee Signature: |  | Supervisor Signature: |  |
| Date: |  | Date: |  |

# EXHIBIT 9



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

REGION IX
CALIFORNIA

50 UNITED NATIONS PLAZA
MAIL BOX 1200; ROOM 1545
SAN FRANCISCO, CA 94102

May 6, 2019

Stephen Malloy
Grovestand2012@gmail.com

(In reply, please refer to case numbers 09-19-2237 and 09-19-2238.)

Dear Mr. Malloy:

On April 10, 2019, the U.S. Department of Education, Office for Civil Rights (OCR), received your complaint against the Regents of the University of California (Regents) and the University of California, San Francisco (University). You allege that you have been discriminated against based on race, sex, age and disability. Specifically, you allege the following:

1. The University failed to respond to your report that a patient/client subjected your co-worker to race discrimination by using a racially derogatory word;

2. The University failed to respond to your report that you and a co-worker were subjected to sex discrimination when a patient/client used sexually derogatory words;

3. When responding to your reports of race-based discrimination against a co-worker, your supervisor at the University dismissed your concerns because of your age;

4. Because of your advocacy, you were retaliated against by the University when you were dismissed on October 10, 2018; and

5. The Regents have failed to develop an adequate affirmative action plan which discriminates against potential applicants on multiple bases, including race, sex, disability and age.

OCR enforces Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 and the Department's implementing regulations. Title VI and Title IX prohibit discrimination on the bases of race, color, national origin and sex in programs and activities operated by recipients of Federal financial assistance. The University receives funds from the Department. As explained below, we are referring all

The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access.

www.ed.gov

Page 2 of 3: 09-19-2237 and 09-19-2238

of your complaint allegations to the Equal Employment Opportunity Commission (EEOC) for appropriate action.

OCR's jurisdiction to investigate individual allegations of employment discrimination under Title VI is limited. OCR has such jurisdiction in only two instances: 1) if a primary objective of the Federal financial assistance is to provide employment for the position in question; or 2) if the alleged employment discrimination has an adverse impact on program beneficiaries, e.g., students, on the basis of race, color, or national origin. The University does not receive the kind of Federal financial assistance that would give OCR jurisdiction in the first instance. In addition, we have carefully reviewed the complaint information and it does not indicate that the alleged employment discrimination adversely affects program beneficiaries on the basis of race, color, or national origin.

With respect to Title IX, OCR is not asserting jurisdiction over this complaint because of the referring authority described below. The EEOC enforces Title VII of the Civil Rights Act of 1964. Title VII prohibits employers of fifteen or more persons from discriminating against its employees and applicants for employment on the basis of race, color, national origin, sex, or religion. A government-wide regulation requires Federal civil rights enforcement agencies to refer individual complaints of employment discrimination on the basis of sex to the EEOC, absent special circumstances not present in this case. OCR is therefore closing this complaint as of the date of this letter and referring it to the EEOC at the following address:

Rosa Veramontes
EEOC Director
U.S. Equal Employment Opportunity Commission
Roybal Federal Building #6820
255 East Temple Street, 4th floor
Los Angeles CA 90012

OCR also enforces the Age Discrimination Act of 1975 (AgeDA) and its implementing regulation. The AgeDA prohibits discrimination based on age in programs and activities operated by recipients of Federal financial assistance but does not apply to employment. The Age Discrimination in Employment Act of 1967, enforced by the EEOC, protects persons who are 40 years of age or older against age discrimination in employment. Therefore, the age-discrimination component of your complaint will be referred to the EEOC.

Please note that OCR has made no determination as to whether your complaint states an actionable and timely claim of employment discrimination. The EEOC will consider the complaint to be received on the date that OCR received it, unless the EEOC received a similar complaint from you earlier. An EEOC representative will contact you about your complaint.

You have not provided an individual allegation of disability discrimination. Instead, you state that the Regents has failed to implement an affirmative action plan that has resulted in applicants for employment being excluded on multiple bases, including

disability. OCR enforces Section 504 of the Rehabilitation Act of 1973 and its implementing regulation. Section 504 prohibits discrimination on the basis of disability in programs and activities operated by recipients of Federal financial assistance. OCR also has jurisdiction as a designated agency under Title II of the Americans with Disabilities Act of 1990 (ADA) and its implementing regulation over complaints alleging discrimination on the basis of disability that are filed against certain public entities. The Regents receive Department funds, is a public education system, and is subject to the requirements of Section 504 and Title II. OCR refers individual employment complaints to the EEOC unless the complainant elects to have OCR process the complaint. However, in this case, your allegation regarding affirmative action plans does not state a claim under OCR jurisdiction. Because you have not provided information describing an individual employment allegation, and because OCR is not otherwise asserting jurisdiction, OCR is dismissing this allegation and is taking no further action.

Please further note that you included a statement that you believe that the alleged discrimination was also on the bases of sexual orientation and veteran's status. OCR does not have jurisdiction on those bases. In addition to the EEOC, you may consider discussing your complaint with the Department of Fair Employment and Housing at (510) 789-1085 or the Department of Veteran Affairs at (202) 461-0227.

OCR regulations prohibit the Recipient from retaliating against you and from intimidating, threatening, coercing, or harassing you or anyone else because you filed a complaint with OCR. If you believe that such actions occur, you may file a separate complaint with the EEOC or with OCR. In accordance with the government-wide regulation, we are notifying the Recipient that a complaint has been filed and that it has been referred to the EEOC. However, this notice will contain no personally identifying information about you.

Under the Freedom of Information Act, it may be necessary to release this document and related records upon request. In the event that OCR receives such a request, it will seek to protect, to the extent provided by law, personal information that, if released, could reasonably be expected to constitute an unwarranted invasion of privacy.

If you have any questions about your complaint, please contact the EEOC directly at the office listed above.

Sincerely,

FOR   Sara Berman
      Team Leader

# EXHIBIT 10

47/111 HR File

## *Involuntary Separation*

| Employee Information: | |
| --- | --- |
| Date | October 8, 2018 |
| Employee Name | Stephen Malloy |
| Employee ID # | 022204952 |
| Last Day on Pay Status | 10/10/18 |
| Separation Date | 10/11/18 |
| Reason Code | ○ EA: Lack of Performance  ○ EG: Do Not Hire - Settlement  ○ CG: Indefinite Layoff w/Severance  ○ CI: Indefinite Layoff w/no severance or rehire/recall rights  ○ EB: Misconduct  ○ CA: Indefinite Layoff w/rehire rights  ○ CH: Indefinite Layoff w/reduced severance & rehire/recall rights  ⊙ Other DA - probationary release |
| LER Specialist/Generalist | Aviva Roller |

### Final Check Delivery Method:

○ Direct Deposit
○ FedEx to Permanent Address FedEx # 320-515-998 [# for TSU use only]
○ TSU to pick-up from the Controller's Office to send L&ER

### Documents and Information:

☐ Approved Time Sheet
☐ UI Form

#### *Involuntary Separation Documents (Check all that apply)*

☐ Settlement Agreement & General Release (DOS Code = ITS)
☐ Layoff/Reduction in Time Letter to Employee
☐ Severance Election Form (DOS Code = ITS)
☑ Notice of Dismissal/Termination
☐ Pay in Lieu Letter to Employee (DOS Code = ITP)

### Special Instructions:

This a probationary release. Please contact Connie Revore for check pick-up. Thank you!

**Print Form** . **Clear Form**

# EXHIBIT 11

University of California,        Francisco | About UCSF | Search UCSF        SF Medical Center

# ucsf human resources
### Serving the Academic and Staff Community

**Logged in > Stephen Grove Malloy > Change Password > Logout**

| | | |
|---|---|---|
| **Legacy Title and Pay Plan** | ## Stephen's Control Panel | **Your Application** |
| | Legacy Title and Pay Plan | ✔ Registration |
| **HR Systems Home** | | ✔ Resume |
| | | ✔ Self-Assessment |
| **Temporary Employment Home** | ## Timekeeping for Temporary Employees Changed on July 21 2014! | ✔ Resume Supplemental |
| | The Final Day to record time in this system is July 20, 2014! After that, please use Huntington Business Systems (HBS)! | ✔ References |
| **My Settings** | • HBS Timekeeping System Overview<br>• Link to HBS TimeKeeeing | ✔ Affirmative Action |
| | | ✔ Application Submitted |

### My Availability

```
═══        AVAILABLE
```

Copyright © UCSF, 2013

# EXHIBIT 12

**Mente, Kate**                                    Thu, Dec 13, 8:43 AM (3 days ago)

to me

Mr. Malloy:

I am forwarding your request from this morning for University records to the UCSF Communication Coordinator who will log and process your request.

As to your prior request, please see responses here in green:

> Also, may I receive documentation as to:

> A. The causes of my probationary release?
The basis for your probationary release was due to verbal complaints/reports and verbal responses from you to UCSF supervisory employees regarding those complaints/reports. Accordingly, there are no documents outside of your notice of probationary release, which has already been provided to you.
> B. Was any information from UCSF sent to DPH Personnel?
No.
> C. Is there any redacted/privileged information being held by UCSF concerning my personnel file?
No.
> If so, in the case of A, B & C, please provide me a copy of all too?  Not applicable.

Please let me know if any further inquiries. Best, Kate
**Kathryn (Kate) M. Mente, Senior Campus Counsel**
University of California, San Francisco
Office of Legal Affairs
Faculty Alumni House
745 Parnassus Avenue, Suite 201
San Francisco, CA  94143
Email: kate.mente@ucsf.edu
Phone: 415.476.5005
For urgent matters and/or scheduling, please contact Susan Smith at 415.476.2815 or at **susan.smith@ucsf.edu**

# EXHIBIT 13

1/105

**City and County of San Francisco**
**Office of Contract Administration**
**Purchasing Division**
**City Hall, Room 430**
**1 Dr. Carlton B. Goodlett Place**
**San Francisco, California 94102-4685**

**Agreement between the City and County of San Francisco and**
**The Regents of the University of California, A Constitutional Corporation,**
**on behalf of its San Francisco Campus**
**UC SFGH Clinical Practice Group SFGH/Comm Focus PGM**

This Agreement is made this 1st day of July 1, 2018 in the City and County of San Francisco, State of California, by and between: **The Regents of the University of California, on behalf of its San Francisco campus, acting by and through its Office of Research,** a California Constitutional corporation, hereinafter referred to as "Contractor," and the City and County of San Francisco, a municipal corporation, hereinafter referred to as "City," acting by and through its Director of the Office of Contract Administration or the Director's designated agent, hereinafter referred to as "Purchasing."

**Recitals**

WHEREAS, the Department of Public Health ("Department") wishes to provide substance abuse treatment services; and,

WHEREAS, this Agreement was competitively procured as required by San Francisco Administrative Code Chapter 21.1 through RFP-26-2016, RFP-08-2017 and RFP-11-2017, Request for Proposals ("RFP's") issued on August 26, 2016, August 27, 2017 and June 12, 2017 respectively in which City selected Contractor as the highest qualified scorer pursuant to the RFP's; and

WHEREAS, there is no Local Business Entity ("LBE") subcontracting participation requirement for this Agreement; and

WHEREAS, Contractor represents and warrants that it is qualified to perform the Services required by City as set forth under this Agreement; and

WHEREAS, approval for this Agreement was obtained when the Civil Service Commission approved Contract number 48652-16/17 on June 19, 2017 and 40587-17-18 on November 20, 2017;

WHEREAS, approval for this Agreement was obtained when the Board of Supervisors approved Resolution Number 293-18 on September 14, 2018;

Now, THEREFORE, the parties agree as follows:

1.    **Certification of Funds; Budget and Fiscal Provisions; Termination in the Event of Non-Appropriation**

This Agreement is subject to the budget and fiscal provisions of the City's Charter. Charges will accrue only after prior written authorization certified by the Controller, and the amount of City's

1 | Page
Original Agreement, Contract ID# 1000010136.          Regents UNIV OF CA/SFGH PSYCHIATY DPT
UC P-500 (8-15; DPH 7-14)          July 1, 2018, BOS

7-1-18 UC Regents/City Contract                                    5/105

Work under this Agreement shall be performed only by competent personnel under the supervision of and in the employment of Contractor. To the extent possible, Contractor will comply with City's reasonable requests regarding assignment of personnel, but all personnel, including those assigned at City's request, must be supervised by Contractor. Contractor shall commit adequate resources to complete the project within the project schedule specified in this Agreement.

13. **Responsibility for Equipment**

a. City shall not be responsible for any damage to persons or property to the extent it is a result of the use, misuse or failure of any equipment used by Contractor, or by any of its employees, even though such equipment be furnished, rented or loaned to Contractor by City, while such equipment is in the sole care, custody, and control of Contractor.

b. Any equipment purchased by Contractor with funds provided under the terms of this Agreement shall be deemed to be the property of the City and title to such equipment shall vest in the City. Contractor shall notify the Contract Administrator of any purchase of equipment in writing and shall provide an inventory of such equipment to the Contract Administrator within thirty (30) calendar days of the expiration or termination of this Agreement. If payment under this Agreement is based on a fee for service, equipment purchased using funds from this Agreement shall be referenced in **Appendix B.**

14. **Independent Contractor; Payment of Taxes and Other Expenses**

a. **Independent Contractor**

Contractor or any agent or employee of Contractor shall be deemed at all times to be an independent contractor and is wholly responsible for the manner in which it performs the services and work requested by City under this Agreement. Contractor, its agents, and employees will not represent or hold themselves out to be employees of the City at any time. Contractor or any agent or employee of Contractor shall not have employee status with City, nor be entitled to participate in any plans, arrangements, or distributions by City pertaining to or in connection with any retirement, health or other benefits that City may offer its employees. Contractor or any agent or employee of Contractor is liable for the acts and omissions of itself, its employees and its agents. Contractor shall be responsible for all obligations and payments, whether imposed by federal, state or local law, including, but not limited to, FICA, income tax withholdings, unemployment compensation, insurance, and other similar responsibilities related to Contractor's performing services and work, or any agent or employee of Contractor providing same. Nothing in this Agreement shall be construed as creating an employment or agency relationship between City and Contractor or any agent or employee of Contractor. Any terms in this Agreement referring to direction from City shall be construed as providing for direction as to policy and the result of Contractor's work only, and not as to the means by which such a result is obtained. City does not retain the right to control the means or the method by which Contractor performs work under this Agreement. Contractor agrees to maintain and make available to City, upon request and during regular business hours, accurate books and accounting records demonstrating Contractor's compliance with this section. Should City determine that Contractor, or any agent or employee of Contractor, is not performing in accordance with the requirements of this Agreement, City shall provide Contractor with written notice of such failure. Within five (5) business days of Contractor's receipt of such notice, and in accordance with Contractor policy and procedure, Contractor shall remedy the deficiency. Notwithstanding, if City believes that an action of Contractor, or any agent or employee of Contractor, warrants immediate remedial action by Contractor, City shall contact Contractor and provide Contractor in writing with the reason for requesting such immediate action.

b.    **Payment of Taxes and Other Expenses.**

Should City, in its discretion, or a relevant taxing authority such as the Internal Revenue Service or the State Employment Development Division, or both, determine that Contractor is an employee for purposes of collection of any employment taxes, the amounts payable under this Agreement shall be reduced by amounts equal to both the employee and employer portions of the tax due (and offsetting any credits for amounts already paid by Contractor which can be applied against this liability). City shall then forward those amounts to the relevant taxing authority. Should a relevant taxing authority determine a liability for past services performed by Contractor for City, upon notification of such fact by City, Contractor shall promptly remit such amount due or arrange with City to have the amount due withheld from future payments to Contractor under this Agreement (again, offsetting any amounts already paid by Contractor which can be applied as a credit against such liability). A determination of employment status pursuant to the preceding two paragraphs shall be solely for the purposes of the particular tax in question, and for all other purposes of this Agreement, Contractor shall not be considered an employee of City. Notwithstanding the foregoing, Contractor agrees to indemnify and save harmless City and its officers, agents and employees from, and, if requested, shall defend them against any and all claims, losses, costs, damages, and expenses, including attorney's fees, arising from this section, but only in proportion and to the extent such claims, losses, costs, damages, and expenses, including attorney's fees, are caused by or result from the negligent or intentional acts or omissions of Contractor, its officers, agents or employees.

15.    **Insurance**

Contractor and City agree that each party will maintain in force, throughout the term of this Agreement, a program of insurance and/or self-insurance of sufficient scope and amount to permit each party to discharge promptly any obligations each incurs by operation of this Agreement. A certificate of insurance is not required from either party. In the event an insurance waiver is required or approved, it shall be attached hereto as Appendix C.

16.    **Indemnification**

a.    Contractor shall defend, indemnify, and hold City, its officers, employees and agents, harmless from and against any and all liability, loss, expense, attorneys' fees, or claims for injury or damages, arising out of the performance of this Agreement, but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent or intentional acts or omissions of Contractor, its officers, agents or employees.

b.    City shall defend, indemnify, and hold Contractor, its officers, employees and agents, harmless from and against any and all liability, loss, expense, attorneys' fees, or claims for injury or damages, arising out of the performance of this Agreement, but only in proportion to and to the extent such liability, loss, expense, attorneys' fees, or claims for injury or damages are caused by or result from the negligent or intentional acts or omissions of City, its officers, agents or employees.

17.    **Incidental and Consequential Damages** - Deleted by agreement of the parties.

18.    **Liability of City** - Deleted by agreement of the parties.

19.    **Liquidated Damages** - Deleted by agreement of the parties.

20.    **Default; Remedies**

6 | P a g e
Original Agreement, Contract ID# 1000010136          Regents UNIV OF CA/SFGH PSYCHIATY DPT
UC P-500 (8-15; DPH 7-14)                             July 1, 2018, BOS

13/105

c.   Neither party shall, on the basis of this Agreement, contract on behalf of, or in the name of, the other party. An agreement made in violation of this provision shall confer no rights on any party and shall be null and void.

d.   Contractor shall provide the City with a list of all subcontractors and consultants retained by Contractor to provide Services under this Agreement either before such retention or as soon as reasonably possible after retention. City shall have the right to exercise its reasonable discretion to reject the retention of any subcontractor or consultant by Contractor. Upon any rejection by City, Contractor shall end rejected subcontractors or consultants provision of Services under this Agreement.

**30.   Assignment**

The services to be performed by Contractor are personal in character and neither this Agreement nor any duties or obligations hereunder may be assigned or delegated by the Contractor, except as otherwise provided in Paragraph 29, above, unless first approved by City by written instrument executed and approved in the same manner as this Agreement.

**31.   Non-Waiver of Rights**

The omission by either party at any time to enforce any default or right reserved to it, or to require performance of any of the terms, covenants, or provisions hereof by the other party at the time designated, shall not be a waiver of any such default or right to which the party is entitled, nor shall it in any way affect the right of the party to enforce such provisions thereafter.

**32.   Consideration of Criminal History in Hiring and Employment Decisions.** Deleted in consideration of Contractor's Public Entity status and approved by Office of Contracts Administration (OCA).

**33.   Local Business Enterprise Utilization; Liquidated Damages** - Deleted in consideration of Contractor's Public Entity status.

**34.   Nondiscrimination; Penalties** - Deleted based on Contracts Monitoring Division 's(CMD) approval of sole source exception.

**35.   MacBride Principles—Northern Ireland** - Deleted in consideration of Contractor's Public Entity status.

**36.   Tropical Hardwood and Virgin Redwood Ban**

Pursuant to §804(b) of the San Francisco Environment Code, the City and County of San Francisco urges contractors not to import, purchase, obtain, or use for any purpose, any tropical hardwood, tropical hardwood wood product, virgin redwood or virgin redwood wood product.

**37.   Drug-Free Workplace Policy**

Contractor acknowledges that pursuant to the Federal Drug-Free Workplace Act of 1989, the unlawful manufacture, distribution, dispensation, possession, or use of a controlled substance is prohibited on City premises. Contractor agrees that any violation of this prohibition by Contractor, its employees, agents, or assigns will be deemed a material breach of this Agreement.

**38.   Resource Conservation**

97/105

review and approve the determination of whether a breach occurred and whether individual notifications and a corrective action plan are required.

**d.    Responsibility for Reporting of Breaches**

If the cause of a breach of Department PHI is attributable to provider or its agents, subcontractors or vendors, provider is responsible for all required reporting of the breach as specified in 42 U.S.C. section 17932 and its implementing regulations, including notification to media outlets and to the Secretary (after obtaining prior written approval of DHCS). If a breach of unsecured Department PHI involves more than 500 residents of the State of California or under its jurisdiction, Contractor shall first notify DHCS, then the Secretary of the breach immediately upon discovery of the breach. If a breach involves more than 500 California residents, provider shall also provide, after obtaining written prior approval of DHCS, notice to the Attorney General for the State of California, Privacy Enforcement Section. If Contractor has reason to believe that duplicate reporting of the same breach or incident may occur because its subcontractors, agents or vendors may report the breach or incident to the Department in addition to provider, provider shall notify the Department, and the Department and provider may take appropriate action to prevent duplicate reporting.

**e.    Responsibility for Notification of Affected Individuals**

If the cause of a breach of Department PHI is attributable to provider or its agents, subcontractors or vendors and notification of the affected individuals is required under state or federal law, provider shall bear all costs of such notifications as well as any costs associated with the breach. In addition, the Department reserves the right to require provider to notify such affected individuals, which notifications shall comply with the requirements set forth in 42 U.S.C. section 17932 and its implementing regulations, including, but not limited to, the requirement that the notifications be made without unreasonable delay and in no event later than 60 calendar days after discovery of the breach. The Department Privacy Officer shall approve the time, manner and content of any such notifications and their review and approval must be obtained before the notifications are made. The Department will provide its review and approval expeditiously and without unreasonable delay.

**f.    Department Contact Information**

To direct communications to the above referenced Department staff, the provider shall initiate contact as indicated herein. The Department reserves the right to make changes to the contact information below by giving written notice to the provider. Said changes shall not require an amendment to this Addendum or the Agreement to which it is incorporated.

**VI    Additional Provisions**



**A.    Additional Intergovernmental Agreement Restrictions**

This Intergovernmental Agreement is subject to any additional restrictions, limitations, or conditions enacted by the Congress, or any statute enacted by the Congress, which may affect the provisions, terms, or funding of this Intergovernmental Agreement in any manner including, but not limited to, 42 CFR 438.610(c)(3).

**B.    Nullification of DMC Treatment Program SUD services (if applicable)**

102/105

1) No part of any appropriation contained in this Act shall be used, other than for formal and recognized executive-legislative relationships, for publicity or propaganda purposes, for the preparation, distribution, or use of any kit, pamphlet, booklet, publication, radio, television, or video presentation designed to support or defeat legislation pending before the Congress, except in presentation to the Congress or any State legislative body itself.

2) No part of any appropriation contained in this Act shall be used to pay the salary or expenses of any Intergovernmental Agreement recipient, or agent acting for such recipient, related to any activity designed to influence legislation or appropriations pending before the Congress or any State legislature.

S. Nondiscrimination in Employment and Services

By signing this Intergovernmental Agreement, provider certifies that under the laws of the United States and the State of California, incorporated into this Intergovernmental Agreement by reference and made a part hereof as if set forth in full, Contractor shall not unlawfully discriminate against any person.

T.      Federal Law Requirements:

1) Title VI of the Civil Rights Act of 1964, Section 2000d, as amended, prohibiting discrimination based on race, color, or national origin in federally funded programs.

2) Title IX of the education amendments of 1972 (regarding education and programs and activities), if applicable.

3) Title VIII of the Civil Rights Act of 1968 (42 USC 3601 et seq.) prohibiting discrimination on the basis of race, color, religion, sex, handicap, familial status or national origin in the sale or rental of housing.

4) Age Discrimination Act of 1975 (45 CFR Part 90), as amended (42 USC Sections 6101 – 6107), which prohibits discrimination on the basis of age.

5) Age Discrimination in Employment Act (29 CFR Part 1625).

6) Title I of the Americans with Disabilities Act (29 CFR Part 1630) prohibiting discrimination against the disabled in employment.

7) Americans with Disabilities Act (28 CFR Part 35) prohibiting discrimination against the disabled by public entities.

8) Title III of the Americans with Disabilities Act (28 CFR Part 36) regarding access.

9) Rehabilitation Act of 1973, as amended (29 USC Section 794), prohibiting discrimination on the basis of individuals with disabilities.

10) Executive Order 11246 (42 USC 2000(e) et seq. and 41 CFR Part 60) regarding nondiscrimination in employment under federal contracts and construction contracts greater than $10,000 funded by federal financial assistance.

*8-1-94 Affiliation Contract*
*41/91*

University all equipment, appurtenances, and property owned by the University and in the possession or control of the City/County.

5.  Indemnifications. The provisions of this Agreement regarding indemnification, as specified in Section XIV, shall continue to exist so long as there is any outstanding claim for liability as a result of the activities performed by either Party pursuant to this Agreement.

6.  Other. Termination of this Agreement shall have no effect on the fourteen Lease Agreements currently existing between the University and the City/County for property on the Hospital Campus unless such Lease Agreements are terminated pursuant to a master lease agreement as described in Section IV.E.I.

7.  Access to Books and Records. For a period of seven (7) years following termination of this Agreement, each Party shall (i) retain all books and records required under this Agreement, and (ii) make such records available to the other Party upon request during that period. However, this requirement shall not apply to any books or records which have been provided to the other Party either prior or subsequent to the termination.

## XIV. INDEMNIFICATIONS

A.  By University. University shall defend, indemnify, and hold City/County harmless from and against any and all liability, loss, expense, or claims, excluding attorneys' fees, for injury or damages arising out of the performance of this Agreement, but only in proportion to and to the extent such liability, loss, expense, or claims for injury or damages are caused by or result from the negligent or intentional acts of University, its officers, agents, or employees.

B.  By City/County. City/County shall defend, indemnify, and hold University harmless from and against any and all liability, loss, expense, or claims, excluding attorneys' fees, for injury or damages arising out of the performance of this Agreement, but only in proportion to and to the extent such liability, loss, expense, or claims for injury or damages are caused by or result from the negligent or intentional acts of City/County, its officers, agents, or employees.

C.  Breach of Contract. The provisions of this Article XIV do not permit either party to sue the other Party for damages for breach of contract or for failure to comply with the terms and conditions of this Agreement except as permitted in Article XV.C.

## XV. DISPUTE RESOLUTION

A.  Informal Resolution. The Parties shall resolve their disputes informally to the maximum extent possible. The Parties shall negotiate all matters of joint concern in good faith, with the intention of resolving issues between them in a mutually satisfactory manner. Only disputes within the scope of this Agreement are subject to this Section XV; disputes internal to one Party are not subject to these procedures.

31

*8-1-99 UCSF & City DPH*
*Affiliation*
*17/91*

4.    Transfer To Other Facility. University Personnel and Housestaff shall not transfer any patient to any other health care facility or provider unless (1) the patient's attending physician determines that the services necessary for the patient's care are unavailable at the Hospital, or (2) the patient's health insurance coverage requires use of specified facilities or providers, or (3) the patient requests transfer. Any patient transfer shall be made consistent with Hospital policies and applicable law.

5.    Quality Improvement. University shall participate in quality improvement and utilization review activities as specified in the Bylaws and as required to meet all legal, accreditation, and certification standards and conditions and the terms of this Agreement.

D.    Personnel Responsibilities

1.    General

a.    Staffing levels. The University shall provide University Personnel and Housestaff sufficient to render patient care which meets the clinical services negotiated and approved in the Final Contract Budget, subject to such adjustments as provided in Section VI.B.3. and 4.

b.    Discipline of University Employees and University Personnel. The University shall be responsible for the discipline of University employees and Housestaff and shall investigate any City/County complaints regarding University Personnel and Housestaff to determine the necessity for appropriate action. Where the nature of the complaint provides reasonable grounds to believe that the safety of any person or property on the Hospital Campus may be at risk, the University shall make reasonable efforts, consistent with established University personnel procedures, to temporarily reassign such employees, Personnel, or Housestaff and/or exclude such employees, Personnel, or Housestaff from the Hospital Campus, pending resolution of the complaint.

2.    Housestaff and Medical Students

a.    General responsibilities. The University shall be solely responsible for selecting, supervising, and training Housestaff, medical students, and any other University trainees rotating through the Hospital.

b.    Salaries and benefits. City/County shall pay the salaries and reimburse the University for the cost of fringe benefits of Housestaff for the portion of their residency when they are assigned to the Hospital. The number of Housestaff for which the City/County shall pay shall be negotiated annually and shall be determined no later than July 1 for the Contract Year which begins the following July 1.

c.    Supervision. Within the limits of the Final Contract Budget, the University shall schedule adequate attending physicians for proper supervision of all Housestaff and students in University programs at the Hospital and for other University health professionals.

7

e.    Tort Cause of Action Permitted.    Nothing herein is intended to preclude either party from suing the other for damages for injury to person or property arising from the tortious conduct of either party or the officers, employees, or agents of either Party.

## XVI.  MISCELLANEOUS

A.    Independent Contractor.  In the performance of this Agreement, the University is at all times acting as an independent contractor.  The City/County shall neither have nor exercise any control over the specific methods by which University performs it duties under this Agreement; its sole interest and responsibility shall be to ensure that such duties are rendered in a competent, efficient, and satisfactory manner in accordance with the terms of this Agreement.

B.    Compliance with Accreditation Standards.  The Parties shall perform this Agreement, to the extent practicable, in accordance with the standards of the JCAHO, Title 22 of the California Administrative Code, and any other accreditation agencies with jurisdiction to review and approve teaching hospitals in California.  During the term of this Agreement, the University shall maintain approval of its School of Medicine pursuant to the standards of the Liaison Committee on Medical Education and shall maintain approval of all training programs by the appropriate specialty boards.

C.    Licenses.  During the term of this Agreement, the Parties shall obtain and maintain all appropriate licenses required by law for the operation of the Hospital and for the provision of services hereunder.

D.    Assignment and Subcontracting.  This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors and assigns; provided, however, that neither Party may assign any or all of its interests, rights, or obligations under this Agreement without the prior written consent of the other Party.  Neither Party may subcontract for the performance of any of its duties under this Agreement without the prior written consent of the other Party.  This provision shall not limit the right of either Party to engage individuals who may perform services under this Agreement; however, each Party shall remain fully responsible for its performance as provided in this Agreement.

E.    No Third Party Beneficiaries.  None of the provisions of this Agreement are or shall be construed as for the benefit of or enforceable by any person not a Party to this Agreement.

F.    Modification.  This Agreement shall constitute the entire agreement of the Parties with respect to its subject matter.  With the exception of the payment methodology as provided in Section VI.B., this Agreement may not be modified except by a written amendment properly approved and executed by both Parties.

G.    Waiver.  No waiver, express or implied, or any breach of this Agreement, shall constitute a waiver of any right under this Agreement or of any subsequent breach, whether of a similar or dissimilar nature.

H.    Severability.  If any provision of this Agreement shall be unenforceable for any reason, all other provisions shall remain in force and effect.

I.    Nondiscrimination.  The University shall abide by the nondiscrimination provisions of San Francisco Administrative Code, Chap. 12B, attached as Exhibit C and incorporated herein by reference and made a part of this Agreement, excepting 12B.2.(g)(1), (3), (4), (5), (6), (7), (8), (9), (h), and (l).

34

# EXHIBIT 14

10. Below is the 9 Email 9-28-18 to 11-2-18. [SEE ATTACHMENT 2]. Here you will see my Employer Contractor (UC Regents/UCSF) Managers illegally Assign their Subcontractor (City/DPH My Worksite) as their "Agent," to target only me, retaliate against only me, discriminate against only me and engage in disparate treatment against only me unlawfully as a Protected Veteran.

**You will see these City Respondents illegally being assigned and delegated to as Agents:**
City

a. Megan Kennel, Charge Nurse, DPH Sobering Center
b. Attorney Hallie Albert, City EEO Manager
c. Dr. Kavoos Bassiri, DPH Dir. Mental Health & UCSF Faculty
d. Roxana Costello, Dir. of Operations City of SF
e. Dr. Kelly Eagen, DPH Sobering Center Medical Dir. & UCSF Faculty
f. Dr. Hali Hammer, DPH Medical Dir.
g. Anna Robert, RN, Deputy Primary Care Dir.
h. Alice Moughamian, DPH Sobering Center Dir.
i. Maggie Rykowski, DPH Chief of Integrity
j. Rhonda Simmons, DPH Diversity Dir.
k. Ron Weigelt, DPH HR Dir.
l. Darryl Gault, DPH Operations Manager, Sobering Center

**You will see these Employees of My Employer (UC Regents/UCSF) as the Respondents illegally assigning and delegating to their Subcontractor (City/DPH) Agents from My Worksite:**
State

a. Dr. Valerie Gruber, UCSF Citywide & Faculty
b. Dr. Fumi Mitsuishi, Medical Dir. UCSF Citywide & Faculty
c. Constance Revore, HR Administrator Citywide
d. Jeremy Lane, UCSF Caseworker

## 1. 10-4-18 Confirmation of Illegal 10-3-18 Interrogation of Malloy, Coerced & Threatened...forced to Sign the City EEO Policy & Deny Federal EO Clause Protections Guaranteed to Malloy By Congress Under E.O. 11246, Federal EO Clause & VEVRAA.

*Albert, Hallie (DPH)*
*From: Revore, Constance <Constance.Revore@ucsf.edu>*
*Sent: Thursday, October 04, 2018 1:35 PM*
*To: Moughamian, Alice (DPH); Albert, Hallie (DPH); Gruber, Valerie (UCSF)*
*Cc: Roller, Aviva N; Mitsuishi, Fumi (UCSF)*
*Subject: EEOC Policy*
*Attachments: Malloy, S Acknowledge of Receipt of EEO Policy.pdf*
*Follow Up Flag: Follow up*
*Flag Status: Flagged*

*Hello all –*
*Attached is a copy of the EEOC policy signed by Stephen Malloy yesterday.*

*Thank you,*
*Connie*
*Constance Revore, MSSW, MBA*
*Division Administrator*
*Division of Citywide Case Management Programs*
*UCSF/SFGH Department of Psychiatry*
*982 Mission Street, 2nd Floor*
*San Francisco, CA 94103*
*415.597.8047 Office*
*415.948.7384 Cell*
*constance.revore@ucsf.edu*

## 2.  10-1-18 Confirmation of 10-1-18 Spying & Surveillance of Malloy where DPH Ops. MGR Darryl Gault Kept my Illegal Investigation Secret & Expelled me from my Worksite without a "Reason For."

*Albert, Hallie (DPH)*
*From: Castellon, Roxana (DPH)*
*Sent: Monday, October 01, 2018 4:33 PM*
*To: Mitsuishi, Fumi (UCSF); Moughamian, Alice (DPH); Gruber, Valerie (UCSF)*
*Cc: Hammer, Hali (DPH); Robert, Anna (DPH); Eagen, Kelly; Gault, Daryl (DPH); Pace, Joseph (DPH); Wong, Holly (UCSF); Revore, Constance (UCSF); Albert, Hallie (DPH); Simmons, Rhonda (DPH)*
*Subject: Re: Secure: ePHI JR*

*Hi everyone!*

*I just received a call from Daryl Gault who informed me that the employee reported to work (though not scheduled to work) at the sobering center a few minutes ago.*

*Apparently, this is another ongoing issue.*

*Daryl is comfortable advising him that he is not scheduled to work today and refer him back to Valerie. I will update everyone should we need further assistance.*

*Thank you,*
*Roxana Castellón*
*Director of Operations, Primary Care*
*Executive Sponsor: TWUH/TWUC/MRSC/CCC/CSC*
*Pronoun: she/her/hers*
*roxana.castellon@sfdph.org*
*O: 415-581-2414*
*C: 510-974-4004 (Preferred Contact Number)*
*30 Van Ness, Suite 2300, San Francisco, CA 94102*

## 3. 10-1-18 Confirmation of Plan to Illegally Interrogate & Retaliate Against Malloy. Fraudulently Deny My "7 Day Prior" to my Effective Date of 10-2-18 Warning of an Investigation and "Reason For" the Investigation Per State PPSM-22 Policy.

### Retaliation to Deny My Permanent Job Award and Terminate Me for the exercise of my VEVRAA Right to Report Discrimination & Hostile Work Environmnt. None of the 6 Other Employees Are Targeted.

*From: Mitsuishi, Fumi <Fumi.Mitsuishi@ucsf.edu>*
*Sent: Monday, October 1, 2018 12:58 PM*
*To: Moughamian, Alice (DPH); Gruber, Valerie (UCSF); Castellon, Roxana (DPH)*
*Cc: Hammer, Hali (DPH); Robert, Anna (DPH); Eagen, Kelly; Gault, Daryl (DPH); Pace, Joseph (DPH);Wong, Holly (UCSF);*
*Revore, Constance (UCSF)*
*Subject: Re: Secure: ePHI JR*

*Hi all (Alice, Valerie, Roxana, Connie, and Hallie), Alice and I just talked on the phone (thank you, Alice, for your message below).*

*Here's the plan for the next few days:*
*Tuesday, 10/2, 9am: Stephen will meet with Valerie Gruber and Connie Revore (Citywide Division Administrator) at 982 Mission to go over the concerns delineated by Alice below.*

*We will let Stephen know re: meeting with Alice and Hallie the next day.*

*To clarify, Stephen will not go to the Sobering Center for work after this meeting Wednesday, 10/3, 11am:*

*Stephen will meet with Hallie Albert, Alice Moughamian, and Valerie Gruber at Sobering Center to go over the concerns below.*

*We will keep each other updated on the next steps following these meetings.*

*Thank you all for your help with this matter.*

*best, fumi*
*Fumi Mitsuishi, MD, MS*
*Division Director, UCSF/SFGH Division of Citywide Case Management*
*Associate Clinical Professor, UCSF/Department of Psychiatry*
*fumi.mitsuishi@ucsf.edu*
*(Citywide ph) 415-597-8084*
*(Citywide fax) 415-597-8004*

## 4. 10-1-18 Confirmation of Reprisal for 9-27-18 Concerted Activity against Malloy. Illegal Cover of False DPH City EEO Charge. City Per my State Contract Cannot Administer in my Personnel Affairs.

## No delegation of Duty is to occur. In Reprisal my Contract is Breached. I am Illegally Interrogated and Threatened for the 2nd Day in a Row by both my City & State Employers.

*From: Moughamian, Alice (DPH) <alice.moughamian@sfdph.org>*
*Sent: Monday, October 1, 2018 11:48 AM*
*To: Gruber, Valerie; Castellon, Roxana (DPH); Mitsuishi, Fumi*
*Cc: Hammer, Hali (DPH); Robert, Anna (DPH); Eagen, Kelly (DPH); Gault, Daryl (DPH); Pace, Joseph (DPH);Wong, Holly;*
*Revore, Constance*
*Subject: Re: Secure: ePHI JR*

*Hi Valerie and Fumi,*

*Hallie Albert, of DPH EEO, and I spoke this morning.*

*The DPH's responsibility in this is to review our EEO policy with Stephen and have him sign it.*

*Hallie and I will meet with him at 11am on Wednesday at the Sobering Center to do this. Please make sure he is available for that meeting.*

*We also encourage Valerie to attend that meeting as well.*

*Per Hallie, we cannot request that Stephen not return to work until these issues are resolved.*

*We do request that Valerie and Fumi outline a plan to address the behaviors below, including a meeting time when you plan to meet with him. The concerns are:*

*1) Inappropriate downloading and complaints to staff, making staff feel uncomfortable*
*2) Inappropriate mentions regarding female staff (a protected category)*
*3) Failure to follow protocol when denying a client service or discharging a client from services*
*4) Review the professional way to voice concerns to management*
*5) Professional boundaries (visiting and calling clients outside of working hours such as visits to Joe Healy on Sundays)*
*6) Review the expectations, and limitations and boundaries, of his role and of the Sobering Center.*

*I want to add that Jeremy Lane expressed discomfort to me on Friday with Stephen's stopping him to complain about many things on a daily basis.*

*Jeremy has stated that he now has to go work in a separate office so he can avoid Stephen to get his documentation done because he spends an upwards of 45 minutes-1 hour listening to Stephen and providing him support each day.*

*I would like to clarify whose role it is to help support Stephen if he feels he has 1 hour worth of complaints about the program each day, especially given I am not his direct supervisor. Per my notes from June 13, 2017 when we discussed the supervision structure, I should be providing clinical and site specific support but that Valerie remains the formal supervisor of our UCSF staff.*

*Thank you all for your work and quick response to this issue.*
*Let me know if you have any further questions.*

*Alice*

*-------------------------------------------------------------------------*

*Alice Moughamian, RN,CNS*
*Program Director/NurseManager*
*Medical Respite and Sobering Center*
*Direct Access to Housing*
*Tom Waddell Integrated Medical Services*
*San Francisco Department of Public Health*
*1171 Mission St.*
*San Francisco, CA 94103*
*(415) 734-4201 (office)*
*(415) 734-4218 (fax)*

## 5. 10-1-18 Confirmation that My Employers Kept the Illegal Investigation Secret from Me.

## Conspired illegally with Improper City & State Collusion In Breach of my Contract Protections and VEVRAA to Punish me for my 9-27-18 Concerted Activity.

*From: Gruber, Valerie <Valerie.Gruber@ucsf.edu>*
*Sent: Monday, October 1, 2018 10:03 AM*
*To: Castellon, Roxana (DPH); Mitsuishi, Fumi (UCSF); Moughamian, Alice (DPH)*
*Cc: Hammer, Hali (DPH); Robert, Anna (DPH); Eagen, Kelly; Gault, Daryl (DPH); Pace, Joseph (DPH);Wong, Holly (UCSF);*
*Revore, Constance (UCSF)*
*Subject: Re: Secure: ePHI JR*

*Thank you. I am instructing him to return to Citywide at 982 Mission St. when he is scheduled to return to*
*work at Tu 10/2/18 at 9 am.*

*Valerie A. Gruber, PhD, MPH, Clinical Professor, Dept. of Psychiatry, UCSF, ZuckerbergSanFranciscoGeneral.org*
*UCSF Box 0852, 1001 Potrero Avenue, Ward 93/95, San Francisco, CA 94110; 982 Mission Street, San Francisco, CA 94110*
*ph 415 206-3943, fax 415 206-6875, valerie.gruber@ucsf.edu , http://profiles.ucsf.edu/valerie.gruber*
*"Do all you can with what you have, in the time you have, in the place you are." Nkosi Johnson*

## 6.  9-29-18 Illegal Secret, Conspired, Coordinated Reprisal to Deny my Rights under HERRA/MMBA and Target, Only Malloy and None of My 5 Coworkers for our Concerted Activity. Illegal, Targeted Reprisal to Terminate Me for Participating in my VEVRAA Right to Report Discrimination and Hostile Work Environment.

*From: Castellon, Roxana (DPH) <roxana.castellon@sfdph.org>*
*Sent: Saturday, September 29, 2018 3:42 PM*
*To: Mitsuishi, Fumi; Moughamian, Alice (DPH); Gruber, Valerie*
*Cc: Hammer, Hali (DPH); Robert, Anna (DPH); Eagen, Kelly (DPH); Gault, Daryl (DPH); Pace, Joseph (DPH);Wong, Holly;*
*Revore, Constance*
*Subject: Re: Secure: ePHI JR*

*Hi everyone!*

*Thanks so much for your collaboration and work on this matter.*

*Effective immediately and until all parties have concluded their investigations (including our EEO department) and come up with a concrete action plan/next steps the referenced employee should not report to the sobering center.*

*Thanks so much and feel free to contact me via email/cell should you have any questions or concerns.*

*Thank you,*
*Roxana Castellón*
*Director of Operations, Primary Care*
*Executive Sponsor: TWUH/TWUC/MRSC/CCC/CSC*
*Pronoun: she/her/hers*
*roxana.castellon@sfdph.org*
*O: 415-581-2414*
*C: 510-974-4004 (Preferred Contact Number)*
*30 Van Ness, Suite 2300, San Francisco, CA 94102*

7. 9-28-18 Illegal, Secret, Planning of Threats, Interrogation, Punishment & Surveillance by my UCSF Boss and Medical Dir. Dr. Fumi Mitsuishi and the Head of State HR Administration Holly Wong against Malloy for my 9-27-18 Concerted Activity.

> *Of note, Malloy's UCSF HR Administrator Connie Revore was intimately familiar with his Federal Protections as a Special Disabled Protected Veteran.
>
> UCSF Revore, a White Female is not only a seasoned and career HR Leader at UCSF, she is the CA Air Force Reserve Commander at Travis Air Force Base here in Northern CA.
>
> Revore is approved by Congress to be such a Colonel and Commander and therefore her wanton failure to protect Malloy and ensure his Federal Protections under E.O. 11246 & VEVRAA is especially malicious, nefarious and demonstrates intent to harm.

*https://www.linkedin.com/in/constance-revore-76452317*

*https://www.facebook.com/usairforcereserve/posts/lt-gen-maryanne-miller-chief-of-air-force-reserve-announces-the-following-senior/10156527144848623/*

*March 27, 2017, US Senate Page S2004 or 43 of 69: US Senate Confirmation in service to her country:*

*THE FOLLOWING NAMED OFFICERS FOR APPOINTMENT*
*TO THE GRADE INDICATED IN THE RESERVE OF THE AIR FORCE*
*UNDER TITLE 10, U.S.C., SECTION 12203:*

*To be colonel*

*LISA ANN BANYASZ*
*MARYJANE CAHILL*
*BARBARA J. MARCHIANDO*
*\*CONSTANCE S. REVORE\**
*STUART D. RHOADES*
*JOANNA D. RODRIGUE*

*https://www.govinfo.gov/content/pkg/CREC-2017-03-27/pdf/CREC-2017-03-27.pdf*

From: Mitsuishi, Fumi <Fumi.Mitsuishi@ucsf.edu>
Sent: Friday, September 28, 2018 5:10:51 PM
To: Moughamian, Alice (DPH); Gruber, Valerie (UCSF)
Cc: Hammer, Hali (DPH); Robert, Anna (DPH); Eagen, Kelly; Castellon, Roxana (DPH); Gault, Daryl (DPH); Pace, Joseph
(DPH);Wong, Holly (UCSF); Revore, Constance (UCSF)
Subject: RE: Secure: ePHI JR

Dear Alice,

Thank you for letting us know about this very perturbing and concerning set of behaviors and about the steps you have taken so far. Valerie and I have gotten in touch with our Department's Director of Administration, HollyWong, to figure out the best way to address this. Valerie or I will be sure to follow up with you on Monday.

Best,
Fumi
Fumi Mitsuishi, MD, MS
Medical Director, UCSF/ZSFG Division of Citywide Case Management
Assistant Clinical Professor, UCSF/Department of Psychiatry
fumi.mitsuishi@ucsf.edu
(ph) 415-597-8084
(fax) 415-597-8004

8. 9-28-18 All 13 City & State Officials are Assembled in Secret to Illegally Breach My Contract and Strip Malloy of his Rights Under HERRA/MMBA and State (DFEH) & Federal (Protected Veteran) Rights.

*Of note, Malloy's Immediate UCSF Boss was Medical Dir. Fumi Mitsuishi.

Dr. Mitsuishi has multiple (Three) race discrimination charges under investigation or closed to investigation by UCSF Title IX Nyoki Sacramento.

"Systemic Racism" under UCSF Dr. Mitsuishi is a fact, that will be brought forward with testimony on the stand by UC Title IX Susan Taylor, Regent Chair George Kieffer, UCSF Chancellor Sam Hawgood, UCSF Vice-Chancellor Renee Navarro, UCSF Title IX Nyoki Sacramanento, UCSF Investigators Grant Abernathy and Zachary Williams.

The defendants all failed to address multiple race discrimination complaints by Malloy's coworkers against his Boss Dr. Mitsuishi, that were "covered" by the Defendants at UCSF to limit liability and negligence for the University and not to advocate or protect Malloy or his Black Coworkers who were discriminated against.

Dr. Mitsuishi never met Malloy in person during her entire tenure on the job with him. Never came to Malloy's workplace or met with him or his clients, yet conducted a racist investigation in violation of Malloy's City-State & Federal Contract Protections as a Black-Gay-Disabled Veteran that were willfully "covered" by UCSF and UC Defendants to protect the University and not Black workers.

In fact, a recent racist incident in July 2019 concerning Dr. Mitsuishi, that brings to <u>4</u> the number of Black UCSF Citywide Workers who have now been harmed and discriminated against at UCSF Citywide, Malloy's Home Dept. by Dr. Mitsuishi.

And, "covered" in turn by <u>UC/UCSF Title IX Officers Sacramento and Taylor</u> along with <u>Chancellor Sam Hawgood</u> and <u>Diversity Renee Navaroo</u>, was Dr. Mitsuishi calling a Black Worker a Racist Slur in the  public work space of UCSF Citywide.

Plantiff looks forward to allowing witnesses and defendants to take the stand and reveal these systemic racist and discrimination patterns at UCSF Citywide by Dr. Mitsuishi, that have been "covered" by the UC, UCSF, City and Federal Defendants.

All of whom are publically aware of the incidents and have attempted to deny Malloy's protected reports to the Inspector General and Congress to expose these violations of Federal Law.

That has been a key purpose of Malloy's protected reports and why Plaintiff is pursuing legal means to ensure that his protected communities of Black, LGBQTI, Disabled and Veteran Employees are not futher harmed and discriminated against at UCSF Citywide, Dept. of Public Health, Sobering Center and the UC Systemwide.

*From: Moughamian, Alice (DPH) <alice.moughamian@sfdph.org>*
*Sent: Friday, September 28, 2018 3:42 PM*
*To: Gruber, Valerie <Valerie.Gruber@ucsf.edu>; Mitsuishi, Fumi <Fumi.Mitsuishi@ucsf.edu>*
*Cc: Hammer, Hali (DPH) <hali.hammer@sfdph.org>; Robert, Anna (DPH) <anna.robert@sfdph.org>;*
*Eagen, Kelly (DPH)*
*<kelly.eagen@sfdph.org>; Castellon, Roxana (DPH) <roxana.castellon@sfdph.org>; Gault, Daryl (DPH)*
*<daryl.gault@sfdph.org>; Pace, Joseph (DPH) <joseph.pace@sfdph.org>*
*Subject: Re: Secure: ePHI JR*

*Everyone,*
*I realized I forgot to add Joseph Pace, medical director of Tom Waddell, to this email.*
*Alice*

*------------------------------------------------------------------*

*Alice Moughamian, RN,CNS*
*Program Director/NurseManager*
*Medical Respite and Sobering Center*
*Direct Access to Housing*
*Tom Waddell Integrated Medical Services*
*San Francisco Department of Public Health*
*1171 Mission St.*
*San Francisco, CA 94103*
*(415) 734-4201 (office)*
*(415) 734-4218 (fax)*

# EXHIBIT 15

*Malloy's State UCSF Hire Rules, No City Policy or Rules.* 101/111 HR File

| | | | |
|---|---|---|---|
| | | community organizations to improve opportunities for clients; coordinate community service activities; work with community providers in accommodating the needs of clients. | |
| 100% | | *(To update total %, enter the amount of time in whole numbers (without the % symbol - e.g., 15, 20) then highlight the total sum (e.g., 1%) at the bottom of the column and press F9. The total sum should add up to 100%.)* | |

## Knowledge Skills and Abilities (KSAs)

*Required qualifications must be possessed by any candidate to be considered for the position. These qualifications will be included in the job posting/advertisement and will be used to screen applicants. Note: Only objective, specific and quantifiable (KSAs) will be used when screening (i.e. 6 months of event planning experience vs. prior event planning experience). Preferred qualifications are those skills or abilities that an ideal candidate possesses, but are not required in order for a candidate to be considered for the position.*

*Please list:*

| Knowledge, Skills and Abilities | Req / Pref |
|---|---|
| An understanding of substance use disorders, harm reduction and recovery | *Required* |
| Ability to follow oral and written instructions accurately | *Required* |
| Ability to work as part of a team, to prioritize and handle multiple tasks and work independently in a high pressure environment; | *Required* |
| Good problem solving skills | *Required* |
| Strong customer service skills. Ability to communicate and resolve issues effectivelywith clients and program staff from diverse cultural and social class backgrounds. | *Required* |
| Able to lift 50lbs and climb stairs | *Required* |
| Knowledge of computers and software including Microsoft Excel, Microsoft Word... | *Required* |
| Demonstrated excellent attendance and reliability | *Required* |

## Education, Licenses and Certifications:

*List Education, Licenses and Certifications a candidate must possess or meet to be considered for the position. You may also select any of these attributes as being preferred. These will be included in the job posting/advertisement and will be used to screen applicants.*

| Education | Req / Pref |
|---|---|
| Bachelor's degree in related area and one to three years of related work experience or the equivalent combination of education and experience / training. | *Required* |

## Special Conditions of Employment: (Statements identifying the fundamental non-negotiable job conditions and/or requirements which an individual must meet to be eligible for the position. For example, the ability to pass a background check, work in a particular environmental setting, work a flexible or irregular work schedule, etc.)

Employment conditional on completing registration with a California approved Substance Abuse Counselor Certification Organization (http://www.dhcs.ca.gov/provgovpart/Pages/CounselorCertificationOrganizations.aspx), which consists of completion of a 9-hour online course and application. Completed counselor certification may be provided in lieu of counselor registration.

## Problem Solving

### Common problems solved by the employee:
- Identify and understand the social, health and homemaking needs of the client and communicate those needs to the clinical social workers. In coordination with clinical social workers; supports consumers in community integration goals; provides individual supportive counseling; applies personal experience as a consumer of mental health services; provides advocacy and accompaniment as needed.

### Less frequent and more complex problems solved by the employee:
- Understand and utilize engagement and recovery model strategies to encourage clients to pursue activities

### Problems/situations that are referred to this employee's supervisor:
- Increased client hospitalizations
- Unable to stabilize client

## Management of Funds:

# EXHIBIT 16

May 16, 2019
Page 7

*[handwritten:] UC Reg. 3/UCSF Gordon & Rees EEOC Statement*

*[handwritten top right:] 7/74*

Malloy told them that a male manager was needed and that the white female managers were not competently managing, implying that it had something to do with their gender. He told one of the other nurses: "You don't want to get on my bad side. You don't have a male presence here. You are too nice with the clients." They also reiterated their concerns about Mr. Malloy venting to them constantly, distracting them, and interrupting. They stated that they felt they "can't get a word in" with him.

*[handwritten left margin:] 10/3/18 ——>*

Following that meeting, Dr. Gruber, Ms. Moughamian, Ms. Revore, and the SFDPH EEO Program Manager, Hallie Albert, met with Mr. Malloy. They provided him a copy of the San Francisco County EEO policy. They asked him to review the policy, but Mr. Malloy refused to do more than take a cursory review of it. Mr. Malloy told them he had made his own EEO complaint and intended to file complaints "with the organizations involved as well."[8] He stated that he felt attacked for being an African American gay man and that if his prior statements were found to be threatening, "that's not my problem." Ms. Albert informed Mr. Malloy that harassment from clients is not tolerated and there is protocol to dealing with it, but if he makes comments based on a protected category, that could be a violation of the EEO policy. Mr. Malloy responded by telling them he would not change how he talks. Ms. Albert reminded him that professionalism in the workplace means being respectful of cultural and gender differences and understanding the boundaries of acceptable professionalism.

*[handwritten right margin:] UCSF Illegal Delegation To City EEO Albert Interrogated Malloy & Coerced Signature of City EEO Policy*

### The University Releases Mr. Malloy During His Probationary Period

Dr. Gruber and the other leaders in the Department were particularly concerned about Mr. Malloy's recent unprofessional actions, including his inappropriate communication with clients and staff, his inability to accept feedback and work collaboratively, his poor documentation, and his failure to follow protocol when discharging a client. The hope was that when they met with Mr. Malloy, he would acknowledge his shortcomings and express a desire to improve. Instead, Mr. Malloy refused to accept responsibility for his conduct and seemed to lack self-awareness as to how his conduct impacted his colleagues and the work of the program. As a result, on October 10, 2018, Dr. Gruber notified Mr. Malloy that he was being released from his position during his probationary period. (See Letter Attached as **Exhibit 11.**)

No one has been hired to replace Mr. Malloy since his probationary release.

*[handwritten:] UCSF Lie. Malloy filed Discrimination Reports on 8-17-18, 9-6-18, 9-11-18, 9-12-18, 9-27-18 & 10-2-18.*

[8] This was the first time anyone at that meeting was aware of such a complaint by Mr. Malloy. A UCSF Senior Complaint Resolution Officer from UCSF's Office for the Prevention of Harassment and Discrimination ("OPHD") is currently investigating Mr. Malloy's complaint. That investigation has been ongoing: Mr. Malloy has submitted a significant volume of correspondence to OPHD. He declined a second interview with the OPHD investigator. Due to Mr. Malloy's complaints about the first assigned investigator, OPHD appointed a new investigator to move the investigation along.

# EXHIBIT 17

May 16, 2019
Page 4

*[handwritten: UC Rege NCSF Gordon & Rees EEOC statement    4/74]*

exceeding expectations. She told him, however, that she felt he could improve by focusing on his documentation and organization. Dr. Gruber explained the importance of documentation for funding and continuity of care purposes, but Mr. Malloy seemed reluctant to comply and generally dismissive and defensive to the constructive criticism. In fact, he continued to struggle with appropriate documentation even after this meeting.

## MR. MALLOY UNILATERALLY DISCHARGES A CLIENT IN VIOLATION OF PROTOCOL

*[handwritten: Lane is My UCSF Similarly Situated Coworker. Not DPH.]*

On September 26, 2018, a Sobering Center client made a verbal threat to the SFDPH Clinical Social Worker, Jeremy Lane. In response, and without Mr. Lane's knowledge or request, Mr. Malloy aggressively "engaged" the client on the sidewalk, forcing the client to walk backwards into the street. Mr. Malloy then unilaterally discharged the client from the program, in violation of the program's protocol.[5] (See Protocol Attached as **Exhibit 6**.) Mr. Malloy sent an email to Dr. Gruber and the rest of the team describing what he had done. (See Email September 26 Emails Attached as **Exhibit 7**.)

After receiving the email, Dr. Gruber requested to meet with Mr. Lane, Mr. Malloy, and the SFDPH nurses to learn more about what transpired. Dr. Gruber was concerned about Mr. Malloy's aggressive response to the client and his decision to discharge the client without conferring with others (or raising it with the Safety Committee). Mr. Malloy, however, did not show up to the September 26 meeting with Dr. Gruber.

Dr. Gruber nevertheless met with the other staff and the nurses. At that meeting, the SFDPH Charge Nurse, Megan Kennel, expressed concern that Mr. Malloy was not being collaborative or seeking input from others about his plans for the clients. Ms. Kennel also complained that Mr. Malloy frequently sent emails to numerous people at multiple agencies, resulting in "email fatigue" on their part. She expressed the opinion that it would be far more effective to first discuss the issues with her and Mr. Lane in person to give them an opportunity to collaborate.

Ms. Kennel and Mr. Lane stated that Mr. Malloy would benefit from participating in supervision more regularly. Mr. Malloy, however, gave them the impression he did not want any supervision. Mr. Lane complained that Mr. Malloy was spending far too much time every day "downloading" about management and the system to him and others at the nurses' station, which they found distracting, contentious, and counterproductive.

*[handwritten: Malloy Per Contract Cannot Be Delegated to Conform with City Local Rules. Illegal City Rule.]*

---

[5] There is specific protocol about how clients are to be discharged and for what reasons. (See **Exhibit 6**.) According to the protocol, consequences for behavior violations, including how and when those patients are discharged, must be determined by "no less than three (3) members from the Safety Committee." The Safety Committee reviews clients whose behavior is inappropriate, makes decisions on whether to reduce or refuse services to those clients, and all staff are generally allowed to attend the meetings. Part of the reason for this policy is that this is a very vulnerable population and there are often mitigating or aggravating factors that need to be assessed.

*[handwritten: * Malloy Can Only Comply to State Zero Tolerance Policy for Clients & Federal EO Jurisdiction as a Protected Vet: Cannot Comply With Racist-Sexist-Homophobic City "Safety Committee" Rules.]*

5-16-19 UC Regents/UCSF
EEOC Position Statement
"Reason For" Malloy's
Firing.

Malloy is State Emp. 39/74
CITY Illeagle Local Rule.

# Sobering Center Community Agreements for Drop-In Access

## The Sobering Center is a shared space

Although the Sobering Center is not a shelter, we may be able to accommodate you periodically for an overnight stay. To best serve both you and all of our clients, we have established Community Agreements. In order to permit you drop-in privileges, please review these agreements and sign below.

- Admission to the Sobering Center is not guaranteed. An overnight bed may also be arranged for you on specific occasions, such as the evening before an appointment. Depending on the capacity, you may be provided a chair to sit in rather than a bed.

- We work together as a team. Please respect all staff (including front desk staff) and other Sobering Center and Respite clients.

- Sobering Center is a safe place for all clients.
  - NO verbal abuse in the form of threats or cursing, racist, sexually explicit, homophobic or transphobic comments will not be allowed.
  - Physical violence or threats of violence will not be tolerated

- Due to our limited supplies, you may not be able to do laundry or receive clothing during a drop in visit. Please discuss your needs with staff.

- Client agrees to follow staff instructions throughout their visit.

- Additional Notes (diaper use, smoke breaks, showering, etc) :

Name: _____    Signature: _____

Staff Witness: _____    Date: _____

### A copy of this document is available upon request.

41/74



**SAN FRANCISCO DEPARTMENT OF PUBLIC HEALTH**

<u>**Unusual Occurrences: Safety Committee Response Guidelines**</u>

<u>**Definitions**</u>

- <u>**Disruptive Behavior:**</u>
  - o Any behavior that directly or indirectly inhibits the ability of any Health Center Staff from discharging necessary job duties and/or interfacing with the deliverance of health care services.
  - o Examples: Yelling, disrupting conversation between patients or staff, being unable to follow staff directions
- <u>**Abuse:**</u>
  - o Verbal or physical behavior that humiliates, degrades or otherwise indicates a lack of respect for the dignity and worth of an individual.
  - o Examples: Verbal slurs to staff or other patients related to any "ism" N-word, F*ck you, B*tch, F*ggot), flipping someone off, lewd hand gestures, etc.
- <u>**Assault:**</u>
  - o Any threat of bodily harm or unlawful attempt, coupled with a present ability to commit a violent injury on another person.
  - o Examples; Verbal threats ("You better watch out, I'm gonna get you"), posturing/threatening gestures, trying to hit with a hand or object, brandishing a knife, chasing, throwing an object at another person but missing, spitting at another person but missing.
- <u>**Battery:**</u>
  - o Any offensive or intentional contact or use of physical force applied directly or indirectly upon another person. An assault where actual physical contact is made.
  - o Examples; hitting, striking with an object, spitting on a person.
- <u>**Vandalism:**</u>
  - o Any willful or malicious destruction or defacement of public or private property.
  - o Examples; Graffiti, throwing furniture and breaking it, smashing or breaking office or medical equipment, breaking windows.
- <u>**Theft:**</u>
  - o The Illegal taking of property without authorization or freely-given consent.
  - o Examples; Stealing computers, medical equipment, supplies, medications, purses, wallets, cell phones, etc.
- <u>**Unauthorized presence:**</u>
  - o Any presence on Medical Respite/Sobering Center premises where the right of a person to be present is not given.
  - o Examples; person in exam room without being accompanied by staff, persons with active restrictions of services (ROS), persons with legal restraining orders at MRSC.

- **Violation consequences**

  The safety committee meets two times monthly. Details to the Unusual Occurrences involving any behavioral issues defined above are reviewed. Restriction of Service (ROS) may be issued by the Safety Committee. Restrictions of Service are generally issued for periods of:

  1 Day

  1 Week

  1 Month

  3 months

  6 months

  Indeterminate denial of service with review in a 6 month period.

  Patients who have received an indeterminate restriction of services must show significant changes to their behavior and/or are receiving additional services (mental health, medications, anger management classes, ICM services, etc.) prior to their resumption of services at MRSC.

| Type of violation | Violation Consequences - Range of Responses |
|---|---|
| Disruptive Behavior | 1day - 1 Week May need *PCA depending on severity of if trhere are multiple incidents. |
| Abuse | 1 day - 1 month May need *PCA depending on severity or if there are multiple incidents. |
| assault | 1 Month - 6 months Must have signed *PCA to resume care. |
| Battery | 3 months to Indefinite Must have signed *PCA to resume care. |
| Vandalism | 1 month - Indefinite Must have signed *PCA to resume care. |
| Theft | 1 month - Indefinite Must have signed *PCA to resume care. |
| Unauthorized Presence while on ROS | Enforcement of previous agreement Increasing time on previous ROS + *PCA |

The safety committee may revise specific consequences as needed. The specific violation consequence will take effect and be enforced immediately upon completion of the incident review. Violation consequences may be reviewed and revised if needed at the next safety Committee UO review meeting.

*Patient Care Agreements

43/74

## Aggravating or Mitigating Circumstances

The Safety Committee may consider aggravating or mitigating circumstances in determining the violation consequences to unusual occurrences involving any of the above behaviors.

Mitigating Circumstances may include:

- First Offence
- Cognitive impairment
- Documented History of poor impulse control
- Patient was under the influence of alcohol or other drugs
- Existing agreements with providers or other staff
- Action was clearly done out of anger and frustration but was not actually threatening
- Intent was not to hurt or cause damage
- Technically fits the definition but was not severe (e.g., patient committed battery by throwing and object at staff which made contact, but the object was a wadded up piece of paper VS a chair.)
- MRSC staff made an error which was the precipitating factor in the incident.

Aggravating Circumstances may include:

- Multiple similar offences in the past
- Repeating abusive or assaultive language over and over with same incident
- Escalating offences over time
- Intent was clearly to hurt or cause damage

### Membership

SFDPH, and CATS team members are encouraged to take part in regular SC meetings. The MRSC SC will benefit from a diverse membership that includes CATS and SFPDH staff from every discipline employed at MRSC. A representative from each MRSC team is encouraged to attend in order to provide information back to their respective teams for accurate, timely information.

### Number of members needed to make decisions on Behavioral issues.

Incident review outcomes, and behavior violation consequences as outlined above, will be determined by no less than three (3) members from the Safety Committee. SC membership must adhere to the guidelines listed above and maintain equity and fairness in their decision making.

# ATTACHMENT

## 17 A

# Zero Tolerance Standard for Workplace Violence

Home (/hr.php?AT=we) / Campus (/hr.php?AT=we&org=c) / ( Published on 2014-07-17 )

UCSF is committed to maintaining a safe workplace that is free from threats and acts of intimidation and violence. When faced with these situations UCSF has taken swift and remedial action to protect the rights of employees, faculty and students.

UCSF has set forth our long standing commitment to a safe work place in one document called *Zero Tolerance Standard for Workplace Violence.* This Standard helps to support the work that has been done at UCSF on reducing situations that may lead to threats or acts of violence and intimidation.

The Standard is intended to bring awareness to all on campus that threats or acts of violence and intimidation are taken seriously and will be investigated.

The text of the Zero Tolerance Standard is given below, in full.

Zero Tolerance Standard for Workplace Violence

The University of California, San Francisco, as an employer, is committed to maintaining a workplace free from threats and acts of intimidation and violence. All reported incidents will be investigated.

Definitions:

Any act of intimidation, threat of violence, or act of violence committed against any person on the property of the University of California, San Francisco is prohibited.

**Intimidation**: A physical or verbal act toward another person, the result of which causes that person to reasonably fear for his/her safety or the safety of others.

**Threat of Violence**: A physical or verbal act which threatens bodily harm to another person or damage to the property of another.

**Act of Violence**: A physical act, whether or not it causes actual bodily harm to another person or damage to the property of another.

No person shall possess or have control of any firearm, deadly weapon, or prohibited knife, as legally defined, while on the property of the University of California, San Francisco, except as required in the lawful course of business or as authorized by the UCSF Police Department.

Procedure:

Any UCSF faculty member, student or employee who is the subject of, or a witness to, a suspected violation of this standard should report the violation to a supervisor, manager or person in authority who is not involved in the conduct.

Case 4:20-cv-07312-SBA Document 1 Filed 10/19/20 Page 106 of 146

Any UCSF supervisor, manager or person in authority who receives report of a suspected violation of this standard shall document the incident, and notify an appropriate UCSF official.

Any emergency, perceived emergency, or suspected criminal conduct shall be immediately reported to the UCSF Police Department. Sexual violence is also criminal conduct and shall be immediately reported to the UCSF Police Department.

Any UCSF faculty member, student or employee found to be in violation of this standard may be subject to criminal prosecution as well as discipline up to and including dismissal pursuant to applicable University Personnel Policies or Collective Bargaining Agreements.

Enter a search term.    Search

Recent Articles

- Protection of Human Subjects in Research (redlined) (/hr.php/x/files?F=1&cms_id=7361)
- Protection of Human Subjects in Research (clean) (/hr.php/x/files?F=1&cms_id=7360)
- Postdoc NEO Benefits Handout 2020 (/hr.php/x/files?F=1&cms_id=7356)
- UC Postdoc Benefits Guide 2020 (/hr.php/x/files?F=1&cms_id=7355)
- UC Path Postdoc Health Benefits Enrollment Form for Newly Eligible Postdocs (/hr.php/x/files?F=1&cms_id=7352)
- UC Path Postdoc Health Benefits Enrollment Form for Life Events (/hr.php/x/files?F=1&cms_id=7351)

All articles (/hr.php?SA=&AT=we&org=c)

(/)

**OUR ORGANIZATION**

Our Mission (/hr.php?A=210&AT=1&org=c)

HR Leadership Team (/hr.php?A=4627&org=hr)

UCSF A-Z List (https://www.ucsf.edu/azlist)

Campus Policies (http://policies.ucsf.edu/)

Diversity (/hr.php?A=370&AT=2&org=mc)

Benefits (/hr.php?AT=cm&org=c&S=Benefits)

Academic Personnel (http://academicaffairs.ucsf.edu/)

At Your Service (https://atyourserviceonline.ucop.edu/ayso/)

# EXHIBIT 18

**EDD** Employment
Development
Department
State of California

| Patient's Name: | Stephen Malloy |
|---|---|
| Receipt Number: | R100000072329518 |
| Social Security Number: | XXX-XX-▓▓▓ |
| Date of Birth: | ▓▓▓1963 |
| File Number: | |

## Section 2 - Physician/Practitioner Information

| Name: | MARTIN FITZGERALD EPSON |
|---|---|
| License Number: | ▓▓▓▓▓ |
| State of Licensure: | CA |
| Treatment Address: | 401 3rd St<br>Sf Veterans Admin Health Care Sys; Rd<br>San Francisco, CA 94107-1214<br>United States |
| Phone Number: | 415-281-5100 Ext 5148 |
| License Type: | Physician or Surgeon (MD) |
| Specialty (if any): | Psychiatry |

## Section 3 - Treatment Information

| This patient has been under my care and treatment for this medical problem: | |
|---|---|
| From: | 02-21-2016 |
| To: | |
| Are you presently treating the patient for this medical condition? | Yes |
| Treatment Intervals: | Monthly |
| Was the patient seen previously by another physician/practitioner or medical facility for the current disability/illness/injury? | No |
| If "Yes," enter the date of first treatment? | |
| At any time during your attendance for this medical problem, has the patient been incapable of performing his/her regular or customary work? | Yes |

## Section 4 - Claim Information

| Date Disability Began: | 10-11-2018 |
|---|---|
| Was the disability caused by an accident or trauma? | Yes |
| If "Yes," indicate the date the accident or trauma occurred: | 10-10-2018 |
| Date you released or anticipate releasing patient to return to his/her regular or customary work: | 06-30-2019 |
| Patient's disability is permanent and you never anticipate releasing patient to return to his/her regular or customary work: | No |
| Enter the ICD Diagnosis Code and version for the primary disabling condition that prevents the patient from performing his/her regular or customary work below: | |

DE 2501                              5 of 8



**Employment**
**Development**
**Department**
**State of California**

| ICD Diagnosis Code: | F43.12 | Diagnosis Code Version: | ICD-10 |
|---|---|---|---|
| ICD Diagnosis Code(s) for Secondary Disabling Condition(s): | | | |
| ICD Diagnosis Code: | F33.1 | Diagnosis Code Version: | ICD-10 |
| ICD Diagnosis Code: | | Diagnosis Code Version: | |
| ICD Diagnosis Code: | | Diagnosis Code Version: | |
| Diagnosis - If no diagnosis has been determined, enter a detailed statement of symptoms: | | Diagnoses:<br>PTSD,Chronic - Post-traumatic stress disorder, chronic (ICD-10-CM F43.12) (Primary)<br>MDD,Recurrent Episode,Moderate - Major depressive disorder, recurrent, moderate (ICD-10-CM F33.1) | |
| Findings - State nature, severity, and extent of the incapacitating disease or injury, including any other disabling conditions: | | moderate to severe symptoms causing notable and persistent impairments | |
| Type of treatment/medication rendered to patient: | | Regular psychotherapy, aggressive psychiatric medication managements, and regular psychiatric appointments, rest, group supportive engagements. | |
| If patient was hospitalized, date of entry: | | | |
| Date of discharge: | | | |
| Patient is still hospitalized? | | | |
| Is the patient deceased? | | No | |
| Date of death: | | | |
| City: | | | |
| County: | | | |
| State: | | | |
| Type of surgery/procedure: | | | |
| Date of surgery/procedure: | | | |
| Enter the ICD Procedure Code and version for surgery/procedure(s) planned or performed below: | | | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| ICD Procedure Code: | | Procedure Code Version: | |
| Enter the CPT code for surgery/procedure(s) planned or performed below: | | | |
| CPT Code: | | | |
| CPT Code: | | | |
| CPT Code: | | | |
| CPT Code: | | | |
| Was the patient unable to work immediately prior to the surgery or procedure? | | | |
| If "Yes," please provide the first date the patient was unable to work prior to the surgery or procedure? | | | |

DE 2501                                6 of 8



**Employment Development Department**
**State of California**

| Was this disabling condition caused and/or aggravated by the patient's regular or customary work? | Yes |
|---|---|
| Are you completing this form for the sole purpose of referral/recommendation to an alcoholic recovery home or drug-free residential facility (as indicated by the patient on the DE 2501 Claim for Disability Insurance (DI) Benefits Claimant's Statement)? | No |
| Date your patient became a resident of a drug or alcohol facility (if known): | |
| Would disclosure of the information on this form be medically or psychologically detrimental to your patient? | No |
| Is this a pregnancy related claim? | No |

## Section 5 - Pregnancy Information

| Estimated Delivery Date: | |
|---|---|
| Pregnancy End Date (if applicable): | |

| If this patient has not delivered and you do not anticipate releasing the patient to return to regular and customary work prior to the estimated delivery date, provide estimates for the number of days you anticipate the patient will be disabled after delivery for the both of the following delivery types: | |
|---|---|
| Vaginal delivery: | |
| Cesarean delivery: | |

| If this patient has delivered, indicate type of delivery and any complications as applicable. | |
|---|---|
| Type of Delivery: | |
| If pregnancy is/was abnormal, state the complication(s) causing maternal disability: | |

## Section 6 - Prognosis Information

| What complications make your patient disabled longer than normally expected? | Due to his complex combination of MDD and PTSD, the patient has spent significant amount of time getting to the point of having recovered to the level he had to become employed. |
|---|---|

## Section 7 - Physician/Practitioner's Certification

| Title of Person: | An authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708. |
|---|---|

I certify under penalty of perjury that the patient is unable to perform his/her regular or customary work because of the listed disabling condition(s). I have performed a physical examination and/or treated the patient within my scope of practice as an authorized physician or practitioner pursuant to California Unemployment Insurance Code Section 2708.

| Physician/Practitioner Signed: | Yes |
|---|---|
| Date Signed: | 11-29-2018 |
| If government facility, provide facility name: | |
| If government facility, provide facility address: | |

DE 2501                                    7 of 8

```
-------------------------------------------------------------------------
MEDICAL RECORD                                          Progress Notes
-------------------------------------------------------------------------
NOTE DATED: 10/31/2019 09:59
LOCAL TITLE: PATIENT NOTIFICATION LETTER -- PRIMARY CARE
STANDARD TITLE: PRIMARY CARE LETTERS
VISIT: 10/31/2019 09:59 DTC PACT B1
```

STEPHEN GROVE MALLOY
2825 VAN NESS AVE APT 7
SAN FRANCISCO, CALIFORNIA   94109

October 18, 2019

To Whom It May Concern,

Stephen Malloy (DOB ████████1963) is under my medical care.

On October 9, 2018, Mr. Malloy contacted our office requesting an early refill of his migraine medication. He was suffering from more frequent and severe migraines than usual due to stress and anxiety at his place of work.

The following day, on October 10, 2018, Mr. Malloy again contacted our office due to worsening of his Irritable Bowel Syndrome starting around September 28th. Stress and anxiety are known to have a strong correlation with worsening gastrointestinal symptoms in patients with IBS. In the setting of Mr. Malloy's work-related stress, he experienced a significant flare of his IBS at that time.

On October 11, 2018, his mental health provider adjusted his medications to address this increase in anxiety and to help him sleep.

Please let me know if you have any questions regarding this acute flare in Mr. Malloy's medical conditions related to stress at work.


            Thank you,


            Emma B. Shak, MD
            Medical Director
            Downtown Clinic, SFVA Medical Center
            401 Third Street
            San Francisco, CA 94107
            Tel: (415) 281-5100 press 1


              ** THIS NOTE CONTINUED ON NEXT PAGE **
-------------------------------------------------------------------------
MALLOY,STEPHEN GROVE              SAN FRANCISCO VAMC        Printed:11/07/2019 14:44
████████ DOB:████1963            Pt Loc: OUTPATIENT                  Vice SF 509
-------------------------------------------------------------------------
```

# EXHIBIT 19

## Re: Secure: MG & AM

Morse, Caitlin (DPH) <caitlin.morse@sfdph.org>

Reply all|
Sat 8/18, 12:05 AM
Malloy, Stephen G;
Kennel, Megan (DPH);
Sanchez, Andrea (DPH)
Deleted Items

Hello team,

This was my experience with ███ from this evening

As per experiences with incontinence (fecal and urine). It has been discussed that it would be a good plan to toilet the ███ every 2 hours to see that the cl has fewer accidents. ███ was also not wearing a brief when RN came on shift at 1600, and had already been cleaned up once before by RN and PCA.

1700 RN asked cl to get up to go the restroom and to put on a brief, after he had awoke to drink water and put his hat on. Brandon from EMS6 was here to see another cl and was in the male dorm. As cl got up, RN noticed alcohol bottle in sweatshirt pocket and asked cl to surrender it to RN to keep behind the RN desk. Cl yelled in a loud manner to "leave me the F*** alone!", said he was going to leave to "get away from that B****", and spoke to RN in other disrespectful tones. Brandon told cl that behavior was unacceptable and cl agreed to leave on his own accord.

thanks and have a good night

---

From: Malloy, Stephen G <Stephen.Malloy@ucsf.edu>
Sent: Friday, August 17, 2018 7:25:06 PM
To: Kennel, Megan (DPH)
Cc: Morse, Caitlin (DPH); Sanchez, Andrea (DPH)
Subject: Secure: MG & AM

Hi,

I just wanted to pass on that I will totally support you and staff, if you would like it, RE: a code of conduct conversation and/or a possible ROS for ███ and ███.

I was here yesterday when ███ referred to Andrea as a "Bitch," a number or times, was loud and cussed at her with other patients inside the male dorm. I engaged him and had him lower his voice, ushered him out and told him that wasn't acceptable. He tried it with me too and as he wheeled out the gate I told him to be nice a number of times as he cussed and fussed away. It felt like he was having a bad moment, and to his credit it is not the normal behavior that I've

*Malloy*

*Malloy*

←———

*Re-Escalates*      *Discriminatic*

witnessed from him.  Today I saw him and while he was working with Rebecca, I told him that I wanted to reinforce that was not the kind of language and behavior we want at SC and that he should talk and treat others as he's treated...with respect.  He was receptive and open to receiving that feedback...he didn't seem to even remember the incident to be honest.  I am happy to support a further conversation with him and witnessing his agreement and signature around the Code of Conduct for ██, especially around using abusive language with staff.

Tonight both Caitlin and Tonya reported that ██████, was loud, threatening, demanding, and cussing them out with "Slut, Bitch, Ho, Lazy..." language.  Thankfully EMS6 Brandon happened to be here on-site and stepped in to correct ██████ and provide physical/presence support.  I have not engaged with ██████ before, but I'm happy to support a conversation with him and witness his agreement and signature around the Code of Conduct for SC, especially around using abusive language with staff as well.

Thank you,

Stephen Malloy, RADT-1
Patient Navigator at San Francisco Sobering Center
UCSF Citywide Case Management
Dept. of Psychiatry
Phone: (415) 734-4268 Ext. 2
Fax: (415) 734-4223
stephen.malloy@ucsf.edu

# EXHIBIT 20

**From:** Kennel, Megan (DPH)
**Sent:** Tuesday, August 21, 2018 10:47 AM
**To:** Pang, Simon (FIR); FireEMS6, Fire (FIR); brandon.chathan@sfgov.org

**Cc:** DPH-Stephen Malloy (UCSF); Lane, Jeremy (UCSF)
**Subject:** secure PHI: M.A.

Hi Simon and EMS6 team:

We have been trying to do more engagement with ███████████ but he has become increasingly volatile and verbally abusive towards staff here. We have had to escort him out 2 of his recent encounters. We want to continue working with him, but need to be clear with him about behavioral expectations. I'm not sure if it's possible, but I'd like to have a sit-down with him, and with someone else (either someone from EMS6 or Stephen) and have him sign a behavioral contract here.

He has been self-presenting to Sobering more in recent weeks, and I want him to be able to continue to do that!

Just wanted to let you all know,
Megan

Megan Kennel MSN, RN, PHN
San Francisco Sobering Center, Charge Nurse
Medical Respite Program
1171 Mission Street San Francisco CA 94103
415-734-4209 (office/VM), 415-734-4243 (fax)
415-734-4227 (24/7 Sobering clinical station)
San Francisco Department of Public Health

Confidentiality notice: DPH e-mails sent to and from personal e-mail accounts or outside the DPH/UCSF servers are not secured data transmissions for Protected Health Information (PHI), as defined by the Healthcare Portability and Accountability Act (HIPAA). It is the responsibility of all parties involved to take all reasonable actions to protect this message from non-authorized disclosure.
This e-mail is intended for the recipient only. If you receive this e-mail in error, notify the sender and destroy the e-mail immediately. Disclosure of the PHI contained herein may subject discloser to civil or criminal penalties under state and federal privacy laws.

# EXHIBIT 21

Kennel, Megan (DPH) <megan.kennel@sfdph.org>

**Reply all**

Tue 10/2, 2:01 PM

DPH-SoberingStaff <SoberingStaff@sfdph.org>

You forwarded this message on 10/4/2018 12:06 AM

Behavioral Agreement M.A. 10.02.18.pdf
60 KB

**Download**

Hello team:

 signed a behavioral agreement today related to reports of demanding and derogatory language towards staff. A copy is attached here, but is also located on the S drive and in the red file folder containing all of the signed behavioral agreements.

Upon admission, please remind ▓▓▓ of expectations around communication with staff.  Please let us know of continued issues.

thanks,
Megan

Megan Kennel MSN, RN, PHN
San Francisco Sobering Center, Charge Nurse
Medical Respite Program
1171 Mission Street San Francisco CA 94103
415-734-4209 (office/VM), 415-734-4243 (fax)
415-734-4227 (24/7 Sobering clinical station)
San Francisco Department of Public Health

---

Confidentiality notice: DPH e-mails sent to and from personal e-mail accounts or outside the DPH/UCSF servers are not secured data transmissions for Protected Health Information (PHI), as defined by the Healthcare Portability and Accountability Act (HIPAA). It is the responsibility of all parties involved to take all reasonable actions to protect this message from non-authorized disclosure.

This e-mail is intended for the recipient only. If you receive this e-mail in error, notify the sender and destroy the e-mail immediately. Disclosure of the PHI contained herein may subject discloser to civil or criminal penalties under state and federal privacy laws.

# EXHIBIT 22

# Fw: secure phi

MG

Malloy, Stephen G

**Reply all|**

Thu 10/4/2018 12:04 AM

To:

stephen grove malloy <grovestand2012@gmail.com>

Sent Items

Stephen Malloy, RADT-1

Patient Navigator at San Francisco Sobering Center

UCSF Citywide Case Management

Dept. of Psychiatry

Phone: (415) 734-4268 Ext. 2

Fax: (415) 734-4223

stephen.malloy@ucsf.edu

---

**From:** Malloy, Stephen G

**Sent:** Tuesday, October 2, 2018 10:21:57 AM

**To:** stephen grove malloy

**Subject:** Fw: secure phi

Stephen Malloy, RADT-1

Patient Navigator at San Francisco Sobering Center

UCSF Citywide Case Management

Dept. of Psychiatry

Phone: (415) 734-4268 Ext. 2

Fax: (415) 734-4223

stephen.malloy@ucsf.edu

---

**From:** Malloy, Stephen G

**Sent:** Tuesday, October 2, 2018 10:19:02 AM

**To:** Revore, Constance; Gruber, Valerie

**Subject:** Fw: secure phi

Thank you for the meeting and this would be the email that I wanted to provide you with, it's the center of my thoughts on Kelly/Alice's EEO complaint. Please feel free to share with any and all involved.

Best,

Stephen Malloy, RADT-1
Patient Navigator at San Francisco Sobering Center
UCSF Citywide Case Management
Dept. of Psychiatry
Phone: (415) 734-4268 Ext. 2
Fax: (415) 734-4223
stephen.malloy@ucsf.edu

_____

From: Malloy, Stephen G
Sent: Tuesday, September 11, 2018 5:41:45 PM
To: Gruber, Valerie
Subject: Re: secure phi

FYI, I had as always a great talk with Megan about the background concerning my email.

I let her know that my concern was only shared with you, because if I encounter such a situation it won't work for me to not draw a boundary that makes it clear that that those words aren't ok and result in suspension from premises. Period.

I let her know that I'm not interested in getting into DPH standards, not my job, I don't even want to be passing on info., this is all truly their turf.

I'm just passing on the experience. She's already on it, following up with staff, issuing clarifications, etc. and in true Megan fashion doing a great job addressing it.

I think Alice & Kelly can assist in this way:

1. There is a sentiment amongst some staff that even when an ROS exists, some staff are willing in the spirit of harm reduction and their relationship with a select few clients to bend the ROS. Unfortunately this undermines the Team and frankly confuses the client.

2. It feels to me like Alice and Kelly May have an opportunity to truly clarify with staff what does trigger and ROS?

Given that so many clients are foul-mouthed and cussers there's a feeling that if language = ROS than we'd have no clients. So harm reduction and compassion equals allowing a certain

amount of that.

My feeling is that's true, but at some point a line has to be drawn. For me, if you threaten, hit or speak words like "nigger, faggot, derogatory female adjectives than you are completely ROS, even if just a day say on a 1st offense, and then titration up going forward for example.

I just think this needs clarification is all from Alice and Kelly in consultation with staff as a suggestion.

Re: me just understand before it goes down that I will check it and it will be a strong do not cross that line boundary with me...otherwise I am happy to return to UCSF opportunities where I know the N & F words are
something I do not worry about clients being able to use without clear consequences and boundaries.

Thanks, again Megan is exercising control over this and doing wonderful.

Stephen Malloy, RADT-1
Patient Navigator at San Francisco Sobering Center
UCSF Citywide Case Management
Dept. of Psychiatry
Phone: (415) 734-4268 Ext. 2
Fax: (415) 734-4223
stephen.malloy@ucsf.edu

---

From: Gruber, Valerie
Sent: Friday, September 7, 2018 11:15:07 AM
To: Malloy, Stephen G
Cc: Mitsuishi, Fumi
Subject: Re: secure phi

Thank you for this information, Stephen, and I am sorry to hear this is happening.

Harm reduction does not have to include allowing patients to make racial, gender or sexual orientation slurs, which promotes other patients using them as well, affecting both staff and patients. Patients have to be held accountable somehow, such as by limit setting and behavior contracts (at minimum), temporary reduction in service, suspension, eventual denial of services/discharge, etc., as we do in the other UCSF programs I work in. I appreciate your discussions and suggestions with SC staff.

I'm bringing Fumi into the conversation at this point with your permission, and would also like to discuss this with Megan, charge nurse, and in my scheduled monthly meeting with Kelly and Alice, MRSC managers, on 9/12/18.

Valerie A. Gruber, PhD, MPH, Clinical Professor, Dept. of Psychiatry, UCSF, ZuckerbergSanFranciscoGeneral.org <http://www.zuckerbergsanfranciscogeneral.org/>
UCSF Box 0852, 1001 Potrero Avenue, Ward 93/95, San Francisco, CA 94110;  982 Mission Street, San Francisco, CA 94110
ph 415  206-3943, fax 415 206-6875, valerie.gruber@ucsf.edu <mailto:valerie.gruber@ucsf.edu>
, http://profiles.ucsf.edu/valerie.gruber
"Do all you can with what you have, in the time you have, in the place you are." Nkosi Johnson

Privacy: This message and any attachments are solely for the intended recipient and may contain confidential information. Unauthorized redisclosure of any protected health information contained herein may subject the discloser to civil or criminal penalties under privacy laws. If you have received this message in error, please immediately notify sender by reply e-mail and immediately and permanently delete this message and any attachments. Patient privacy under 42 CFR pt. 2: This information has been disclosed to you from records protected by federal confidentiality rules (42 CFR part 2). The federal rules prohibit you from making any further disclosure of information in this record that identifies a patient as having or having had a substance use disorder either directly, by reference to publicly available information, or through verification of such identification by another person unless further disclosure is expressly permitted by the written consent of the individual whose information is being disclosed or as otherwise permitted by 42 CFR part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose (see § 2.31). The federal rules restrict any use of the information to investigate or prosecute with regard to a crime any patient with a substance use disorder, except as provided at §§ 2.12(c)(5) and 2.65.

---

From: Malloy, Stephen G
Sent: Friday, September 7, 2018 10:57 AM
To: Gruber, Valerie
Subject: Re: secure phi

Morning,

I'm actually with the holiday this week, off right now but I'm working some today to cover
        and                       appointments.

(I'll use the hours to cover for future times I need off...I'm keeping the record we talked about).

I'm actually at                  now for another hour or more working with them and Dr. Keller.

In my experience DPH has a different tact with all this. They feel that                    in this case or other similar clients should come on and off ROS. I.e., varying periods of restriction of services.

So this is really an Alice/Kelly Eagen philosophy of how they want to manage. All driven by an understandable harm reduction/compassionate response approach.

My concern, as that imbedded set of eyes/ears working along side of them in their facility is this kind of language erodes staff support of management and actually client care over time. I don't think this is often talked about at a management level, because junior people in an organization are worried about keeping their jobs and not getting tied up in office politics.

Sometimes I feel that in all the harm work we do, that this level of common dignity gets missed. A gay man and a black woman on staff should not be required to tolerate that kind of verbal abuse because we're trying to be compassionate. Feels like we're enabling not managing bad client behavior...this is just my humble opinion.


Stephen Malloy, RADT-1
Patient Navigator at San Francisco Sobering Center
UCSF Citywide Case Management
Dept. of Psychiatry
Phone: (415) 734-4268 Ext. 2
Fax: (415) 734-4223
stephen.malloy@ucsf.edu

_____

From: Gruber, Valerie
Sent: Friday, September 7, 2018 8:44:36 AM
To: Malloy, Stephen G
Subject: Re: secure phi

If time permits, could you me this morning about this before my 11 am with Fumi Mitsuishi?

Valerie A. Gruber, PhD, MPH, Clinical Professor, Dept. of Psychiatry, UCSF, ZuckerbergSanFranciscoGeneral.org<http://www.zuckerbergsanfranciscogeneral.org/> UCSF Box 0852, 1001 Potrero Avenue, Ward 93/95, San Francisco, CA 94110;   982 Mission Street, San Francisco, CA 94110
ph 415  206-3943, fax 415 206-6875, valerie.gruber@ucsf.edu<mailto:valerie.gruber@ucsf.edu> , http://profiles.ucsf.edu/valerie.gruber
 "Do all you can with what you have, in the time you have, in the place you are." Nkosi Johnson
Privacy: This message and any attachments are solely for the intended recipient and may contain confidential information. Unauthorized redisclosure of any protected health information contained herein may subject the discloser to civil or criminal penalties under privacy laws. If you have received this message in error, please immediately notify sender by reply e-mail and immediately and permanently delete this message and any attachments. Patient privacy under

42 CFR pt. 2: This information has been disclosed to you from records protected by federal confidentiality rules (42 CFR part 2). The federal rules prohibit you from making any further disclosure of information in this record that identifies a patient as having or having had a substance use disorder either directly, by reference to publicly available information, or through verification of such identification by another person unless further disclosure is expressly permitted by the written consent of the individual whose information is being disclosed or as otherwise permitted by 42 CFR part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose (see § 2.31). The federal rules restrict any use of the information to investigate or prosecute with regard to a crime any patient with a substance use disorder, except as provided at §§ 2.12(c)(5) and 2.65.

---

From: Gruber, Valerie
Sent: Thursday, September 6, 2018 9:41:42 PM
To: Malloy, Stephen G
Subject: Re: secure phi

At ucsf programs this kind of pt behavior is not tolerated and results in at least a suspension with a contract and if violated again then discharge.
This bx cannot be allowed to continue, regardless of its causes, such as psychiatric sx or intoxication. It affects staff it's directed at as well as staff and patients who witness it. Let's be sure to continue this discussion next week.

Val Gruber    Sent from my iPhone

On Sep 6, 2018, at 7:29 PM, Malloy, Stephen G
<Stephen.Malloy@ucsf.edu<mailto:Stephen.Malloy@ucsf.edu>> wrote:

Hi, I just walked in from JH and our staff here shared the below experience with me.

It provoked a reaction from me that was not in synch with DPH's response.  So, that made me think, what is UCSF's policy on these kind of situations please?

Citywide, which models our location...how do we handle this kind of client at UCSF when they use abusive/charged language like this?

Thank you,
Stephen Malloy, RADT-1
Patient Navigator at San Francisco Sobering Center
UCSF Citywide Case Management
Dept. of Psychiatry
Phone: (415) 734-4268 Ext. 2
Fax: (415) 734-4223
stephen.malloy@ucsf.edu<mailto:stephen.malloy@ucsf.edu>

From: Elliott, Justin <justin.h.elliott@sfdph.org<mailto:justin.h.elliott@sfdph.org>>
Sent: Thursday, September 6, 2018 6:51 PM
To: DPH-SoberingStaff
Subject: secure phi

Hello,

                called me a faggot when she saw me as I was walking in to work today. after
Tonya arrived,          rang the bell. Tonya answered the door,          asked for lemonade
and before Tonya could even respond, she said that          called her the N wor. "You ugly
ass N!@#$%". I believe this calls for an ROS.

Justin H. Elliott R.N.
Medical Respite and Sobering Center
Tom Waddell Urban Health Center
San Francisco Department of Public Health
1185 Mission St.
San Francisco, CA 94103
 Phone: (415) 734-4227

This e-mail is intended for the recipient only. If you receive this e-mail in error, notify the sender and destroy the e-mail immediately. Disclosure of the PHI contained herein may subject discloser to civil or criminal penalties under state and federal privacy laws.

# EXHIBIT 23

---

## UCOP Human Resources Procedures 22 – PROBATIONARY PERIOD

I.  **POLICY REFERENCES**    UC-PPSM 02, Definition of Terms
UC-PPSM 22, Probationary Period
UC-PPSM 23, Performance Appraisal
UC-PPSM 61, Release of Casual and Probationary Employees
UCOP Online Employee Database (EDB) System Manual (Probationary Period
End Date Guidelines)

II.  **APPLICABILITY**    Professional and Staff Support Staff

III.  **GENERAL**

All Professional and Support Staff (PSS) employees who hold career appointments shall serve a probationary period during which time their work performance and general suitability for University employment shall be evaluated in writing. Except for those employees covered by Section IV below, the probationary period is completed on the first of the month following six- (6) months of continuous service at one-half time or more without a break in service. Time on leave with or without pay is not qualifying service for the completion of the probationary period. Employees who are rehired following a break in service shall serve a new probationary period whether or not they previously completed a probationary period. An employee who has satisfactorily completed the probationary period shall be informed in writing of the attainment of regular employee status by their immediate supervisor.

As noted above, these local UCOP Human Resources Procedures regarding Probationary Period do NOT apply to Management and Senior Professional (MSP) employees or the Senior Management Group (SMG).

IV.  **LIMITED APPOINTMENT AND PER DIEM EMPLOYEES**

Employees required to serve a probationary period and who have worked in a Limited Appointment immediately preceding the Career Appointment shall have up to 1,000 hours on pay status, exclusive of on-call and overtime hours, credited toward completion of his or her probationary period, provided that the credited time was served in the same position from which he or she is directly converted into the new career appointment. For the purposes of this provision, "same position" means an appointment in the same division/department/unit with the same supervisor as the appointment to which the individual was assigned immediately prior to conversion.

V.  **AUTHORITY**

Division or Department Heads, Managers or Supervisors are delegated the authority to certify the completion of probation or release of a probationary employee. The Division or Department Head (Manager or Supervisor) is responsible for ensuring that probationary employees receive at least one- (1) written performance evaluation from their supervisor during their probationary period. Additional evaluations may be done whenever circumstances indicate an evaluation would be of value.

VI.  **PROBATIONARY PERIOD APPRAISALS**

An employee serving a probationary period should receive a written performance appraisal conducted by his or her immediate supervisor approximately thirty (30) calendar days prior to the completion of his or her probationary period.

VII.    **EXTENDING THE PROB.....ONARY PERIOD**

An extension of the probationary period for no more than three (3) months may be granted. Ordinarily, such extensions are given in cases where a department has not received clearance regarding the employee's background check, or the employee's duties changed significantly during the probationary period, and/or the employee acquired a new supervisor during the probationary period. In addition, a department may choose to extend an employee's probationary period end date due to performance-based issues.

Divisions or Departments may also extend the probationary period end date if an employee is absent from work due to an approved leave to reflect the length of time the employee was on leave.

The probationary employee shall be informed in writing by his or her immediate supervisor the reason for, and the period of, any extension of probationary status at least seven (7) calendar days prior to the extension of the original effective date.

VIII.    **LEAVES OF ABSENCE DURING THE PROBATIONARY PERIOD**

Leaves of absence for probationary employees must be granted if requested under UC-PPSM 43(B) – Pregnancy Disability Leave (PDL) in accordance with UC-PPSM 43(C) – Family and Medical Leave (FML), or UC-PPSM 43(E) – Work-Incurred Illness and Injury Leave, but in all other cases, approval of such leave is at the sole discretion of the division or department head (or designee).

XIV.    **RELEASE DURING PROBATIONARY PERIOD**

Whether or not a probationary employee receives a performance appraisal, he/she may be released at any time during the probationary period for performance deficiencies or misconduct, including but not limited to dishonesty, theft, or fighting on the job, or where the employee reasonably should have known that his/her conduct was unsatisfactory.

X.    **COMPLETION OF THE PROBATIONARY PERIOD**

An employee who has satisfactorily completed the probationary period should be informed in writing by his or her immediate supervisor of the attainment of regular employee status and that the employee is entitled to the additional considerations as provided in the appropriate personnel policies. However, failure to issue such notice shall not be construed as evidence that an employee who has satisfactorily completed the probationary period has failed to attain regular employee status.

XI.    **TRANSFERS AND PROMOTIONS RELATED TO PROBATIONARY PERIOD**

A regular status employee who is transferred or promoted to a new position without a break in service does not serve a new probationary period. An employee who is laid off and preferentially rehired does not serve a new probationary period, but may be required to serve a trial employment period (see UC-PPSM 60 (F) 3 and UCOP Human Resources Procedure 60.

**University of California**
**San Francisco**

partment of Psychiatry
ywide Case Management
 Mission Street, 2nd Floor
:1385
· Francisco, CA 94103
: 415- 597-8000
: 415-597-8004

October 10, 2018

To:      Stephen Malloy, Patient Navigator II

From:    Valerie Gruber, Program Director, Citywide Sobering Center Case Management, *VG*
         Psychiatry, UCSF

Re:  Release from Probationary Employment

This is to notify you of your release from probationary employment as a patient navigator in the
Department of Psychiatry, UCSF, effective October 10, 2018.


Valerie Gruber

cc:    Fumi Mitsuishi, MD, Director, Citywide Case Management Division, Psychiatry
       Aviva Roller, Labor and Employee Relations Consultant
       Employee Personnel File

*Exhibit 24*



# SUNSHINE ORDINANCE TASK FORCE
## Compliance and Amendments Committee
# CITY AND COUNTY OF SAN FRANCISCO
## MINUTES - DRAFT

## REMOTE MEETING

**Listen/Public Call-In Phone Number**
**1-415-906-4659**
**Meeting ID: 587 575 838#**

## July 28, 2020 - 4:30 PM

**Members:** Lila LaHood (Chair), Fiona Hinze and Bruce Wolfe

1.  **CALL TO ORDER, ROLL CALL, AND AGENDA CHANGES**

    Chair LaHood called the meeting to order at 4:36 p.m. On the call of the roll Chair LaHood and Members Hinze and B. Wolfe were noted present. A quorum was present.

    There were no agenda changes.

2.  **Approval of the February 25, 2020, Compliance and Amendments Committee meeting minutes.**

    **Action: Moved by Member Hinze, seconded by Member Wolfe to approve the February 25, 2020, meeting minutes.**

    Public Comment:

    None.

    **The motion PASSED by the following vote:**

    Ayes: 3 - LaHood, B. Wolfe, Hinze
    Noes: 0 - None
    Absent: 0 - None

3.    **Public Comment:** Members of the public may address the Committee on matters that are within the Committee's jurisdiction but not on today's agenda.

Speakers:

Anonymous asked if there had been an update or changes to the Mayor's Proclamations regarding contracts that would normally be addressed by the Sunshine Task Force.

4.    **File No. 19109:** Complaint filed by Stephen Malloy against Dept. of Public Health for violating Administrative Code (Sunshine Ordinance), Sections 67.24, 67.25, 67.26 and 67.27 by failing to respond to a public records request in a timely and/or complete manner.

Stephen Malloy (Petitioner) provided a summary of the complaint and requested the Committee to find a violation. Mr. Malloy stated that he originally filed his case in May 2019 and on October 4, 2019, the Dept. of Public Health (DPH) released only 9 emails. Mr. Malloy stated that he provided DPH with a list of all persons who worked on his case and requested their email records. Mr. Malloy stated that he has not received all his requested records. Mr. Malloy opined that Covid-19 is not the problem; that this is a violation of Administrative Code, Section 67.34; the willful failure of DPH to release those requested records.

Veronica Vien (Department of Public Health) (Respondent), provided a summary of the department's position. Ms. Vien stated that the matter was heard in February 2020 and that DPH wants to work with Mr. Malloy. Ms. Vien noted that DPH received Mr. Malloy's list of individuals requesting their emails and asked for a list of search terms. Ms. Vien stated that her department is working to respond to Mr. Malloy's request, however due to Covid-19, technical difficulties and the challenges of working remotely, DPH has been providing limited responses. Ms. Vien noted that 1,000s of emails need to be converted into pdf, reviewed for sensitive information and redacted

Member B. Wolfe stated that this case was heard in October 2019 and wondered why DPH was unable to provide Mr. Malloy his requested records on a rolling basis. Member B. Wolfe noted that he was concerned about timeliness and opined that DPH may be withholding records for another reason. Member B. Wolfe opined that this matter should be referred back to the SOTF to find a violation of Administrative Code, Section 67.34.

**Action: Moved by Member B. Wolfe, seconded by Member Hinze, to refer the matter back to the SOTF with the recommendation to find that Department of Public Health Manager Grant Colfax in violation of Administrative Code, Section 67.34, for willful failure and official misconduct for failure to implement the Sunshine Ordinance Task Force Order of Determination.**

Public Comment:

>  Anonymous asked if the Complainant named a department head or manager in the original complaint?

**The motion PASSED by the following vote:**

>  Ayes: 3 - B. Wolfe, Hinze, LaHood
>  Noes: 0 - None
>  Absent: 0 - None

5.    **File No. 19110:** Complaint filed by Stephen Malloy against the Fire Department for violating Administrative Code (Sunshine Ordinance), Sections 67.24, 67.25, 67.26 and 67.27 by failing to respond to a public records request in a timely and/or complete manner.

Stephen Malloy (Petitioner) provided a summary of the complaint and requested the Committee to find a violation. Mr. Malloy stated that many white city department heads use derogatory terms and inappropriate names when referring to employees of color or sexual orientation. Mr. Malloy opined that being a black gay man is the reason other city department did not release records in order to protect those offices from misconduct. Mr. Malloy stated that he received his requested records and noted that he takes no issue with the Fire Department.

John Tucker (Fire Department) (Respondent), provided a summary of the department's position. Mr. Tucker stated that as a gay man he understood what Mr. Malloy was experiencing. Mr. Tucker stated that the requested Fire Department records were provided to Mr. Malloy.

**Action: Moved by Member B. Wolfe, seconded by Member Hinze, to close the file.**

Public Comment:

>  None.

**The motion PASSED by the following vote:**

>  Ayes: 3 - B. Wolfe, Hinze, LaHood
>  Noes: 0 - None
>  Absent: 0 - None

6.    **Announcements, Comments, Questions, and Future Agenda Items by Members of the Compliance and Amendments Committee.**

Member B. Wolfe stated that he was contacted by San Franciscan's For Sunshine regarding amendments to the Sunshine Ordinance and that there will be no opportunity for this to be on the November Ballot. Member B. Wolfe opined that the Compliance and Amendments Committee should begin a review of the work this group has completed.

Chair LaHood asked Member B. Wolfe to forward materials he has received committee members and to put this matter on the agenda for their next meeting.

Member B. Wolfe stated that before the Complaint Committee and the SOTF can hear cases, there are barriers and issues such as technology and attendance and participation of the parties at a virtual meeting to be addressed. Member B. Wolfe also noted that a process for committees to meet and complaints to be heard must be identified and must be in place before they can proceed.

Public Comment:

> Anonymous stated that he filed a complaint with the SOTF before the shutdown and that it makes no sense to move forward until the Mayor's proclamation, which prohibits the Task Force from doing its work, is nullified.

No action taken.

7.    **ADJOURNMENT**

There being no further business the meeting was adjourned at 6:04 p.m.

**APPROVED: DRAFT**
**Compliance and Amendments Committee**
**Sunshine Ordinance Task Force**

N.B. The Minutes of this meeting set forth all actions taken by the Sunshine Ordinance Task Force on the matters stated, but not necessarily in the chronological sequence in which the matters were taken up.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Stephen Malloy<br>455 Fell St., Apt. 516<br>San Francisco, CA 94102<br><br>TELEPHONE NO.: 310-428-7005      FAX NO.:<br>ATTORNEY FOR *(Name):* In Pro Se | **F I L E D**<br>Superior Court of California<br>County of San Francisco<br><br>MAR 23 2020<br><br>CLERK OF THE COURT<br>BY: _____<br>Deputy Clerk<br>ANGELICA SUNGA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: Same
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civil

CASE NAME: City of San Francisco
Stephen Malloy versus the Regents of the University of California

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited<br>(Amount demanded exceeds $25,000) | ☐ Limited<br>(Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC-20-586150<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence       f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* Tort Emotional Duress, Exemplary Damages, Personal Injury
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 3·23·20

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
### 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

STEPHEN MALLOY

PLAINTIFF (S)

VS.

CITY OF SAN FRANCISCO (ENTITY) et al

DEFENDANT (S)

**Case Management Department 610**
**Case Management Order**

**NO. CGC-20-586150**

**Order Setting Case Management Conference**

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

This case is set for a case management conference on Jan-27-2021 in Department 610 at 10:30 am.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference. However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED: AUG-27-2020             SAMUEL K. FENG

_____

JUDGE OF THE SUPERIOR COURT

Order Setting Case Management Conference
Form 000001

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

*City of San Francisco (Entity)*
*UC Regents (Entity), Et All Individual*
*See Attachment     Defendants*

**YOU ARE BEING SUED BY PLAINTIFF:** *Stephen Malloy*
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

| FOR COURT USE ONLY |
|---|
| (SOLO PARA USO DE LA CORTE) |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* *Superior Court County of San Francisco 400 McAllister St SF, CA 94102* | CASE NUMBER: *(Número del Caso):* **CGC-20-586150** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):* *Stephen Malloy Pro Se 455 Fell St, #516, SF, CA 94102*

| DATE: (Fecha) | **AUG 2 4 2020** | **Clerk of the Court** | Clerk, by (Secretario) | , Deputy (Adjunto) |
|---|---|---|---|---|
| | | | | **ANGELICA SUNGA** |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

See Additional Parties Attachment
Pages 1-8

Steve Bustamante
Mary Ann Haniston
Chris Harrington
Janet Napolitano
George Kieffer
Charles Robinson
Greta Schnetzler
Corey Jackson
John Stubbo
Susan Taylor
Grant Abernathy
Denise Caramagno
Alan Carpenter
Jane Czech
Barbara French
Brenda Gee
Valerie Gruber
Sam Hawgood
Jeremy Lane
Dan Lowenstein
Christina Mangurian

John McQuaid
Kate Mente
Fumi Mitsuishi
Renee Navaro
Deborah Ohiomoba
Shelly Patton
Susan Penny
Michelle Pero
Constance Revore
Aviva Roller
Nyoki Sacramento
Matthew State
Zachary Williams
Hallie Albert
Kawoos Bassiri
Jeanne Buick
Robyn Burke
Micki Callahan
Roxanna Costello
Kelly Eagen
Susan Gard
Hali Hammer
Kate Howard

Megan Kennel
Susanna Luong
Alice Moughamian
Anna Robert
Maggie Rykowski
Andrea Sanchez
Linda Simon
Rhonda Simmons
Mawuli Tugbenyoh
Veronica Vien
Henry Voong
Greg Wagner
Grant Colfax
Ron Weigelt
Jonathon Yank
City Attorney Thoren
City Attorney Hobin-Porter
City Attorney Stoughton
City Attorney Herrera
Mayor Breed

Page 1 of 8

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

  

*Additional Parties Attachment

## DEFENDANTS

### Univ. of CA (UC) Regents & Senior Leadership Defendants:

1) Regents of the University of California
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

2) Steve Bustamante, UCOP Chief of Ethics & Compliance Attorney
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

3) Mary-Ann Hairston, UCOP Dir. Employee Relations
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

4) Chris Harrington, UCOP VP Federal Government Relations
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

5) George Kieffer, Chair Regents of Univ. of CA
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

6) Janet Napolitano, Former UCOP Chancellor
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

7) Charles Robinson, UCOP General Counsel
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

8) Greta Schnetzler, UCOP Senior Campus Counsel
   1111 Franklin St., Floor 8
   Oakland, CA 94612
   Telephone: 510-987-9800

8 A) UCSF HR Dir. Corey Jackson

2

9) John Stubbo, UCOP VP Health
1111 Franklin St., Floor 8
Oakland, CA 94612
Telephone:510-987-9800

10) Susan Taylor, UCOP Title IX
1111 Franklin St., Floor 8
Oakland, CA 94612
Telephone:510-987-9800

**Univ. of CA at San Francisco (UCSF) Defendants:**

11) Grant Abernathy, UCSF Senior Compliance Officer
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

12) Denise Caramagno, LMFT, Director Confidential
Campus Advocacy, Resources, and Education for Sexual Assault and Gender-based Violence
(CARE)
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

13) Alan Carpenter, UCSF Affirmative Action Analyst
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

14) Jane Czech, UCSF Dept. of Psychiatry, Assoc. Chair Administration
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

15) Barbara French, UCSF Vice-Chancellor Strategy
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

16) Brenda Gee, UCSF Records Custodian
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

17) Valerie Gruber, PhD, Supervisor, UCSF Citywide
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

18) Sam Hawgood, UCSF Chancellor
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

19) Jeremy Lane, UCSF Citywide Case Manager
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

20) Dan Lowenstein, UCSF Exec. Provost of Records
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

21) Christina Mangurian, MD., UCSF Dept. of Psychiatry, Vice-Chair Diversity
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

22) John McQuaid, UCSF Dept. of Psychiatry, Vice San Francisco VA
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

23) Kate Mente, Esq., UCSF Campus Counsel
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

24) Fumi Mitsuishi, MD., Medical Director UCSF Citywide
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

25) Renee Navarro, UCSF Vice-Chancellor Diversity
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

26) Deborah Ohiomoba, UCSF Dir. Affirmative Action
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

27) Shelly Patton, UCSF Labor & Employee Relations Dir.
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

28) Susan Penny, Dir. Risk Management
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

29) Michelle Pero, UCSF Labor Relations
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

30) Constance Revore, UCSF Citywide HR Administrator
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

31) Aviva Roller, Esq. UCSF Labor & Employee Relations
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

32) Nyoki Sacramento, Esq., UCSF Title IX Officer
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

33) Matthew State, Chair Dept. Psychiatry & UCSF Citywide
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

34) Zachary Williams, UCSF Title IX Senior Compliance Officer
745 Parnassus Ave. #201
San Francisco, CA 94122
Telephone: 415-476-5005

5

**City & County Defendants:**

35) Hallie Albert, Esq., DPH EEO Manager
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

36) Kavoos Bassiri, Dr. & DPH Dir. Mental Health
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

37) Jeanne Buick, City HR Analyst for Dir.
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

38) Robyn Burke, City DA Records Custodian
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

39) Micki Callahan, City HR Dir.
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

40) Roxana Costello, City Dir. of Operations
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

41) Kelly Eagen, Dr. & DPH Sobering Center Medical Dir.
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

42) Susan Gard, City HR Policy Dir.
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

43) Hali Hammer, Dr. & DPH Medical Dir.
 1390 Market St., 5th Floor
 San Francisco, CA 94102
 Telephone: 415-554-3816

6

44) Kate Howard, City HR Deputy Dir.
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

45) Megan Kennel, DPH Charge Nurse at Sobering Center
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

46) Susanna Luong, City HR Manager of Finance & Administration
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

47) Alice Moughamian, RN, DPH Sobering Center Dir.
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

48) Anna Robert, RN, DPH Deputy Primary Care Dir.
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

49) Maggie Rykowski, DPH Chief of Integrity
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

50) Andrea Sanchez, RN, DPH Sobering Center
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

51) Linda Simon, City HR Dir. Of EEO
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

52) Rhonda Simmons, DPH Diversity Dir.
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

7

53) Mawuli Tugbenyoh, DHR Chief of Policy
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

54) Veronica Vien, City DPH Records Custodian
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

55) Henry Voong, City HR Records Custodian
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

                    Former
56) Greg Wagner, Dir. DPH    56) A. Grant Colfax, Current DPH Dir.
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

57) Ron Weigelt, DPH HR Dir.
    1390 Market St., 5th Floor
    San Francisco, CA 94102
    Telephone: 415-554-3816

58) Jonathon Yank, City Attorney    58A City Attorney Thoren.
    1390 Market St., 5th Floor    58B City Attorney Hobin-Porter
    San Francisco, CA 94102    58C City Attorney Stoughton
    Telephone: 415-554-3816

59) Dennis Herrera, City Attorney

60) Mayor London Breed

8

<u>CERTIFICATE OF SERVICE</u>

*Stephen Malloy v. City of San Francisco, et al.*
USDC, Northern California 19-cv-07995-SBA

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon Rees Scully Mansukhani, LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111.  On the date below, I served the within documents:

**NOTICE OF REMOVAL**

[X]  **ONLY BY ELECTRONIC TRANSMISSION**.  Only by e-mailing the document(s) to the persons at the e-mail address(es) listed, per Emergency Rules of Court.  During the Coronavirus (Covid-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail.

**Plaintiff**

Stephen Malloy
455 Fell Street, #516
San Francisco, California 94102
Tel.  310-428-7005
grovestand2012@gmail.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 19, 2020 at Oakland, California.

*/s/ Matt Dalton*
Matt Dalton

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(a) (FEDERAL QUESTION)